UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Adam Daley Wilson,
Adam Daley Wilson Art LLC,
Adam Daley Wilson Law LLC,

      Plaintiffs,

v.

Dana E. Prescott, Lani Anne Remick,
Prescott Jamieson Murphy Law
Group LLC, Paul Scott, Law Offices
Of Paul Scott PC, Kristina J. Smith,
Neil Jamieson, Timothy Murphy,
Doe Defendants 1-10,

      Defendants.

_____/

Civil Action No.

**COMPLAINT / JURY TRIAL DEMANDED**

1. RICO Act (18 U.S.C. §§ 1961, 1962(c), 1964(c))
    by: Wire Fraud, Mail Fraud, Extortion, Obstruction,
        Witness Tampering, Honest Services Fraud,
        Federal Hate Crimes, Constitutional Rights
        Interference, Conspiracy, Perjury (18 U.S.C.
        §§ 241, 249, 1341, 1343, 1346, 1349, 1503,
        1512(b), 1512(c), 1621, 1623, 1956, 1957)
2. RICO Act Conspiracy (§§ 1961, 1962(d), 1964(c))
3. Deprivation of Civil Rights (42 U.S.C. § 1983)
4. Conspiracy to Interfere with Civil Rights (§ 1985(3))
5. Neglect to Prevent Civil Rights Violations (§ 1986)
6. Abuse of State Court Process
7. Maine Unfair Trade Practice Act
8. California Bus. & Prof. Code §§ 17200
9. Aiding and Abetting Tortious Conduct
10. Defamation Outside Litigation Privilege
11. Fraud
12. Intentional Infliction of Emotional Distress

Plaintiffs allege against Defendants:

**Jurisdiction And Venue**

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims

one through five (1-5) because each of them arises under the Constitution and laws of the United

States, including the statutes above and herein, and because of the facts alleged herein.

2.     This Court has supplemental jurisdiction over state law claims six through twelve

(6-12) pursuant to 28 U.S.C. § 1367(a) because the state law claims arise from the same common

nucleus of operative facts as the federal claims herein, and because of the facts alleged herein.

3.     This Court has personal jurisdiction over each of the Defendants because they have

sufficient minimum contacts with this forum, because the exercise of jurisdiction complies with

due process, because each Defendant knowingly and repeatedly directed their activities at this forum, including at Plaintiffs who are in this forum, and because of the facts alleged herein.

4.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within this district, based on the facts alleged herein.

## Parties

5.      Plaintiff Adam Daley Wilson is domiciled and residing in Portland Maine.

6.      Plaintiffs Adam Daley Wilson Art LLC and Adam Daley Law LLC are both Maine corporations, each with a principal place of business in Portland Maine.

7.      Defendant Dana E. Prescott is domiciled and residing in Maine, has a principal place of business as in Saco Maine, and has a second place of business in Portland Maine.

8.      Defendant Lani Anne Remick is domiciled and residing in Peaks Island Maine.

9.      Defendant Prescott Jamieson Murphy Law Group LLC is a Maine corporation owned by Dana E. Prescott, Neil Jamieson, and Timothy Murphy with PJMLG's principal place of business in Saco Maine and PJMLG's second business place in Portland Maine.

10.     Defendant the Law Offices of Paul Scott, P.C. is a California corporation with a primary place of business in San Francisco, California and a second place of business in the residence of Lani Anne Remick in Peaks Island (Portland) Maine. Defendant LOPDS employed and continues to employ Lani Remick as an attorney at all times herein.

11.     Defendant Paul Scott, P.C. is domiciled and resides in San Francisco, California and is the sole owner of LOPDS; alternatively, Paul Scott and Lani Remick own LOPDS.

12.     Defendant Neil Jamison lives in Maine and is a named owner of PJMLG.

13.     Defendant Timothy Murphy lives in Maine and is a named owner of PJMLG.

14.     Defendant Kristina J. Smith is domiciled and residing in Scarborough Maine.

## FACT ALLEGATIONS

15.     The facts are from Defendants' own emails, letters, and state court filings.

16.     They are alleged with specific details: who, what, when, where, how, why.

### 2016

17.     At the start of 2016, Lani Remick, Paul Scott, and LOPDS continued as the lawyers for Floyd Landis in the case U.S ex rel. Floyd Landis v. (1) Tailwind Sports Corporation (TSC), (2) Lance Armstrong, (3) Johan Bruyneel, (4) William Stapleton, (5) Barton Knaggs, (6) Thomas Weisel, (7) Ross Investments, Inc. (RII), and (8) Capital Sports & Entertainment Holdings, Inc. (CSE) in the United States District Court for the District of Columbia, case number 10-cv-976.

18.     The above eight defendants were being sued for 100 million dollars.

19.     Lani Remick, Dana Prescott, and Paul Scott referred to the case as "The L Case".

20.     On January 12, 2016, the United States District Court for the District of Columbia issued a memorandum opinion denying CSE's motion for summary judgment on Counts 1, 2, 3, and 6, which involved false claims made against the United States.

21.     On that date Ms. Remick knew that her case in ¶ 17 would be financially successful.

22.     Beginning on or about January 20, 2016, without lawful authority, Lani Remick started withholding two children, Child A and Child B, from their stay-at-home father, Plaintiff, for about 310 days during the remainder of 2016, and for about 340 days in 2017, and ongoing.

23.     On February 8, 2016, at about 1:20 p.m., Ms. Remick's attorney since 2014, C.M., emailed Plaintiff: "Dear Adam: I will be withdrawing from the case. Regards, C."

24.     On February 8, at about 1:25 p.m., Ms. Remick emailed Plaintiff: "I have decided to change lawyers [to] Dana Prescott of Prescott Jamieson Murphy Law Group [PJMLG]."

25.     On or about February 8, 2016 Defendants launched their overarching scheme, including its conspiracies, schemes, predicate acts, and enterprises noticed herein.

26.     From that point on, Defendants executed a strategy to use knowing deceit and harm directed at persons herein, and they and their co-conspirators committed one or more acts in furtherance of and to effect the objects of their conspiracies, schemes and enterprises herein.

27.     In May, 2016, the state court appointed an officer to act as its ongoing court agent in assessing the children during Lani Remick's withholding, the children's Court Officer.

28.     On May 25, 2016, Dana Prescott sent a letter via email and U.S. Mail on PJMLG letterhead to the court-appointed children's Court Officer, copying Lani Remick:

> **[ m 1 ]**   "[You] really do need to consider . . . a review of Adam's psychiatric history by a forensic psychologist."
> ...
> **[ m 2 ]**   "I simply do not know what else to [recommend as a licensed MSW with a PhD in psychology]."
>
> Thank you, Dana
> Dana E. Prescott, Esq., JD, MSW, PhD
> Prescott Jamieson Murphy Law Group."

29.     No one had ever written or suggested anything like this.

30.     On or about July 11, 2016, one of the defendants in Ms. Remick's case in ¶ 3, the cyclist Lance Armstrong, moved to dismiss the case ¶ 17.

31.     On September 26, 2016, at about 7:35 a.m., Dana Prescott emailed the children's Court Officer, copying Lani Remick:

> **[ m 3 ]**   "[I see that] Adam is continuing to ratchet up[.]"
> …
> **[ m 4 ]**   "The concern is that he lacks a capacity for insight or empathy[.]"
> ...
> **{ f 1 } [ m 5 ]**   "[I see] the features of an Axis II disorder[.]"
> …
> **{ f 2 } [ m 6 ]**   "Despite all the professional help, Adam is incapable of reflection or restraint[.]"
> …

[ m 7 ]   "[I observe Adam] [lacking] the capacity to cooperate[.]"
...
[ m 8 ]   "[You should] consider a comprehensive forensic psychological evaluation of Adam[.]"
...
[ m 9 ]   "So [that all of us can] survive his personality structures."
…
[ m 10 ]   "[A] forensic psychologist could, with testing, help Adam connect with an intervention[.]"
...
[ m 11 ]   "[And] mechanisms for self-restraint."
…
[ m 12 ]   "If you [the court officer who is responsible for two children] can just get him to stop while we put these pieces in play[,]"
...
[ m 13 ]   "that would be a good and kind thing."
…
[ m 14 ]   "I do not know what else to [recommend]."
...
[ m 15 ]   "Adam is only worsening."

Thank you, Dana
Dana E. Prescott, Esq., JD, MSW, PhD
Prescott Jamieson Murphy Law Group"

32.    Ms. Remick's first lawyer of two years, C.M., had never written anything like this.

33.    On October 21, 2016, Lani Remick emailed four teachers she knew socially at the

children's island school, two miles off Portland, who would be interviewed by the Court Officer:

{ f 3 } [ m 16 ]   "Adam has a severe Axis II Personality Disorder."
Lani
Lani Anne Remick

34.    Ms. Remick had never written anything like this before she hired Dana Prescott.

35.    On or about November 2, 2016, Ms. Remick and Mr. Scott argued against Lance

Armstrong's motion for summary judgment in the case in ¶ 17.

36.    On November 9, 2016, at about 9:35 a.m., Dana Prescott emailed three specialists

assessing the children for learning challenges, who would be interviewed by the court officer:

**{ f 4 } [ m 17 ]** "All of [Adam's] professionals have tried [to help] Adam."

…

**[ m 18 ]** "With a little luck we can help their children [be safe][.]"

Dana E. Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

37. Plaintiff's counsel replied: "Please disregard this false and inappropriate email."

38. On December 15, 2016, in state court, Lani Remick and Dana Prescott each told the presiding Judicial Referee that the entire case in ¶ 17, which they called "The L Case", was:

**{ f 5 }** "Worthless[.]";
**{ f 6 }** "Dead or almost dead.";
**{ f 7 }** "Worth nothing."

39. On December 20, 2016, at about 9:25 a.m., Lani Remick emailed the four teachers she knew socially at the children's island school, who would be interviewed by the court officer:

**[ m 19 ]** "I want to assure you that all of the professionals are working together . . . to help Adam with his thought processes[.]"

Lani
Lani Anne Remick"

## 2017

40. On January 25, 2017, at about 12:35 p.m., Lani Remick emailed the Court Officer:

"I really do regret having to send these emails to you[.]"

…

**{ f 8 } [ m 20 ]** The irony is that Adam has no insight . . . into his behaviors[.]

…

**[ m 21 ]** I have tried . . . to protect the professionals who help Adam[.]"

...

**{ f 9 } [ m 22 ]** "No one, including his mental health providers, can stop him[.]"

…

**{ f 10 } [ m 23 ]** "Good people have really tried for years."

…

**{ f 11 } [ m 24 ]** "My hope was that having you on board would at least re-direct or deflect Adam's targeting[.]"

…

**{ f 12 } [ m 25 ]** "But if we can work to insulate . . . his deeply-rooted personality disorders, we have a chance at some peace."

Thank you,

Lani Anne Remick"

41.    On February 13, 2017, Mr. Armstrong lost his motion in the case in ¶ 17.

42.    On February 14, 2017, Ms. Remick emailed three teachers and the principal at Child

A's school, now in Portland, who would also be interviewed by the Court Officer, stating in sum:

{ f 13 }   "[A judge has ordered Adam prohibited from school grounds.]"

43.    The principal confirmed no such order existed and told Plaintiff about the email.

44.    On March 6, 2017, at about 2:45 p.m., Prescott emailed the children's Court Officer:

{ f 14 } [ m 26 ]  "Adam is re-focusing on the children as part of
his cycles[.]"
...
{ f 15 } [ m 27 ]   "He [is] engag[ing] in his 'thoughts' [and] his
attention on the children conforming to these thoughts[.]"
…
[ m 28 ]   "[You should] consider [my] recommendation for
independent comprehensive . . . psychological evaluations."
…
{ f 16 } [ m 29 ]   "Adam's [psychiatrist's] diagnosis, given his active
condition that I observe, is an act of kindness by his psychiatrist that [medical
doctors] often extend to . . . those of higher socio-economic status."
…
{ f 17 } [ m 30 ]   "But [I observe Adam's] thoughts and behaviors
[are] more intractable and embedded patterns[.]"
…
{ f 18 } [ m 31 ]   "[Based on what I observe], full disclosure of
[Adam's]  mental health records [and] clinical interviews . . . [is
needed to] inform treatment[.]"
…
{ f 19 } [ m 32 ]   "I could provide you with the precise questions
[so that] treatment is effective[.]"
…
{ f 20 } [ m 33 ]   "I am particularly concerned that [Plaintiff] has
turned his attention to [Child A][.]"
...
{ f 21 } [ m 34 ]   "[Adam's risk] towards women, as [Child A]
grows older, may enhance risk factors from that adultification."

Dana E. Prescott, Esq., JD, MSW, PhD

Prescott Jamieson Murphy Law Group LLC"

45.     Plaintiff's counsel emailed: "You are [inappropriate] with this communication [to the court officer who interviews witnesses and then testifies to the court]. [You are making medical diagnoses] with innuendo and insinuations that all the evidence belies."

46.     On March 16, 2017, Dana Prescott directed and caused his assistant, PJMLG employee T.Y., to sign his name and send a letter on PJMLG letterhead to the Court Officer by email and U.S. Mail, copying Lani Remick, in which Prescott stated to the Court Officer:

> **{ f 22 } [ m 36 ]**  "[Adam's fraud allegation] is his thought process[.]"
> ...
> **{ f 23 } [ m 37 ]**  "Adam's [fraud allegation shows] such deeply embedded thought-patterns[.]"
> …
> **{ f 24 } [ m 38 ]**  "What [I observe] missing from his thought process [is anything] which could alleviate . . . such deeply embedded thought-patterns[.]"
> ...
> **[ m 39 ]**  "The problem is when [Adam's] thought-patterns implicate the capacity to parent."
> ...
> **[ m 40 ]**  "We are then left with no [clinical] alternative[.]"
> ...
> **[ m 41 ]**  "[We should] acquire forensic information which is transparent and, hopefully, helpful [to treatment]."
> …
> **[ m 42 ]**  "I am going to file for a parental capacity evaluation . . . and [to inspect Adam's psychiatrist's] treatment records."
> …
> **{ f 25 } [ m 43 ]**  "[I will not do this if "Adam agree[s] to [withdraw the fraud allegation.]"
>
> Dana E. Prescott, Esq. JD MSW PhD
> Prescott Jamieson Murphy Law Group

47.     On or about March 17, 2017, Plaintiffs' counsel, copying the Court Officer, sent Dana Prescott a formal settlement offer to end the withholding and leveraging of the children.

48.     On March 21, 2017, at about 8:40 a.m., Prescott emailed the Court Officer:

> **{ f 26 } [ m 44 ]**  "I do appreciate the position we are all in regarding Adam and his thought process and behaviors."

8

…

**[ m 45 ]**  "[I will not convey settlement offers to Lani since]
Adam would convince himself . . . that was not what he said or
meant or whatever thoughts might distort his thinking[.]"

…

**[ m 46 ]**  "[Adam can show he is not worsening] [i]f he [withdraws
the fraud allegations and] allows the partial [judgment on The L Case].

Thank you, Dana
Dana E. Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

49.    On March 21, 2017, at about 9:40 a.m., Plaintiff's counsel emailed Dana Prescott:

"Dana: I sent you a settlement proposal [that, by ethics rules,
you must convey]. Please respond to my actual proposal[.]"

50.    Dana Prescott and Lani Remick never responded.

51.    On March 24, 2017, at about 11:35 a.m., Plaintiff's counsel emailed Prescott:

"Please [allow] a transfer [of Adam's funds so Adam can parent]" and documented: (i) Ms. Remick

had taken control over Plaintiffs' funds; and (ii) and Ms. Remick was now a fiduciary who was

repeatedly withholding funds for basic needs, including to make it appear Plaintiff could not parent.

52.    On March 28, 2017, the state court Judicial Referee filed an order stating:

"On March 27, 2017, [Plaintiff alleged] he was misled [by Lani
Remick and Dana Prescott] about a potentially significant asset
[The L Case] in the Referee's presence[.]"

53.    On March 30, 2017, Dana Prescott filed with the state court by email and U.S. Mail

a PJMLG letter and a hand-signed motion that attempted to seal from the public the Judicial

Referee's public order, without notifying or serving the Judicial Referee, stating as sole grounds:

**{ f 27 } [ m 47 ]**  "Adam [has made] rather distorted . . . references [and]
alleged characterizations of the case . . . which may, if possible, harm the case."

54.    On April 5, 2017, Dana Prescott signed and sent a letter on PJMLG letterhead to

the Judicial Referee by email and U.S. Mail, copying the children's Court Officer, stating:

9

**[ m 48 ]**  "We will all eventually be witness to [Adam's] thoughts and behaviors[.]
...
**{ f 28 } [ m 49 ]**  "All of us, including you, need to manage [Adam's risk] as best we can."
…
**{ f 29 } [ m 50 ]**  "[I may seek Adam's psychiatric treatment records if Adam does not withdraw his fraud allegation.]"

Dana Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

55.    On April 13, 2017, Dana Prescott signed and sent a letter on PJMLG letterhead to the Judicial Referee stating that, since Plaintiff was mentally ill, Ms. Remick need not respond to his motion that alleged Ms. Remick and Mr. Prescott made false statements to the Referee in ¶ 38.

56.    On May 1, 2017, the Judicial Referee filed a second public order:

"On March 27, 2017, [Plaintiff] filed [a] motion [alleging] fraud . . . by [Lani] Remick, Esq., [Dana E.] Prescott, Esq., or both during or after the [December 15, 2016 proceeding.] . . . Recognizing this could require the Referee to be a necessary witness, the Referee filed a motion with the [presiding judge] . . . as to how to proceed given this unexpected and unprecedented situation[.]"

57.    On July 11, 2017, at about 2:05 p.m., Dana Prescott emailed the Judicial Referee:

**{ f 30 }**  "[Adam is insisting on] . . . false claims regarding The L Case.  [There will be a trial about Adam unless] Adam gives Lani Remick a "general release"[.]

58.    On July 31, 2017, Paul Scott and his law firm, the Law Offices of Paul Scott, P.C., in San Francisco, California sent by U.S. Mail to Lani Remick in Portland physical check "#1203."

59.    **{ f 31 }**  LOPDS check #1203 was dated July 31, 2017; listed $7,000.00 as "Regular"; $24,000.00 as "Bonus"; and was made out to Lani Anne Remick, Esq. for "$31,000.00."

60.    On September 22, 2017, Lani Remick signed in Portland a "Settlement Agreement":

"With regard to 'The L Case':

a.  Any proceeds now or future to [Ms. Remick] from the L Case,
including recoveries, attorneys fees, or any benefits, shall be distributed
45% to the Children's Education Trust [and] 20% to Plaintiff.

b.  [She] shall within 10 days of any proceeds give [Plaintiff] a
copy of the check [and] in 30 days shall distribute.

c.  [She] shall [annually] ask her employer [Paul Scott and LOPDS] to
[1] certify the total paid to her from The L Case and [2] [certify] that no
amounts were withheld. [If] [Paul D. Scott and LOPDS] decline to so
certify, [Ms. Remick] shall submit a sworn statement under penalty of
perjury certifying the same, and specifically that she has disclosed all
amounts due pursuant to this agreement.

d.  All payments [are] made under the [2017 state court judgment.]"

61.     On November 6, 2017, at about 2:10 p.m., Lani Remick emailed Plaintiff:

{ **f 32** }   "See attached .pdf [LOPDS Check #1203 dated 07/31/2017]. The
check is a $7,000 'salary' payment to me and a $24,000 payment for a partial
settlement of Armstrong. The net payment is $17,377.52. 24/31, or
$13,453.56 ($17,377.52 x 24/31) is from Armstrong. . . 45% to Children's
Trust ($13,453.56 x 0.45 = $6,054.10)[;] 35% to [Remick] $13,453.56 x .035
= $4,708.75)[;] 20% to [Plaintiff] ($13,453.56 x 0.20 = $2,690.71)."

62.     On December 9, 2017, at about 11:45 a.m., Lani Remick emailed Plaintiff:

{ **f 33** }   "[All] Armstrong money due you . . . will be transferred [to you]."

63.     On December 13, 2017, the state court entered its 2017 Judgment. This Complaint

does not challenge or implicate the state court's Judgment or any state court order or decision.

64.     On December 13, 2017, Mr. Prescott filed Ms. Remick's income form FM-50:

{ **f 34** }   "Gross income . . . $51,000.00";
...
{ **f 35** }   "Adjusted Gross Income . . . "$51,000.00."

65.     On December 27, 2017, for the first time since January 2016, Ms. Remick allowed

the children to spend their first afternoon after school with Plaintiff, their stay-at-home father.

66.     On December 27, 2017, at about 2:55 p.m., Lani Remick emailed Plaintiff:

{ **f 36** }   "I [have] transferred [all the Children's Trust's] portion of the Armstrong payment: $6,054.10 – 45% share of a payment received in connection with Armstrong (see calculation in my November 6, 2017 email)[.]"

67.    On December 29, 2017, for the first time since January 2016, Ms. Remick allowed the children to spend a weekend with Plaintiff, which weekend ended on December 31, 2017.

68.    On December 30, 2017, Paul Scott and his law firm LOPDS in San Francisco, California, sent by U.S. Mail to Lani Remick in Portland physical check "#1208."

69.    { **f 37** }   LOPDS check #1208 was dated December 31, 2017; listed "$2,643.58" as "Regular"; "$0" as "Bonus"; and was made out to Lani Anne Remick, Esq. for $2,643.58."

70.    By December 31, 2017, Lani Remick and Paul Scott did not comply with any of "The L Case" annual requirements in the 2017 Judgment.

71.    By December 31, 2017, Lani Remick and Paul Scott did not comply with any of "The G Case" annual requirements in the 2017 Judgment.

### 2018

72.    On January 28, 2018 at about 1:55 p.m., Lani Remick emailed Plaintiff:

{ **f 38** }   "The attached .pdf [is] related to a partial settlement of Armstrong (this is the second and last payment from the same partial settlement). The net payment is $2,643.58. 45% to Children's Trust ($2,643.58 x 0.45 = $1,189.61)[;] 35% to [me] ($2,643.58 x 0.35 = $925.25)[;] 20% to [Plaintiff] ($2,643.58 x 0.20 = $528.72)."

73.    On April 19, 2018, USDOJ announced: (a) Mr. Armstrong had settled as one defendant in the broader "L Case"; (b) he would pay $5 million; (c) Ms. Remick's and Mr. Scott's client would later receive $1.1 million; and (d) USDOJ did not discuss attorney's fees.

74.    The USDOJ settlement with Mr. Armstrong was structured in four payments: $75,000 within 30 days, $677,000 within 90 days, $1.9 million within 180 days, and $2.4 million within one year, or by April 19, 2018, with exact payment dates and distributions to Floyd Landis' lawyers, Ms. Remick and Mr. Scott, never publicly disclosed.

75.    The cycling press, citing confidential sources, later indicated that Ms. Remick and Mr. Scott received an additional $1.6 to $2.6 million in attorney's fees later in 2018 or 2019.

76.    **{ f 39 }** Lani Remick, Paul Scott, LOPDS, Dana Prescott, and PJMLG did not disclose any attorney's fees to Plaintiff or the state court in a 2018 certification or in any certification.

77.    On June 6, 2018, at about 9:00 a.m., Lani Remick emailed Plaintiff:

> "I plan to move the full amount [of reimbursements that I seek from the Children' Trust] out of [a holding account for distributions that I owe the Trust] into my personal account[.]"

78.    The Children's Trust herein is an education trust for two children, Child A and Child B, pursuant to the state court's 2017 Judgment; it is funded in part by Section VI., ¶ C. of the 2017 Judgment. That section is the full text of Ms. Remick's September 22, 2017 Agreement.

79.    On June 12, 2018, Lani Remick emailed B.K. in Portland, a potential mediator:

> "There has been no action [by the Trustee on] my [reimbursement demands] [so] I plan to move the funds [myself] to my personal account[.]

80.    On July 2, 2018, Paul Scott and LOPDS in San Francisco, California, sent by U.S. Mail to Lani Remick in Portland physical check "#1211."

81.    **{ f 40 }** LOPDS check #1208 was dated "July 2, 2018"; listed "$0" as "regular"; listed "$ 449,683.94" as "bonus"; and was made out to Lani Anne Remick, Esq. for "449,683.94."

82.    On July 20, 2018, at about 2:05 p.m., Lani Remick emailed Plaintiff, potential mediator B.K., and Dana Prescott:

> "I received a payment in Armstrong (copy of paystub and check attached)."
> ...
> **{ f 41 }** "This reflects the full payment to me related to settlement [of The L Case]."

83.    On August 22, 2018, the court in ¶ 17 entered a $1.6 million default judgment against another defendant in The L Case, Johan Bruyneel of Tailwind Sports Corporation.

84.    The cycling press, citing confidential sources, indicated Ms. Remick and Mr. Scott later received additional settlement and/or attorneys' fees income, in an amount undisclosed.

85.    **{ f 42 }** Lani Remick, Paul Scott, LOPDS, Dana Prescott, and PJMLG did not disclose any income related to the facts in ¶¶ 83-84 Plaintiff or to the state court, or in a 2018 certification, or in any certification.

86.    By December 31, 2018, Lani Remick and Paul Scott did not comply with any of the 2017 or 2018 "L Case" annual requirements in the 2017 Judgment.

87.    By December 31, 2018, Lani Remick and Paul Scott did not comply with any of the 2017 or 2018 "G Case" annual requirements in the 2017 Judgment.

**2019**

88.    On May 28, 2019, at about 10:55 a.m., Lani Remick emailed the Children's Trust Trustee:

> **{ f 43 }** "I wired [you] the total balance [that I owe the Children's Trust] of $218,713.04. Attached is . . ."
> ...
> **{ f 44 }** ". . . my spreadsheet accounting for the funds in the account."

89.    On May 28, 2019, at about 11:55 a.m., Lani Remick emailed the Trustee:

> **{ f 45 }** "I am attaching a spreadsheet showing my expenses [to be reimbursed from the Trust]."
> ...
> **{ f 46 }** "[W]e had agreed to . . . these."

90.    On June 7, 2019, at about 12:20 p.m., Lani Remick emailed the Trustee: "[G]o forward with my expenses getting reimbursed[.]"

91.    On June 11, 2019, at about 6:20 p.m., the Trustee emailed Lani Remick: "Lani, I will go over the spreadsheets which you previously submitted . . . . If I have questions as to whether an expense should be reimbursable, I will leave that expense out of [your] check and submit an accounting and an email with [your] questionable expenses[.]"

92.     On or about October, 2019, a pediatric psychiatrist diagnosed Child A, then 16, with clinical depression due to isolation on Peaks Island, and prescribed antidepressants.

93.     By December 31, 2019, Lani Remick and Paul Scott did not comply with any of the 2017, 2018, or 2019 "L Case" annual requirements in the 2017 Judgment.

94.     By December 31, 2018, Lani Remick and Paul Scott did not comply with any of the 2017, 2018, or 2019 "G Case" annual requirements in the 2017 Judgment.

## **2020**

95.     In May and June 2020 Child A's depression became increasingly severe.

96.     In early July 2020, Plaintiff asked his counsel to ask Dana Prescott if Ms. Remick would allow the children to live more in Portland, because, now teenagers, their schools, friends, and activities had ended on Peaks Island, and were now all in Portland, near Plaintiff's home.

97.     Mr. Prescott and Ms. Remick did not respond.

98.     In early July 2020, Plaintiff's counsel asked Mr. Prescott if Ms. Remick preferred mediation, or a formal motion to modify the 2017 Judgment, to address the children's needs.

99.     In mid-July 2020, Ms. Remick attended mediation in Portland with Plaintiff but refused to participate, as later confirmed by mediator B.K., who recommended a formal motion.

100.    On July 21 2020, at about 1:35 p.m., Dana Prescott emailed Plaintiff's counsel:

> **{ f 47 } [ m 51 ]**   "[I will seek] Adam's mental health and treatment records [and] an evaluation/assessment of [Adam's mental illness] if [Adam moves to reopen the Judgment]."

101.    On July 24, 2020, Plaintiff's counsel filed in state court a motion to modify the 2017 Judgment, for the children's needs, with the facts in ¶¶ 92, 95-96 as grounds.

102.    On July 30, 2020, Dana Prescott signed and filed with the state court, by email and U.S. Mail, serving Plaintiff's counsel the same way, a letter on PJMLG letterhead and "Lani Remick's] Objection to Motion," in which Dana Prescott stated to the state court:

{ **f 49** }  "[T]he parties have not attended mediation[.]"

…

{ **f 49** }  "No substantial changes [in Lani Remick's home] in circumstances affecting [Child A or Child B]."

103.    On August 4, 2020, Child A, then age 16, emailed Lani Remick to document acts by Ms. Remick, in Ms. Remick's residence on Peaks Island, from 2018 to 2020: (a) allowing Child A be sexually and physically abused in Ms. Remick's home multiple times, including when Ms. Remick could hear, because Ms. Remick was in the next room; (b) telling Child A not to tell anyone; (c) blaming the victim, Child A, for the abuse; (d) refusing Child A's requests to tell Plaintiff; (d) refusing Child A's requests to live more with Plaintiff in Portland, where school, all activities, and all friends were, and to be safe; (e) isolating Child A in a bedroom; and (f) concealing all the above from Child A's psychiatrist, therapist, teachers, and Plaintiff.

104.    From late 2018 to August 2020, Child A had documented these facts to Lani Remick in at least three known emails and had also made at least 20 of the above requests.

105.    From late 2018 to dates herein, Lani Remick and Dana Prescott concealed Child A's emails, requests, and facts in ¶¶ 103-104 from Child A's psychiatrist; Child A's therapist; three clinicians testing for learning challenges; four teachers; the Court Officer; the court; and Plaintiff.

106.    { **f 50 – f 60** }  Starting in late 2018 to dates herein, Lani Remick and Dana Prescott made written false statements to conceal Child A's emails, requests, and facts in ¶¶ 103-104 from each of the people noticed in ¶ 105, in addition to the state court.

107.    On August 7, 2020, at about 3:10 p.m., Lani Remick emailed Plaintiff that she had spent the past week, including August 4, 2020, communicating with "my accountant" "Milt" about "the Armstrong settlement during 2018."

108.    On August 13, 2020, at about 2:55 p.m., Plaintiff's counsel emailed the Court

Officer to document that Mr. Prescott's and Ms. Remick's first statement in their July 30, 2022

court filing was known to be false because they knew the facts in ¶¶ 92, 95-96, 103-104 at the time.

109.    On August 14, 2020, at about 7:40 a.m., Dana Prescott emailed the Court Officer:

[ m 51 ]   "That mediation . . . was, sadly, a return to [Adam's]
process of demand . . . or ideas . . . or values irrelevant[.]
...
[ m 52 ]    "We need to consider other [mental illness diagnosis]
evaluations [of] Adam[.]"
…
{ f 61 }   There is nothing [that Lani Remick is doing] that even
warrants the motion itself."

Dana.
Dana Prescott, Esq., JD MSW PhD

110.    On August 26, 2020, at about 11:50 a.m., Dana Prescott emailed the Court Officer:

{ f 62 } [ m 53 ]   "Adam [is] struggling now[.]
...
{ f 63 } [ m 54 ]   "[H]e is ratcheting up[.]
…
{ f 64 } [ m 55 ]   "[A]nd creating that fact universe unique to him."

111.    On August 26, 2020, at about 12:10 p.m., Prescott emailed the Court Officer:

{ f 65 } [ m 56 ]   "Adam is escalating[.]"
...
{ f 66 } [ m 57 ]   "[A]nd [he is] trying to pathologize [Child A] with
all the pressure.
...
[ m 58 ]   "Can he let [you] help him before he places so much
pressure on [Child A][?]"
…
[ m 59 ]   "I know this is his 'normal' . . . but everyone . . . cannot
slow him down without you."

Dana Prescott, Esq., JD MSW PhD"

112.    On September 1, 2020, at about 7:55 a.m., Dana Prescott emailed the Court Officer:

"In [my clinical] experience,"
...

{ **f 67** } [ **m 60** ]  "[Adam is showing a] frenetic nature[.]"
...
{ **f 68** } [ **m 61** ]  "[A]nd the signs of increasing desperation[.]"
…
{ **f 69** } [ **m 62** ]  [This is] a sign of increasing risk[.]"
...
{ **f 70** } [ **m 63** ]  "[B]ecause when Adam feels not heard in terms that fit his thought process he may escalate."
…
[ **m 64** ]  "[You must] try to mitigate [Adam.]"

Dana Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group LLC

113.    On September 1, 2020, Plaintiff emailed the Court Officer, copying his counsel, to document the above and similar emails since July 2020 that were "re-starting exploit[ation] [of] mental illness stigmas" including "fears and prejudices about mental illness."

114.    On September 9, 2020, at about 10:05 a.m., Prescott emailed the Court Officer:

{ **f 71** } [ **m 65** ]  "Adam is escalating."
…
{ **f 72** } [ **m 66** ]  "I concede that he may not even know, at times, when he is imagining events."
…
{ **f 73** } [ **m 67** ]  "Nonetheless, his thought distortions are re-emerging again."
…
{ **f 74** } [ **m 68** ]  "It [will] help [him if you] place some boundaries [to] alleviate compression[.]"
…
[ **m 69** ]  "Sorry to have to bother you with [my recommendation]."

[ **m 70** ]  "There are so many people suffering in the world these days with real issues of social justice, poverty, and lack of social services."
…
[ **m 71** ]  "I do not know, however, what else to [recommend]."

Dana E. Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

18

115.     On or about September 14, 2020, Child A, age 16, emailed Lani Remick to document Ms. Remick's continuing acts to retaliate against and shame Child A into silence, including by Ms. Remick verbally abusing Child A with slurs about Child A's identity.

116.     On September 15, 2020, at about 8:55 a.m., Prescott emailed the Court Officer:

> **[ m 72 ]**  "I will file a motion for a [mental illness] hearing[.]"
> …
> **[ m 73 ]**  "I will also [file a motion] for supervised contact and/or intervention for Adam[.]"
> …
> **{ f 75 } [ m 74 ]**  "Sadly, and even more disconcerting, this is looking more now like he is substituting the child (now in late adolescence) for [adult women][.]"
> …
> **{ f 76 } [ m 75 ]**  "[Adam is substituting Child A] in a way that raises serious concerns given his history[.]"
>
> Dana E. Prescott, Esq. JD MSW PhD
> Prescott Jamieson Murphy Law Group"

117.     On September 18, 2020, at about 7:40 a.m., Prescott emailed the Judicial Officer:

> **[ m 76 ]**  "[You should] sit down with him [Adam] [and] assess . . . his thinking patterns." Dana.

118.     On September 22, 2020, at about 2:00 p.m., Child A, age 16: (a) informed Ms. Remick by text of Child A's intent that day to permanently leave Ms. Remick's residence on Peaks Island to live with Child A's other parent, Plaintiff, to be safe, and not isolated from school, friends, and activities; and (b) by separate text asked Plaintiff to be at Child A's sports practice that day.

119.     On September 22, 2020, at about 3:00 p.m., Lani Remick drove her SUV off Peaks Island by ferry, drove to Portland's Fitzgerald Stadium, positioned her SUV to block the field's exit gate, waited, and verbally abused Child A in front of teammates trying to exit the blocked gate.

120.     Child A, in tears, crossed the parking lot to Plaintiff's car.

121.     On September 22, 2020, at about 11:25 p.m., Prescott emailed the Court Officer:

> **{ f 77 } [ m 76 ]**  "[W]e need to . . . engage a safety plan around Adam."

19

…

{ **f 78** } [ **m 77** ]   "[I observe a] projection of his own behavioral and thinking patterns.[.]"

…

{ **f 90** } [ **m 78** ]   "[His thinking patterns] raise the risk to [Child A]."

…

{ **f 80** } [ **m 79** ]   "Adam is the only one who sees what he thinks he sees,"

...

{ **f 81** } [ **m 80** ]   "but he is escalating."

…

{ **f 82** } [ **m 81** ]   "I have tried not to involve his psychiatrist because I do not want to impede treatment[.]"

...

{ **f 83** } [ **m 82** ]   "[B]ut we have to have her refer him for a . . . forensic evaluation on the risk to himself and [the children]."

…

{ **f 84** } [ **m 83** ]   "This problem is much deeper [than] Adam's diagnosis[,] part of his pattern as well."

…

{ **f 85** } [ **m 84** ]   "What I am most concerned about, however, is that he is substituting the daughter for [adult women] in his mind."

…

{ **f 86** } [ **m 85** ]   "His decomposition,"

...

{ **f 87** } [ **m 86** ]   "[which I observe] as progressively reflected,"

...

{ **f 88** } [ **m 87** ]   "confuses reality with his own thinking,"

…

{ **f 89** } [ **m 88** ]   "[And] the danger is even more present."

Thank you, Dana
Dana E. Prescott, Esq. JD MSW PhD
Prescott Jamieson Murphy Law Group LLC"

122.    On October 2, 2020, at about 6:20 p.m., Lani Remick emailed the children's

Court Officer and Plaintiff, copying Dana Prescott:

{ **f 90** }   "The high school [let] me know [Child A] report[ed] bullying / harassment [at school] which they handled internally at the school."

…

{ **f 91** }   "[Child A] also made some other disclosures about [another student] which they felt they needed to make a mandated report to DHHS."

…

[ **f 92** }   "The high school principal came on the phone near the end of the call. He mentioned the school consulted with their attorney about their response."

123.    On October 5, 2020, at about 10:30 a.m., Child A's high school principal, D.P.,
informed Plaintiff by phone that on October 2, 2020, Lani Remick had made statements to D.P. and
Child A's high school teachers in substance as follows:

> { **f 93** }  "A court has terminated Adam's parenting rights for safety."

> { **f 94** }  "Adam and the school are not allowed to contact one another."

124.    On the October 5, 2020 call, D.P. informed Plaintiff that on October 4, 2020, the
Portland School District had determined that both of Lani Remick's statements were false.

125.    On October 5, 2020, at about 11:35 a.m., the principal called Plaintiff again and stated:
(a) the school's mandated report concerned sexual and physical abuse of Child A at Lani Remick's
residence; (b) Child A had sought help from a teacher; (c) Child A had said, in substance, if I went to
Dad, Mom would use Dad's bipolar to say I made it up; (d) Ms. Remick demanded to meet alone
with Child A and the school refused; (e) Ms. Remick demanded the mandated report be withdrawn;
and (g) Ms. Remick tried to give false facts to the school so that it would pass them to authorities.

126.    On October 5, 2020, at about 3:55 p.m., the children's Court Officer emailed Lani
Remick, proposed a conference call, and Ms. Remick said she would talk to Dana Prescott first.

127.    On October 5, 2020, between 3:55 p.m. and 4:30 p.m., Dana Prescott spoke by
phone or email with the Court Officer regarding the facts noticed in ¶¶ 122-126.

128.    On October 5, 2020, between about 4:30 p.m. and 5:15 p.m., the Court Officer
held a three-person teleconference with Lani Remick and Plaintiff about the mandated report.

129.    On October 5, 2020, at about 5:25 p.m., Plaintiff emailed the Court Officer, copying
counsel, to document a Court Officer decision: During the October 5, 2020 teleconference, ¶ 128,
the Court Officer had agreed with Lani Remick to allow Ms. Remick to meet with Child A alone.

130.    On October 6, 2020, about 9:40 a.m., the Court Officer emailed Plaintiff's counsel, copying Dana Prescott, stating: "Adam . . . is walking a very dangerous line right now [by documenting my allowing Lani Remick to meet with Child A alone] and I am starting to have grave concerns about the safety of the children in his care."

131.    On October 6, 2020, at about 11:10 a.m., Dana Prescott emailed the Court Officer, copying Plaintiff's counsel:

> **{ f 95 } [ m 89 ]** "Adam . . . must be read in the context of his history, current thinking, and possibility that further decomposition is occurring."
> …
> **[ m 90 ]** "There are only a few narrow [clinical] pathways here[.]"
> …
> **[ m 91 ]** "It would be best if Adam agreed to limited supervised access if only to protect himself."
> …
> **{ f 96 } [ m 92 ]** "There are aspects of Adam's thinking which are revealed [to me as a licensed MSW] by his allegations against others."
> …
> **{ f 97 } [ m 93 ]** "In summary, what he asserts is likely what he is actually doing."
>
> Dana E. Prescott, Esq. JD, MSW, PhD
> Prescott Jamieson Murphy Law Group"

132.    On October 6, 2020, Plaintiff's counsel received and understood Dana Prescott's email, ¶ 131, as a written accusation that Plaintiff raped Child A due to Plaintiff's mental illness.

133.    On October 6, 2020, the Court Officer received and understood Dana Prescott's email, ¶ 131, as a written accusation that Plaintiff raped Child A due to Plaintiff's mental illness.

134.    On October 6, 2020, also at about 11:10 a.m., Prescott emailed the Court Officer:

> **{ f 98 } [ m 94 ]** "Investigation [of Adam] will likely lead to a [forensic psychologist] interview of Adam[.]"
> ...
> **[ m 95 ]** "None of his emails [with his attorney] are confidential nor his [treatment with his doctor] once any investigation begins."
> …

{ **f 99** } [ **m 96** ]  "[Adam's] very serious allegations [occurred when] [Child A] was held in his care[.]"

...

[ **m 97** ]  "I hope that you can help Adam before he does more damage to [Child A and] himself[.]"

Dana E. Prescott, Esq. JD MSW PhD
Prescott Jamieson Murphy Law Group."

135.    On October 6, 2020, during a teleconference with the Court Officer, Dana Prescott, and Plaintiff's counsel, the Court Officer (a) indicated that Mr. Prescott was pressuring the Court Officer in some way; and (b) stated that Portland Police and the District Attorney's Office were investigating the facts of Child A's sexual and physical abuse in Lani Remick's residence.

136.    On October 9, 2020, at about 1:20 p.m., Dana Prescott emailed the Court Officer:

{ **f 100** } [ **m 98** ]  "[We need] to manage Adam's enmeshments."
…
[ **m 99** ]  "I just hope we can all work to protect [the children] from Adam,"
...
[ **m 100** ]  "while [we] assess risk [by deposing] his psychiatrist[.]"
…
{ **f 101** }  "Adam has triggered a serious criminal investigation."
…
{ **f 102** } [ **m 101** ]  "[H]is thought process . . . is troubling enough let alone what these children must experience as they navigate his individual reality."
…
[ **m 102** ] "His chameleon-like tone does not alter the risks."

Dana Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

137.    In October 2020, between October 9 and October 20, Lani Remick interacted in Portland with E.F. of the Maine law firm E.P., including as E.F. later admitted, as noticed herein.

138.    On October 20, 2020, Lani Remick sent by U.S. Mail from Portland to the Federal Thrift Savings Plan Legal Unit in Fairfax, Virginia, a hand-signed letter that: (1) stated instructions; (2) attached a purported stated court order; and (3) did not copy Plaintiff or Plaintiff's counsel.

139. On October 26, 2020, between about 3:00 p.m. and 5:00 p.m., Lani Remick drove her SUV off Peaks Island by ferry, drove to Plaintiff's home in Portland, parked, repeatedly demanded by text that Plaintiff "turn over" Child A; stated by text she was calling the police, and remained in front of Plaintiff's home for over an hour, according to Ms. Remick's own texts, while Plaintiff and Child B were at Fitzgerald Stadium watching Child A's high school soccer game.

140. On October 29, 2020, at about 9:00 a.m., a Portland Police Detective called Plaintiff and informed him: (a) pursuant to the school's mandated report, Child A would be interviewed the next day; and (b) Lani Remick should not be notified because she might engage in witness tampering.

141. On October 30, 2020, from 8:30 a.m. to 9:30 a.m., an Assistant District Attorney, a Portland Police Detective, and Victim Services interviewed Child A alone, after which they told Plaintiff that Child A was specific and credible about all allegations involving Lani Remick.

142. On October 30, 2020, the Portland Police Detective told Plaintiff that Lani Remick could now be informed; at about 10:10 a.m. Plaintiff emailed Ms. Remick and the Court Officer.

143. On October 30, 2020, at about 11:05 a.m., Lani Remick emailed Plaintiff, the Court Officer, and Dana Prescott:

> "Adam: I was not informed of this interview.
> ...
> **{ f 103 } [ m 103 ]** "[You lack mental] capacity to provide an accurate report[.]"
> ...
> **{ f 104 }** "[Y]ou facilitated this."
> ...
> "Immediately provide the date, time, and location when this interview occurred and the names of the DA, police officer, and victim services representative."
> ...
> **{ f 105 }** "I have not been able to reach [Child A] [due to your] interference[.]"

144. On October 30, 2020, at about 7:20 p.m., Lani Remick emailed the Court Officer:

> **{ f 106 } [ m 104 ]** "It is quite clear that [Adam is] continuing to decompose,"
> ...
> **{ f 107 } [ m 105 ]** "and [is] substituting [a child] to meet his needs[.]"

145.    On November 3, 2020, at about 9:05 a.m., Prescott emailed the Court Officer:

{ **f 108** }  "Adam is now having [Child A] interviewed by law enforcement[,]"
...
{ **f 109** }  "while isolating [Child A]."
...
[ **m 106** ]  "I may file a motion . . . to depose his psychiatrist and obtain [Adam's] [treatment] records for trial."
...
"I had hoped that with some level of [clinical] management we could get the kids through the next few years. I really did."
...
[ **m 107** ]  "And do not let him . . . interject at all."

Dana.
Dana Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group

145.    On November 3, 2020, the state court ordered the Court Officer to review Police investigation records of: (1) the repeated physical and sexual abuse of Child A in Ms. Remick's home, (2) Ms. Remick's concealment of the abuse; (3) Ms. Remick's witness tampering of and retaliation against Child A; and (4) false statements by Ms. Remick to the Judicial Officer.

146.    On November 4, 2020 at about 9:50 a.m., Prescott emailed Plaintiff's counsel:

"I wanted to send you [Lani's and my court orders for the retirement accounts]."
...
{ **f 107** }  "My understanding [from Lani Remick] is that these are approved as written by E.F."

147.    On November 5, 2020, at about 5:35 p.m., Child A, age 16, emailed Lani Remick to further document: (1) Lani Remick's false statements to the Court Officer about the abuse at Ms. Remick's residence; (2) Remick's false statements about her knowledge of the abuse; (3) Remick's witness tampering of Child A for almost two years about the abuse; and (4) Remick's repeated attempts to gaslight Child A that Child A was misremembering and Ms. Remick did nothing wrong.

148.     From November 5, 2020 to dates herein, Lani Remick and Dana Prescott concealed the above email and facts from Child A's psychiatrist; therapist; clinicians testing for learning challenges; teachers; the children's Court Officer; the state court; and Plaintiff.

149.     On or about December 29, 2020, Dana Prescott caused the Court Officer to give Dana Prescott an email from Plaintiff to the Court Officer.

150.     On December 30, 2020, at about 11:20 a.m., Prescott emailed the Court Officer:

> **{ f 108 } [ m 108 ]**   "Adam's escalation is evident to me [as a MSW]."
> ...
> **[ m 109 ]**   "I say that rather sadly as I thought there was a chance of getting the children safely through without this kind of distortion."
> ...
> **[ m 110 ]**   "But reality has set in so I anticipate an expert on the nexus between Adam's diagnosis and outcomes for children in adolescence."
>
> Dana.
> Dana Prescott, Esq., JD MSW PhD

151.     In Maine, any adult can initiate "blue papering," the involuntary psychiatric hospitalization process under Maine's Title 34-B, Section 3863; an adult need only allege that a person is mentally ill and a serious risk of harm.

152.     On December 31, 2020, between about 6:00 a.m. and 10:55 a.m., Lani Remick, using clinical words and Section 3863 words that she could not know as a lay person, but which Dana Prescott knew from his MSW license and his PhD in psychology, attempted to "blue paper" Plaintiff by alleging to Plaintiff's psychiatrist and the Court Officer that Plaintiff was a serious risk of harm.

153.     On December 31, 2020, at about 10:55 a.m., Lani Remick emailed the Court Officer:

> "I wanted to let you know that I [sent emails to] [Adam's psychiatrist],"
> ...
> **{ f 109 } [ m 111 ]**   "because it appears to me that his mental health is decompensating in a very serious way.
> ...

**{ f 110 } [ m 112 ]**   "His [thoughts] are escalating."
...
**[ m 113 ]**   "I am hoping [Adam's psychiatrist] can help him."
...
**{ f 111 } [ m 114 ]**   "Adam does not have a job."
...
**{ f 112 } [ m 115 ]**   "[T]here is no one who can act as an observer to recognize serious behaviors that might put the children at risk."
...
**[ m 116 ]**   "I have addressed this with Dana and we believe it is the best course of action for the children at this point given the risks involved."
...
Thank you,
Lani"

154.   On December 31, 2020, pursuant to Maine "blue papering" involuntary hospitalization protocols, Plaintiff's psychiatrist conducted a first evaluation of Plaintiff, found no risk or psychiatric concerns, and informed the Court Officer.

155.   On December 31, 2020, later that day, Plaintiff's psychiatrist conducted a second evaluation of Plaintiff, found no risk or psychiatric concerns, and informed the Court Officer.

156.   By December 31, 2020, Lani Remick and Paul Scott did not comply with the 2017, 2018, 2019, or 2020 "L Case" annual requirements in the 2017 Judgment.

157.   By December 31, 2020, Lani Remick and Paul Scott did not comply with the 2017, 2018, 2019, or 2020 "G Case" annual requirements in the 2017 Judgment.

**2021**

158.   On January 4, 2021, before 3:55 p.m., Plaintiff's psychiatrist conducted a third evaluation of Plaintiff, found no risk or psychiatric concerns, and informed the Court Officer.

159.   On January 4, 2021, at about 3:55 p.m., the Court Officer emailed Dana Prescott and Plaintiff's counsel to document: (a) the Court Officer had met with Plaintiff's psychiatrist, who confirmed that the attempt to involuntarily commit Plaintiff to a psychiatric hospital lacked

any factual basis; (b) Lani Remick continued to refuse the Court Officer's recommendations; and (c) Lani Remick was withholding Child B for weeks at a time.

160.    On January 7, 2021, at about 9:20 a.m., Dana Prescott directed and caused a PJMLG employee to file with the state court, by U.S. Mail and email, a letter on PJMLG letterhead and a court filing titled "Interim Order (Re: Wilson Behavior toward [Court Officer])", hand-signed by Prescott and served on the Court Officer and Plaintiff's counsel the same ways, in which Dana Prescott stated to the state court:

> **{ f 113 } [ m 117 ]**  "Adam's distorted thinking . . ."
> ...
> **{ f 114 } [ m 118 ]**  "suggests the cusp of [dangerous] behaviors[.]"
> ...
> **[ m 119 ]**  "The world is a dangerous enough place these days[.]"
> ...
> **{ f 115 } [ m 120 ]**  "Adam's privilege . . . has protected him from [diagnoses] that may not be so protected for [those] of lesser means[.]"
> ...
> "Lani Remick [and I are] obligated to protect the judicial process."
> ...
> **{ f 116 } [ m 121 ]**  "Adam needs to be stopped now before he snaps."
> ...
> **{ f 117 } [ m 122 ]**  "The reality [is] Adam does not know he is doing anything wrong[.]
> ...
> **{ f 118 } [ m 123 ]**  "His thinking reflects his belief that anything he says is accurate and entitled so restraint and respect actually puzzle him."
>
> Dana Prescott, Bar No. 2771
> Dana E. Prescott, Esq., JD MSW PhD
> Prescott Jamieson Murphy Law Group

161.    On January 10, 2021, between 8:00 a.m. and 5:00 p.m., Lani Remick exchanged texts throughout the day with both children, who were at Plaintiff's home as scheduled, including both Child A and Child B sending Ms. Remick emojis of smiles and laughter.

162.    On January 10, 2021, between about 3:30 p.m. and 4:48 p.m., Lani Remick drove

her SUV off Peaks Island by ferry, drove to Plaintiff's home in Portland, parked, and as shown

by Portland Police Call Report #210100286, called Portland Police dispatch and stated:

> { f 119 }    "[I] cannot get hold of [my] son."
> ...
> { f 120 }    "[I] ha[ve] been texting [my] son who is 13 years old
> and [he] is not answering texts."

163.    On January 10, 2021, shortly after 4:48 p.m., (a) two police officers spoke briefly

with the children alone, found no issues, and told Ms. Remick "Everything is fine here"; (b) the

officers then noticed that Ms. Remick was not leaving, and asked her to; and (c) 15 minutes later,

Ms. Remick returned and circled Plaintiff's block for an hour, texting Child B to come out to her.

164.    On January 12, 2021, at about 8:20 a.m., Prescott emailed the Court Officer:

> [ m 124 ]    "[W]e are all trying to manage the risks,"
> ...
> { f 121 } [ m 125 ]    "of [Adam's] behaviors and distorted thinking when"
> ...
> [ m 126 ]    "he is under compression and projecting that thinking onto [the children].
>
> Dana
> Dana Prescott, Esq. JD MSW PhD"

165.    On January 12, 2021, at about 9:50 a.m., Plaintiff's counsel emailed the Court Officer

to document: (a) increasing withholding of Child B by Lani Remick at her residence on Peaks Island,

violating the Judgment and isolating Child B from school and all activities; and (b) statements by

Dana Prescott, in calls to Plaintiff's counsel, that Ms. Remick and Mr. Prescott were conditioning

Child B on Plaintiff waiving Ms. Remick's pending mandatory disclosures of taxes and income.

166.    On January 12, 2021, at about 10:25 a.m., Prescott emailed Plaintiff's counsel and

the Court Officer:

> "[I] have many consequences for Adam at many levels."
> ...

{ **f 122** } [ **m 127** ]   "And that is before we get to the risk that Adam is an even more serious threat to himself or others."

167.   On January 13, 2021, Plaintiff's counsel sent a letter to Dana Prescott and PJMLG, copying the Court Officer:

> "Dana: You and your client, Lani Anne Remick, continue to . . .
> condition [children and the constitutional right to parent] on her
> first receiving unrelated financial and legal concessions for herself.
> ...
> She demands that my client give up sums awarded by the [state]
> court, give up financial certifications that Ms. Remick is required by
> [a state] court order to make, and give Ms. Remick a free pass on [a
> growing number of] counts of contempt[.]
> ...
> [Y]ou and Ms. Remick are [extorting constitutional parenting rights]
> [including] contrary to what the [Court Officer] has formally
> recommended to the court[.]
> ...
> [You and Ms. Remick are] once again condition[ing] [constitutional
> parenting rights] on all of Ms. Remick's unrelated self-interest demands.
> ...
> You and Ms. Remick are both lawyers. You both know how
> unethical it is to hold a child's life and parenting time hostage to
> unrelated financial and legal demands.
> ...
> They are children and human beings, not things to be
> endlessly kept in limbo or traded by you and Ms. Remick
> for money or for a free pass from contempt of court."

168.   The remainder of the January 13 letter had facts (a) establishing the above and (b) that ongoing emails about Plaintiff's mental illness diagnosis, a disability, lacked factual basis.

169.   On January 13, 2021, at about 3:35 p.m., the Court Officer, copying Prescott, documented: "[Adam's psychiatrist] has again [confirmed] Adam is med-compliant (she tests him regularly) [and] compliant with treatment . . . [Adam's psychiatrist] sees Adam weekly and does not see any signs of declining mental health on his part[.]"

170.   On January 13, 2021, at about 8:55 p.m., Prescott emailed the Court Officer:

> [ **m 128** ]   "At this point, I am [recommending] an [forensic
> psychiatric] evaluation and supervised visitation for Adam."

30

...
**{ f 123 } [ m 129 ]**   "If he was not privileged and so frightening, we would already have a protective order."

171.    On January 18, 2021, Dana Prescott and PJMLG, by U.S. Mail and email, filed with the state court and served on Plaintiff a hand-signed "Document Preservation Notice" on PJMLG letterhead, sent to Plaintiff personally, stating that Dana Prescott and his law firm, PJMLG, would "sanction" Plaintiff by obtaining his psychiatrist's treatment notes if he did not "comply."

172.    On January 20, 2021, at 4 p.m., Plaintiff's counsel emailed the Court Officer:

"Please see the motion Dana Prescott filed with the court about Adam's letter to you, which you [improperly gave to Mr. Prescott].
...
They are [using it to falsely state to the court] that '[Plaintiff] needs to be stopped now before he snaps[.]'
...
[See] the police report where Lani [falsely] claim[s] Adam is dangerous [and is falsely] trying to have [police] take [Child B].
...
[Lani Remick and Dana Prescott] keep[] making [false] claims to you that Adam's [mental illness] 'has snapped' or has had a 'breakdown[.]'
...
[This] is another example of court-order[s] that Lani Remick has long ignored and violated[.]
...
You are [also] aware, directly from [Child A and Child B], how much and how often Lani is telling [these witnesses, who you interview, and then report to the court] that their father is [about to snap], and worse."

173.    On January 21, 2021, at 10:15 a.m., Plaintiff's counsel emailed Mr. Prescott and the Court Officer to document more instances of Mr. Prescott and Ms. Remick "providing medical mental health diagnoses" "without proper basis" to the Court Officer and court, including: (1) his October 6, 2020, 11:15 a.m. diagnosis that Plaintiff's mental illness indicated it was "actually Adam [who abused Child A]"; and (2) his September 22, 2020, 11:35 p.m. diagnoses, with his MSW license and his psychology PhD, that Adam "is now substituting [Child A] for [adult women] in his mind[.]"

174.    On January 21, 2021, at about 11:05 a.m., Dana Prescott emailed Plaintiff's counsel:

"You need to be very careful[.]"

175.    On January 21, 2021, at about 11:10 a.m., Prescott emailed the Court Officer:

> **{ f 124 }**   "[My] diagnoses of Plaintiff are [correct]";
> ...
> **[ m 130 ]**   "[My] diagnoses require the court to order a] "forensic psychological evaluation of Adam with referral questions [which I can write for you] and complete data from his psychosocial history[.]"
>
> Dana
> Dana Prescott, Esq., JD, MSW, PhD
> Prescott Jamieson Murphy Law Group LLC"

176.    On January 21, 2021 at about 12:00 p.m., Plaintiff's counsel emailed the Court Officer to document additional instances of Ms. Remick refusing "to separate her own [financial and legal liability] interests from [those] of two children."

177.    On January 22, 2021 at about 5:10 p.m., Lani Remick emailed the Court Officer:

> **{ f 125 }**   "[I have] been unable to reach the children all day due to Adam".
> Lani
> Lani Anne Remick"

178.    On January 23, 2021, at about 10:25 a.m., Prescott emailed the Court Officer:

> **{ f 126 } [ m 131 ]**   "[W]e all need to collaborate . . . to mitigate Adam's perceptions of reality[.] Dana."

179.    On January 25 or 26, 2021, Plaintiff received by U.S. Mail an auto-generated letter from the Federal Thrift Savings Plan (TSP) dated January 20, 2021 that stated:

> "The following court-ordered payment has been processed from the TSP account [of] Remick, Lani[.] . . . Federal tax withholding: -$35,595.29 . . . [Because this payment] is paid directly to you [it] is subject to mandatory 20% federal income tax withholding; this tax withholding cannot be waived."

180.    The letter: (1) had an unsecured six-figure check with risk of loss on Plaintiff; (2) contradicted the 2017 Judgment, which ordered the account to be transferred securely, electronically, and without tax penalty; and (3) arrived without prior notice to Plaintiff or his counsel.

181.    On January 27, 2021, the Court Officer filed a formal interim report with the state court that (1) adopted Mr. Prescott's and Ms. Remick's false diagnoses about Plaintiff's mental illness; and (2) omitted true facts the Court Officer knew from meetings with Plaintiff's psychiatrist.

182.    On January 28, 2021, at a mediation in Portland with B.K., Ms. Remick and Prescott stated they accepted the Court Officer's report as to Child B and agreed to an order reflecting this.

183.    On January 29, 2021, Dana Prescott emailed the Court Officer a draft order with language concealing that Ms. Remick was now rejecting the Court Officer's report as to Child B.

184.    On January 29, 2021, at 5:05 p.m., Plaintiff's counsel emailed Dana Prescott, copying the Court Officer:

> "[You have] hidden [in your] order [language that is the opposite of your agreement][.] You do this [by] deleting provisions [from the 2017 Judgment][.] [None of] this squares at all with [your and Lani Remick's agreement at mediation] that [you would] follow [the Court Officer's] interim [report][.]"

185.    On February 8, 2021, at 5:50 p.m., Plaintiff's counsel emailed the Court Officer: "Lani is again withholding [Child B]. Ms. Remick has now [withheld Child B] for a month [and] in [the past seven] weeks, Ms. Remick has now [withheld Child B for all but] 5 days."

186.    On February 8, 2021, at about 6:20 p.m., Dana Prescott emailed the Court Officer stating that he and Lani Remick would demand a five-day trial on Plaintiff's mental illness.

187.    On February 10, 2021, Dana Prescott stated by telephone to Plaintiff's counsel, as documented by an email on February 12, 2021, that Dana Prescott:

{ **f 127** }   Had had no knowledge that the TSP letter existed;

{ **f 128** }   Did not know or participate in the TSP facts herein;

{ **f 129** }   Had no involvement with the TSP letter;

{ **f 130** }   Did not know if Lani Remick was involved or not.

33

188.    In the February 10, 2021 call, Dana Prescott stated facts to Plaintiff's counsel that waived privileges by intentional offensive use; stated facts that waived privileges by fraud; and stated facts demonstrating his participation in the TSP and retirement account facts herein.

189.    On February 16, 2021, E.F. of the Maine law firm E.P. informed Plaintiff's counsel by telephone that, starting in September 2020, E.F. and Lani Remick (a) altered the FBM, TSP, and Wells Fargo state court retirement orders herein, to Ms. Remick's advantage, and to Plaintiff's detriment; (b) altered legal instructions to TSP; and (c) altered orders for the state court's signature.

190.    On February 16, 2021, E.F. informed Plaintiff's counsel that, for the check in ¶ 179 to have come to Plaintiff from the federal TSP, Ms. Remick must have concealed a standard, auto-generated TSP letter that would have provided Plaintiff with 60 days notice to avoid the liquidation.

191.    On February 17, 2021, at about 12:50 p.m., Plaintiff's counsel emailed the Court Officer that Ms. Remick continued to "material[ly] and substantial[ly]" withhold Child B as leverage.

192.    On February 25, 2021, Dana Prescott and Lani Remick: (1) signed and filed in state court, for the court's signature, by U.S. Mail and email, three altered retirement court orders noticed herein; (2) served the orders by U.S. Mail and email on Plaintiff's counsel; (3) filed and served a letter on PJMLG letterhead signed by Dana Prescott; and (4) directed and caused an employee of PJMLG, T.Y., to carry out the transmittals by email and U.S. Mail, including to the state court.

193.    From February 25 to March 12, 2021, Mr. Prescott told Plaintiff's counsel by phone and email facts that Ms. Remick had told him, client to attorney: (a) Remick interacted with E.F. several times since September 2020; (b) they altered FBM, SEP, and TSP state court orders; (c) they altered TSP instructions; (d) they knew they would cause a TSP liquidation and tax penalty that violated state court orders and the 2017 Judgment; (e) they knew it would financially harm Plaintiff; and (f) they agreed not to inform Plaintiff or his counsel.

34

194.    From February 25 to March 12, 2021, Dana Prescott stated facts to Plaintiff's counsel that waived privileges by intentional offensive use; stated facts that waived privileges by fraud; and stated facts demonstrating his participation in the TSP and retirement facts herein.

195.    On March 13, 2021, at about 9:20 p.m., Prescott emailed the Judicial Officer:

> { **f 131** } [ **m 132** ]   "[We must] accept[] Adam's alt-facts rather than trying to struggle with the actual truth."
> ...
> { **f 132** } [ **m 134** ]   "Nothing reflects more the . . . depth of problems associated with [Adam's psychiatrist's] current treatment plan."
> ...
> { **f 133** } [ **m 135** ]   "[Child A] . . .  may be at risk from his alt-facts and having to adopt those beliefs while isolated by him."
> ...
> [ **m 136** ]   "[As] for any consequences of that isolation with him, at her age, there is not much [that I] or the courts can do about that—regrettably."
> ...
> [ **m 137** ]   "[W]e are probably looking at a 5-day trial [about Adam's mental illness] in the fall."
> ...
> [ **m 138** ]   "I am likely to obtain an independent expert to testify about Adam and the risks to the children."
> ...
> [ **m 139** ]   "[I can] help the court understand Adam's history, thinking and risks for [all] children."
>
> Dana
> Dana Prescott, Esq., JD MSW PhD
> Prescott Jamieson Murphy Law Group"

196.    On or about March 15, 2021, Dana Prescott pressured mediator B.K., shown by B.K. providing to Mr. Prescott a confidential mediation email from Plaintiff, which Mr. Prescott then showed to the Court Officer, to support another false medical diagnosis of Plaintiff by Mr. Prescott.

197.    On March 16, 2021 at about 4:50 p.m., Plaintiff's counsel emailed Dana Prescott:

> "[P]lease provide a copy of Lani [Remick's] letter to the TSP, transmitting the [altered court] order, together with a copy of TSP's Decision Letter, which I understand [from the TSP legal Department] was dated November 23, 2020[.]"

> ...
> With respect to your submission to the court [on February 25, 2021],
> have you talked directly to [E.F.] regarding the TSP and [court orders]
> that you submitted to the Court?
> ...
> My understanding from [E.F.] about who drafted the documents . . .
> differs from what you [and Lani Remick] indicated to the Court[.]
> ...
> For that reason, please also provide copies of any communications
> [you or Lani Remick have had] with [E.F.] and the [altered court
> orders] that went back and forth[.]"

198.    Dana Prescott and Lani Remick did not respond.

199.    On March 18, 2021, at about 8:55 a.m., Dana Prescott emailed Plaintiff's counsel a

series of emails that Ms. Remick had sent to Mr. Prescott, client to attorney, including a March 17,

2021, email exchange between Ms. Remick and Mr. Prescott, client and attorney, and including:

> **{ f 134 }**   A written statement by Ms. Remick to Prescott, within their
> email exchange, stating she and E.F. had copied Plaintiff on all emails.
> **...**
> **{ f 135 }**   A separate written representation by Mr. Prescott to Plaintiff's
> counsel that Ms. Remick and E.F. had copied Plaintiff on all emails.

200.    On March 18, 2021, at about 9:05 a.m., Dana Prescott emailed Plaintiff's counsel

more emails that Ms. Remick had sent to Mr. Prescott, client to attorney, and, citing those, Dana

Prescott again represented to Plaintiff's counsel that Ms. Remick and E.F. had copied Plaintiff on

all emails relating to Ms. Remick and E.F. working together on the altered court orders noticed

herein.

201.    In his March 18 emails at 8:55 a.m. and 9:05 a.m., Dana Prescott sent client emails,

communications, and facts that waived privileges by both intentional offensive use and by fraud.

202.    On March 19, 2021, before 1:00 p.m., E.F. confirmed to Plaintiff's counsel by phone

each fact that E.F. stated in his prior call to Plaintiff's counsel on February 16, 2021 noticed herein.

203.    On March 19, 2021, at about 1:00 p.m., Plaintiff's counsel emailed Dana Prescott

facts she learned from E.F. on February 16, 2021 and March 19, 2021 and requested cooperation.

204.    Dana Prescott and Lani Remick did not respond.

205.    On March 19, 2021, Dana Prescott and Lani Remick: (1) signed and filed in state court, for the court's signature, by U.S. Mail and email, three additional altered court orders that changed terms of the court's 2017 Judgment, including by altering the effective dates by one year; (2) served the altered orders for the court's signature by U.S. Mail and email on Plaintiff's counsel; and (3) filed and served a hand-signed letter on PJMLG letterhead, including by (4) directing and causing an employee of PJMLG to carry out the transmittals by email and U.S. Mail.

206.    On March 19, 2021 at about 11:35 a.m., Plaintiff's counsel emailed Dana Prescott:

> "Please explain why the [retirement orders] you have submitted to the Court change the date of determination of [my client's] rights by almost a year[.]
> ...
> [Please explain] why you . . . submit[ed] them [to the court] without any notice of such material changes [that are] not consistent with the Judgment[.]
> ...
> Please [provide] the account statements . . . so [that I] can [determine] if any funds have been withdrawn [by Lani Remick]."

207.    Dana Prescott and Lani Remick did not respond.

208.    On March 20, 2021 at about 7:05 a.m., Dana Prescott emailed Plaintiff's counsel:

> { **f 134** }   "You know Lani had E.F. working on this."

209.    On March 22, 2021 at about 12:40 p.m., Plaintiff's counsel emailed Dana Prescott:

> "[May I please] have an answer [to my March 19 email]?
> ...
> [T]he court has your [altered] orders . . . which substantively and materially change the orders in a manner inconsistent with the Judgment.
> ...
> I [must object] to the Court before it might act on your submissions."

210.    On March 22, 2021 at about 6:35 p.m., Dana Prescott emailed Plaintiff's counsel, copying the Court Officer:

> { **f 135** } [ **m 140** ]   "[Adam has a] frenetic nature[.]
> ...

> **{ f 136 } [ m 141 ]**    "We have all tried to manage Adam through his [thought] process and will do that now as well.
> ...
> **{ f 137 }**    "Lani [has now told me all she was doing] was just checking with E.F. so we could be done."

211.    In his March 22 email at 6:35 p.m., Dana Prescott sent facts that Ms. Remick had sent him, client to attorney, that waived privileges by both intentional offensive use and by fraud.

212.    On March 23, 2021, at about 10:20 a.m., Plaintiff's counsel emailed Dana Prescott:

> You filed orders with the court [and] your assertions in your letter [told the court] you were just . . . . cleaning up some language[.]
> ...
> [I]n reality what you submitted to the court materially changes [the Judgment] by moving the effective date of the orders by [over] 50 weeks with no [notice] to the Court about [what] that [impacts].
> …
> Why can I not get a response to whether [Lani Remick] will produce the statements that would demonstrate [that she has not taken funds?]
> …
> You state [my client has] been copied on things . . . [but the emails you sent] have . . . nothing to indicate [Ms. Remick] copied [my client].
> …
> Lani [Remick] also did not copy [my client] on any of her communications with [E.F.] about TSP[;] did not copy [my client] on her submission to TSP[;] nor provide him any notice of it.
> …
> The [financial and psychological] cost to him is very real.
> …
> [E]ven simple requests for current balances [to demonstrate that Lani Remick has not taken funds] have been ignored.
> …
> [Please explain] how this is about Adam's mental health. What I am seeing is  . . . an effort [by you and Lani Remick] to try to [increase] his stress, not just here but through calls to the police, showing up at his home making false claims, and contacting [his psychiatrist] on New Year's Eve in what [was] an effort to blue paper him."

213.    Dana Prescott and Lani Remick did not respond.

214.    On March 25, 2021, Dana Prescott and Lani Remick served irrelevant papers in response to discovery requests, for the appearance of compliance with court discovery orders.

215.    On March 26, 2021, Plaintiff's counsel filed and served an Objection:

I am writing in response to Attorney Dana Prescott's letter of February 25, 2021 and his proposed orders submitted therewith[.]
...
[My client] objects to the proposed orders submitted by Attorney Prescott, which . . . materially change terms . . . inconsistent with the Judgment [causing Plaintiff's distributions to be reduced and giving Ms. Remick a year to harm the accounts without transparency.]
...
[T]he proposed orders submitted by Attorney Prescott change the date of division of the . . . accounts by approximately 52 weeks[.]
...
Mr. Prescott's client [Lani Remick] claims [that] she did not make withdrawals from the accounts[.]
...
When asked to produce the statements for the accounts, she has refused[.]
...
[I enclose] red-lined versions that show the changes by Attorney Prescott[.]
...
[Since] December 31, 2016, [Lani Remick] has . . . been holding [all funds] with fiduciary obligation to [my client]."

216.    On March 26, 2021 at about 3:40 p.m., Dana Prescott emailed Plaintiff's counsel:

"[D]o not write . . . to the court . . . it gets problematic [for you][.]"

217.    On March 26, 2021, at about 4:35 p.m., Plaintiff's counsel emailed Dana Prescott:

"[Your submissions] are opposed."

218.    On March 28, 2021, at a state court judicial conference about the above, Dana Prescott stated in substance to the presiding state court judge:

**{ f 138 }**   He, Dana Prescott, submitted the wrong documents.
...
**{ f 139 }**   He and Lani Remick inadvertently changed them.
...
**{ f 140 }**   He and Ms. Remick contradicted the Judgment by accident.

219.    On March 30, 2021, Dana Prescott by telephone repeated to Plaintiff's counsel: (a) facts he had told her on February 10, February 25, and March 12, 2022; and (b) facts he and Ms. Remick had discussed, attorney and client, waiving privileges by intentional use and by fraud.

39

220.    On April 4, 2021, Plaintiff documented to the Court Officer: (a) false mental illness medical diagnoses that Mr. Prescott and Ms. Remick had written to the Court Officer and the state court since resuming in July 2020; (b) their parallel acts from 2016 to 2017; (c) their stopping once the December 2017 Judgment was entered; and (d) their restarting again after the motion to modify.

221.    On April 5, 2021, at about 12:35 p.m., Prescott emailed the Court Officer:

> **{ f 141 } [ m 142 ]**   "None of this is about Adam's mental health as Adam weaponizes that as a sword not a shield."
> ...
> "[As a clinician] I have worked with many [who have] what are termed Axis I disorders."
> ...
> **[ m 143 ]**   "In my career, however, that type of diagnosis has never created such behaviors [as Adam's]."
> ...
> "Indeed, such a diagnosis more often heightens empathy and respect for others."
> ...
> **{ f 142 } [ m 144 ]**   "[Adam's] case, however, is embedded characterological and personality [disorder] traits."
> ...
> **{ f 143 } [ m 145 ]**   "[These] create, for Adam, a lack of empathy and insight[.]"
> ...
> **{ f 144 }**   "He is privileged, so [his psychiatrist, a medical doctor] [gives him] protections that others would not [receive]."
> ...
> **[ m 146 ]**   "[I recommend] he undertakes serious treatment which is reality based and helps him more precisely understand his internal state of thinking about [reality] around him."
> ...
> **{ f 145 }** The alternative is that we are all caught in Adam's cycles[.]"
>
> Thank you, Dana
> Dana Prescott, Esq., JD MSW PhD
> Prescott Jamieson Murphy Law Group

222.    On April 6, 2021, at about 11:20 a.m., Prescott emailed the Court Officer and attempted to delay the next court status conference about Child B, without grounds.

223.    On April 13, 2021, between about noon and 3:00 p.m.: (a) Child A, now 17, who had not resided with Ms. Remick since 2020 for reasons herein, asked to visit Ms. Remick's home to

retrieve Child A's passport, for vaccinations and to take the SATs for college, as it was Child A's only ID; (b) Ms. Remick agreed; but (c) when Child A arrived to Ms. Remick's home for the passport, Lani Remick physically assaulted Child A as documented by the Portland Police.

224.    On April 13, 2021, at about 7:40 p.m., Plaintiff's counsel emailed the Court Officer, copying Dana Prescott:

> "Lani [Remick's] physical and verbal assault on [Child A today]:
> ...
> Lani [Remick] assaulted [Child A] today at Ms. Remick's home. As you know, [Child A] has been requesting her passport so that [Child A] will have the ID she needs to be able to get vaccinated [and take the SATs].
> ...
> Lani physically grabbed and pulled [Child A] [and] unleashed a verbal barrage on [Child A], calling her a liar . . . and [a slur about her identity]."
> ...
> "[T]here [is not] anything entitling Lani to withhold [Child A's passport] . . . and certainly, absolutely not the physical assault to maintain control of the passport."

225.    On April 14, 2021, at about 12:05 p.m., Dana Prescott emailed Plaintiff's counsel, copying the Judicial Officer:

> "[You should] stop channeling Adam."
> ...
> { f 146 } [ m 147 ]  "Everyone is trying to keep the children and everyone he attacks as safe as possible."
> ...
> { f 147 } [ m 148 ]  "The irony is that his actual condition [is just what I have diagnosed][.]"
> ...
> { f 148 } [ m 149 ]  "[My diagnosis] and not his [psychiatrist's] diagnosis is what creates his lack of insight, empathy, and even the capacity to self-protect."
> ...
> [ m 150 ]  "[Adam's treatment history] will be the first exhibits for him to read in open court. I [will] have all of them organized for that moment."
> ...
> { f 149 } [ m 151 ]  "Adam [thought up] this crisis [Ms. Remick's assault],"
> ...
> { f 150 } [ m 152 ]  "to add to the . . . psychological compression and harm to [Child A] that he imposes upon her."
> ...
> { f 151 } [ m 153 ]  "[Lani Remick and Child A] could lunch with a hundred witnesses and Adam would 'think' this occurred."

41

...
**{ f 152 } [ m 154 ]**   "Adam's internal experiences without regard for objective reality is the reality he manufactures."
...
"His privilege is what has protected him for this long."

Thank you, Dana
Dana Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

226.   On April 18, 2021, at about 6:35 p.m., Plaintiff's counsel emailed the Court Officer and Mr. Prescott to document: (1) Lani Remick did not deny the assault or give a different account; (2) the Portland Police found Child A credible and offered to escort Child A to retrieve the passport.

227.   On April 19, 2021, at about 9:40 a.m., Dana Prescott emailed Plaintiff's counsel, copying the Court Officer:

"It will not matter [what Lani Remick did to Child A]."
...
**{ f 153 } [ m 155 ]**   "Nothing anyone says can alter this kind of personality."
...
"Let me know when you want to organize [a] trial on Adam."

Dana.
Dana E. Prescott, Esq., JD MSW PhD"

228.   On April 21, 2021, at about 5:25 p.m., Plaintiffs' counsel emailed the Court Officer to document additional facts confirming Lani Remick's assault of Child A on April 13, 2021.

229.   On April 21, 2021, Plaintiff's counsel: (1) asked the court to schedule a final pretrial conference; (2) provided facts showing Child B "[is] being held out by opposing counsel [and Ms. Remick]"; and (3) documented to the court the facts of Ms. Remick's assault of Child A.

230.   On April 22, 2021, at about 2:20 p.m., Plaintiff's counsel emailed Dana Prescott, copying the Court Officer:

In light of [April 13, 2021] [and now also Ms. Remick's new] threats to call the police on [her own child] if [Child A] tried to 'steal' [the passport],
...

I understand [that Child A] has consulted the police to determine her right to these documents, and that the police have [again] offered to accompany [Child A] to [Ms. Remick's] house to pick [them] up."

231. On April 22, 2021, at about 2:55 p.m., Plaintiff's counsel emailed the Court Officer to document facts showing Lani Remick's assault of Child A was (a) ongoing retaliation against Child A for leaving Ms. Remick's home for Plaintiff's; (b) animus by Ms. Remick against Child A's identity; and (c) contrasted with her gifting Child B expensive laptops, video cameras, and drones.

232. On June 29, 2021, Plaintiff's counsel, copying the Court Officer, sent Dana Prescott a formal four-page settlement officer focused on the best interests of Child A and B.

233. Dana Prescott and Lani Remick did not respond.

234. On July 7, 2021, Plaintiff's counsel wrote the Trustee of the Children's Trust:

"[I am] concerned about [Trust] financial misconduct on Lani [Remick's] part and requests [I] anticipate [Ms. Remick] may make.
...
Lani [Remick] has [secretly taken Child B out of public school] without Adam's knowledge or consent, in violation of basic parental rights, [so that Ms. Remick can leverage that, including for false reimbursements from the Trust.]"

235. On July 8, 2021, the Court Officer filed a final report with the state court indicating: (1) it was not in Child A's interests to reside with Lani Remick; (2) Ms. Remick was influencing the children, both witnesses; (3) she was placing her own self-interests before Child B's interests; and (4) she was withholding Child B from being able to see his father, for leverage.

236. On July 9, 2021, at about 11:35 a.m., Dana Prescott emailed Plaintiff's counsel and the Court Officer:

[ m 156 ]  "[Lani Remick and I will have] a trial on . . . Adam's thinking process he so desperately needs to live his life each day[.]"
...
[ m 157 ]  "We are months away from a 5-day trial [on Adam's mental illness]."
...

"[We will not demand a trial] if Adam [waives all his rights.]"

Dana Prescott, Esq., JD MSW PhD
Prescott Jamieson Murphy Law Group"

237.　On July 9, 2021, at about 1:40 p.m., Plaintiff's counsel emailed the Court Officer and Dana Prescott to document: (1) Mr. Prescott and Ms. Remick knew, including from Plaintiff's psychiatrist and the children's therapists, that their mental illness diagnoses were false; yet (2) they continued to diagnose Plaintiff; and (3) they continued to withhold Child B for self-gain.

238.　On July 10, 2021, at about 3:35 p.m., Dana Prescott emailed Plaintiff's counsel:

"[You should] stop doing that."
...
"[R]emember [I] have not yet turned a
forensic psychologist on Adam."

239.　On July 12, 2021, at about 2:30 p.m., Plaintiff's counsel served on Dana Prescott a formal settlement offer that matched the Court Officer's final recommendations to the court.

240.　On July 13, 2021, at about 9:45 a.m., Dana Prescott emailed Plaintiff's counsel:

"[We will create] a morass [for Adam]."

241.　On July 13, 2021, Dana Prescott directed and caused an employee of PJMLG to file with the state court, by U.S. Mail and email, a letter on PJMLG letterhead and a court filing titled "[Lani Remick's] Response to Offer", hand-signed by Prescott, served on the Court Officer and Plaintiff's counsel the same ways, in which Dana Prescott wrote to the state court:

{ f 154 } [ m 158 ]　"[Plaintiff's counsel's settlement offer] is only a small part of the aggressive behaviors,"
...
{ f 155 } [ m 159 ]　"and thought distortions engaged in by Adam[.]"
...
{ f 156 } [ m 160 ]　"Adam's privilege has protected him from consequences that few fathers in poverty . . . would receive[.]"
...
{ f 157 }　"[H]e has threatened the [children's Court Officer],"
...
{ f 158 }　"and other professionals,"

44

...

**{ f 159 } [ m 161 ]** "among various other behaviors the court may hear at trial."

...

**[ m 162 ]** "Adam believes his . . . perceptions; a too common trait in the public square he shares with others these days."

…

**{ f 160 } [ m 166 ]** "Adam's [settlement offer that matches the Court Officer's recommendations] is [proof] of the aggressive behaviors and thought distortions engaged in by Adam."

. . .

**{ f 161 } [ m 164 ]** "Adam is [incapable of being able to] stop [harming] children."

Dana E. Prescott, Esq., JD MSW PhD, Maine Bar No. 2771
Prescott Jamieson Murphy Law Group"

242.    On August 4, 2021, Plaintiffs' counsel wrote the Trustee of the Children's Trust:

"I am writing in response to the request for funds from the Trust made by Lani Remick on July 30, 2021 [for $58,581.77].
...
Based on the list of items for which Lani has requested reimbursement from the Trust, she is requesting reimbursement for numerous items, totaling thousands of dollars, that are not among those approved to be paid from the Trust[.]
...
Lani's reimbursement[s] for [her] personal recreation activities [is an] example.
...
Therefore, and also in light of Lani [Remick's] indication that she . . . already received funds from the Trust for similar Remick items in the past that the Trust was not intended to cover,
...
I am asking that no distribution be made until this issue can be resolved[.]"

243.    Between August 4 and August 12, 2021, Plaintiff raised with Child B's therapist Jeff Levy, a licensed MSW from Saco Maine near PJMLG, facts relating to the following.

244.    On August 12, 2021, at about 9:25 a.m., Prescott emailed the Court Officer:

**{ f 162 }** "Adam [is] trying to involve DHHS[.]"
...
**[ m 165 ]** "I am not sure we can keep the kids safe as long as Adam has unsupervised access.

Thank you, Dana.

Dana E. Prescott, Esq. JD MSW PhD

245.     On August 12, 2021, at about 10:15 a.m., Plaintiff's counsel emailed the Court

Officer, copying Dana Prescott:

> "[I] raised long ago that [witnesses observed Ms. Remick engaging in
> [redacted conduct] with [redacted name] in her residence].
> ...
> [It now appears the children's Court Officer never addressed this.]
> ...
> [It is] not appropriate for [Ms. Remick] to be engaging in [redacted] with
> [redacted], who is a teenager, [and now witnesses] on the Fourth of July have
> observed [Ms. Remick engaging in the conduct again].
> ...
> Coupled with . . . the resumption of lavish spending by Lani [Remick]
> on [redacted] that has also occurred at other point[s] in this case, [my
> client properly notified Jeff Levy as therapist[.]"
> ...
> This is all long after the matter was entrusted to the [Court Officer].
> ...
> [Mr. Prescott's] response is to continue threats that [he and] Lani [will
> have a] 5-day trial full of personal attacks [about mental illness] in which
> the goal seems to be to try to destroy [my client] in some way[.]"

246.     On or before August 12, 2021, DHHS investigator E.D. interviewed Lani Remick;

requested to record the interview; and Lani Remick refused, as later reported by E.D. to DHHS.

247.     On August 12, 2021, DHHS investigator E.D. recorded an interview of Plaintiff.

248.     On August 12, 2021, DHHS's E.D. informed Plaintiff: (a) the Court Officer was prior

notified of the conduct by a January 13, 2021 email; but (b) the Court Officer never responded.

249.     On August 13, 2021, the state court entered an order for Lani Remick to produce

"complete tax [returns for] 2018, 2019, and 2020 by September 1, 2021."

250.     On August 23, 2021, at about 9:55 a.m., Plaintiff's counsel emailed Dana Prescott

to discuss the financial facts in this Complaint; at about 10:20 a.m., Prescott declined and stated

that he would move for a 5-day trial about Plaintiff's mental illness.

251.    On August 26, 2021, Plaintiff's counsel emailed Dana Prescott again to discuss the financial facts in this complaint; at about 12:35 p.m., Prescott repeated his statement in ¶ 107.

252.    On September 1, 2021, at about 8:10 p.m., Plaintiff's counsel emailed Dana Prescott requesting compliance with the state court's August 13, 2021 order for Lani Remick to produce "complete tax [returns for] 2018, 2019, and 2020 by September 1, 2021."

253.    On September 2, 2021, at about 8:25 p.m., Prescott emailed Plaintiff's counsel:

> "[I will delay] this case [so it] will not go to trial [for another year]."
> ...
> **[ m 166 ]**   "[Trial about Adam's mental illness] is an inevitable event."
>
> Dana Prescott, Esq., JD MSW PhD
> Prescott Jamieson Murphy Law Group

254.    On September 7, 2021, at about 10:10 a.m., Dana Prescott directed and caused an employee of PJMLG, T.Y., to write and send an email to Plaintiff's counsel, signed by a PJMLG signature block, in which the PJMLG employee wrote at Prescott's direction:

> **{ f 163 }**   "My understanding is you and Attorney Prescott are working on things so we [PJMLG] will not be [accepting your production] at this time. /s/ PJMLG."

255.    On September 8, 2021, at about 7:55 a.m., Prescott emailed Plaintiff's counsel:

> **{ f 164 }**   "As we agreed I deleted [your production]";
> ...
> "[We do not need to] comply with the August 13, 2021 order[.]"
>
> Dana Prescott, Esq., JD MSW PhD
> Prescott Jamieson Murphy Law Group

256.    On September 8, 2021, at about 9:20 a.m., Plaintiff's counsel emailed Prescott:

> "[Please advise,] what did you delete and why? . . . [Ms. Remick's] tax returns are pertinent to a number of [issues] implicat[ing] her income[]."

257.    On September 9, 2021, at about 4:40 p.m., Plaintiff's counsel emailed Prescott:

> "Motion[s] to modify [cause] parties' incomes and tax returns [to be] implicated [by default].

Case 2:25-cv-00060-JCN    Document 1    Filed 02/18/25    Page 48 of 113    PageID #: 48

...

[Please] look at the court's form. The form itself requires the filing and exchange of [income] affidavits (form FM-050).

…

[F]or the reasons . . . in the [last court] conference, the court agreed it was important and necessary in this case that [Lani Remick's] tax returns provide the full income picture,

...

given . . . the nature of her cases such as [The L Case and the G Case].

...

So the Court ordered the production of [Lani Remick's] tax returns.

…

Why the resistance? What is [Ms. Remick] trying to hide?

…

[A]s I have been requesting since September 1, when [her] tax returns were to have been produced, please produce Lani [Remick]'s tax returns."

258.    On September 10, 2021, at about 8:45 a.m., Prescott emailed Plaintiff's counsel, copying the Court Officer:

{ **f 165** }   "In [ignoring the court order on taxes] I am trying to move this case along as equitably . . . as possible [for the children]."

...

"That does not appear possible, rather sadly. I tried."

Dana Prescott, Esq., JD MSW PhD

259.    On September 10, 2021, Dana Prescott and Lani Remick: (1) signed and filed in state court, for the court's signature, by U.S. Mail and email, an "Interim Order (Waynflete)"; (2) served the order by U.S. Mail and email on Plaintiff's counsel and the Court Officer; and (3) filed and served a hand-signed letter on PJMLG letterhead, including by (4) directing and causing an employee of PJMLG to carry out the transmittals by email and U.S. Mail; (5) in which Dana Prescott and Lani Remick attempted to cause the state court to sign an order stating:

{ **f 166** }   "[This] motion [is] by agreement of the parties."

...

{ **f 167** }   **"**Lani has produced her taxes."

...

{ **f 168** }   "[T]he [parties agree] the order on tax returns is deferred."

Dana E. Prescott, Esq., JD MSW PhD, Maine Bar No. 2771

Prescott Jamieson Murphy Law Group

260.    On September 10, 2021, at about 4:40 p.m., Plaintiff's counsel emailed Prescott:

"Attorney Prescott: There is no pending motion[.]
...
[Your filing for court to sign] is clearly really about [your] effort to evade
the court's August 13, 2021 order regarding production of tax returns[,]
while pretending to be about something else.
…
[T]his [is] essentially a fraud upon the court[.]
...
There is simply no appropriate purpose for [your] submission[.]
…
Lani [Remick's refusal to comply with the order to produce her
taxes caused me to . . . try to understand why she could possibly
be resisting so inordinately strongly,
...
which has led me to the discovery that Lani Remick has never
complied with the provisions [in the court's 2017 Judgment]
regarding The L case and The G case[.]"

261.    On September 11, 2021 at about 10:10 a.m., Dana Prescott emailed Plaintiff's

counsel: "We will [go] to trial . . . [Adam] engage[s] in iterative loops to no end."

262.    On September 16, 2021, DHHS sent Plaintiff a "Notice of No Findings":

DHHS recently completed a Child Protection Investigation . . . . This
letter is to inform you that after completing the investigation, a decision
was made that the information obtained does not support findings of
abuse and/or neglect by you to [Child B.]."

263.    On September 17, 2021, a DHHS Supervisor informed Plaintiff that Jeff Levy had

reported Plaintiff, not Ms. Remick, as to the conduct in ¶ 245; on facts herein, Dana Prescott

pressured Jeff Levy by same or similar methods Dana Prescott used with the Court Officer herein.

264.    On September 22, 2021, Plaintiff's counsel filed a motion in state court to hold

Lani Anne Remick, Esq. in contempt of court.

265.    On November 16, 2021, the state court held a hearing on Lani Remick's and Dana

Prescott's refusal to produce taxes and the court informed them they both faced court sanctions.

49

266.    On November 17, 2021, Dana Prescott and Lani Remick filed with the state court, by U.S. Mail and email, "Lani Remick's [Full] 2018 Tax Return, [Full] 2019 Tax Return, and [Full] 2020 Tax Return"; served them by U.S. Mail and email on Plaintiff's counsel; and (3) filed and served a hand-signed letter on PJMLG letterhead, including by (4) directing and causing an employee of PJMLG to carry out the transmittals by email and U.S. Mail.

267.    On facts herein, the three tax returns should have totaled 750 to 1,200 pages.

268.    The returns produced by Mr. Prescott and Ms. Remick: (a) totaled 71 pages; (b) had tax and income irregularities; (c) indicated complex compensation structures through Paul Scott's law firm in California, LOPDS PC; (d) suggested Ms. Remick had at least $1,238,644.00 in income from 2018 to 2020; and showed (d) Ms. Remick was still refusing to produce her 2017 taxes.

269.    The partial tax returns indicated: (a) unusual federal tax over-withholdings; (b) undisclosed tax refunds; (c) altered check details; (d) income shifts between "bonus" and "regular"; (e) income diverted to a SEP IRA; (f) income deferred to later years; (g) income held by LOPDS not sent by check or wire to Maine; and (h) more undisclosed cases beyond The L and G cases.

270.    On November 18, 2021, at about 3:50 p.m., Prescott emailed Plaintiff's counsel and stated that he and Lani Remick would continue leveraging Child B and Plaintiff's parenting rights unless Plaintiff provided waivers and releases to Lani Remick back to 2014.

271.    On November 22, 2021, Dana Prescott and Lani Remick: (1) signed and filed in state court, by U.S. Mail and email, "[Lani Remick's] Objection for Motion for Contempt"; (2) served it by U.S. Mail and email on Plaintiff's counsel and the Court Officer; and (3) filed and served a letter on PJMLG letterhead, including by (4) directing and causing an employee of PJMLG to carry out the transmittals by email and U.S. Mail; (5) which stated to the court:

> "Now Comes Lani Remick and states:
> …

**[ m 167 ]**  "Assessing the accuracy of any statements made by [Plaintiff] . . . is complex.

...

**{ f 169 } [ m 168 ]**  "[Plaintiff's] view of 'facts' has many alternative realities . . . even when it may benefit him.

...

**{ f 170 }**  "And why trial will begin with a line-up of professionals that [he] threatened."

…

**{ f 171 }**  "Lani [Remick] pays for everything [for the children]."

…

**{ f 172 }**  "Lani [Remick has] provided her tax returns."

…

**{ f 173 } [ m 169 ]**  "Adam's thought processes [are] iterations [of] various factoids."

Dana E. Prescott, Esq., JD MSW PhD, Maine Bar No. 2771
Prescot Jamieson Murphy Law Group

272.    On November 22, 2021, in their Objection to the contempt motion, Ms. Remick and Mr. Prescott did not deny any facts; they did not offer a different account; and they did not respond to the facts. They filed with the state court an Objection that made false statements to the court.

273.    On December 13, 2021, at about 12:50 p.m., Dana Prescott and Lani Remick: (1) signed and filed in state court, for the court's signature, by U.S. Mail and email, a "Stipulated Final Order"; (2) served it by U.S. Mail and email on Plaintiff's counsel and the Court Officer; and (3) filed and served a hand-signed letter on PJMLG letterhead, including by (4) directing and causing an employee of PJMLG to carry out the transmittals by email and U.S. Mail; (5) which provided for the court's signature:

**{ f 174 }**  [Altered text from the existing Judgment that now omitted Lani Remick's statutory obligation to state her income];

...

**{ f 175 }**  [Altered text from the existing Judgment that now allowed Lani Remick to continue to withhold Child B unless Plaintiff provided waivers and releases to Lani Remick];

...

**{ f 176 }**  [Added text that Lani Remick was excused from the court order to pay taxes because she had fully complied];

...

> **{ f 177 }**   [Added text stating the contempt motion was denied];
> ...
> [Added text requiring the Children's Trust to pay all her claims]
> ...
> [Added: "The parties agree that all payments and information regarding the "L" case and the "G" case have been made and [Lani Remick] is forever released from any such other obligations[.]"
>
> Dana E. Prescott, Esq., JD MSW PhD, Maine Bar No. 2771
> Prescott Jamieson Murphy Law Group

274.    On December 13, 2021, at about 3:35 p.m., Plaintiff's counsel's assistant emailed Mr. Prescott's assistant, PJMLG employee T.Y., for the required court form FM-50 and its mandatory financial information, including Lani Remick's income, for a pending court hearing.

275.    On December 13, 2021, at about 3:50 p.m., Dana Prescott emailed Plaintiff's counsel's assistant that he and Lani Remick would not comply or provide Ms. Remick's income.

276.    On December 13, 2021, Plaintiff's counsel sent a letter to the Court Officer to: (1) document that Prescott and Remick continued to leverage Child B for financial and legal self-interest; and (2) request that Ms. Remick and Mr. Prescott end their leveraging of Child B.

277.    By December 31, 2021, Lani Remick and Paul Scott did not comply with the 2017, 2018, 2019, 2020, or 2021 "L Case" annual requirements in the 2017 Judgment.

278.    By December 31, 2021, Lani Remick and Paul Scott did not comply with the 2017, 2018, 2019, 2020, or 2021 "G Case" annual requirements in the 2017 Judgment.

## **2022**

279.    On January 13, 2022, at about 3:55 p.m., Plaintiff's counsel sent a letter to Dana Prescott, copying the Judicial Officer:

> Lani [Remick's] effort to condition [a child's time with a parent] on unrelated financial and legal concessions,
> ...
> including waiving funds awarded to [my client and the Children's Trust] [in the 2017 Judgment],

...
and waiving the right to receive the court-ordered disclosures to ensure
the amounts to which he is entitled and the children are entitled,
...
is unethical[.]
...
I will not be part of [Lani Remick's and your] demand that [Plaintiff]
make unrelated financial concessions to [end your leveraging of] children.
...
You seek to keep conduct by your client—the conditioning of the
children's lives on unrelated financial concessions by their father—
hidden from the [state court].
…
[T]he children should not be held hostage[.]"

280.    On January 14, 2022, at about 12:10 p.m., Dana Prescott emailed Plaintiff's counsel:

"[B]e more careful."

...
**[ m 170 ]**  "[I have] decided on trial [for Adam]. Same issues will arise."

281.    On February 28, 2022, Plaintiff's counsel emailed Dana Prescott, requesting

cooperation about Dana Prescott's, Ms. Remick's, and E.F.'s retirement order alterations herein:

"[Adam] has incurred significant fees [and stress,]
...
including the need to fix the [alteration] of the effective date of transfer [by] Lani
[Remick] . . . . [Now] four orders [are] necessary to get all the retirement funds
appropriately transferred: (1) a cover order; (2) the proposed FB&M QDRO; (3)
the proposed SEP IRA DRO; and (4) the proposed Supplemental TSP Order[.]"

282.    Dana Prescott did not respond.

283.    On March 2, 2022, Dana Prescott and Lani Remick: (1) hand-signed and filed in

state court, by U.S. Mail and email, "[Lani Remick's] Supplemental Response to Pending Motions

and Objections"; (2) served it by U.S. Mail and email on the Judicial Officer and Plaintiff's counsel;

(3) signed, filed, and served a cover letter on PJMLG letterhead to "Maine District Court, Portland,

ME" stating "For filing, please find [Lani Anne Remick's] Supplemental Response to Pending

Motions and Objections"; (4) directed and caused employees of PJMLG to work with the

documents and carry out the transmittals by email and U.S. Mail; and (5) filed with the state court two original notarized documents: (a) a hand-signed sworn "Affidavit of Lani Remick" signed under penalty of perjury by "Lani Anne Remick, Esq."; and (b) a hand-signed sworn "Certification" signed under penalty of perjury by "Paul D. Scott, Esq." of "The Law Offices of Paul Scott, P.C."

284.   On March 2, 2022, the court filing in ¶ 283 showed that the filed "Affidavit of Lani Remick" had been executed and notarized by Lani Remick on December 8, 2021, which was 84 days before Dana Prescott and Lani Remick filed it with the state court on March 2, 2022.

285.   In her Affidavit, Lani Remick swore and signed under penalty of perjury:

> ...
> { **f 178** }   "I have provided all information and all distributions related to payments from the 'L' case as required by the [state court] Judgment."
> (Page 1, Para. 3)
> ...
> { **f 179** }   "Other than the [payments listed in this Affidavit], I did not receive any further payments on the 'L' case[.] (Page 2, Para. 7, part 1)
> ...
> { **f 180** }   "No other amounts were withheld from me." (Page 2, Para. 7, part 2)
> ...
> { **f 181** }   "I have disclosed all amounts due related to the 'L' case pursuant to the [State Court] Judgment." (Page 2, Para. 7, part 3)

286.   In his Certification, Paul Scott stated "to the best of [my] knowledge, information and belief" and not under penalty of perjury:

> "Lani Anne Remick is employed at my law firm, The Law Offices of Paul D. Scott, P.C., where she worked on the "L" case and the "G" case. I certify that the above statements regarding payments to Lani in connection with the "L" case, and the outcome of the "G" case, are true and correct."

287.   On March 2, 2022, the filing in ¶ 283 showed the Certification by Paul Scott was executed and notarized on December 1, 2021, which was (a) 91 days before Mr. Prescott and Ms. Remick filed it with the state court on March 2, 2022; and (b) 7 days before Lani Remick executed and notarized her Affidavit on December 8, 2021.

288.    On March 2, 2022, the filing in ¶ 283 showed: (1) the Certification in California was made seven days before the Affidavit existed in Maine; (2); the Certification and Affidavit had the same unique typeface; (3) it matched PJMLG's; (4) the Certification said "Maine, YORK County, November 2021" which was PJMLG's location; (5) the Certification had irregular spacing and misaligned text above Paul Scott's signature; (6) the Certification had disrupted text flow; (7) the Affidavit contained irregular spacing and misaligned text above Lani Remick's signature; and (8) the Affidavit showed disrupted text flow with large blank areas on pages.

289.    On facts herein, (a) Lani Remick and Dana Prescott created a blank Certification in Maine; (b) Paul Scott and LOPDS signed that blank Certification in California; (c) Lani Remick and Dana Prescott created the Affidavit in Maine seven days later; and (d) filed both the California certification and the Maine affidavit with the state court, ¶ 283.

290.    On facts herein, Dana Prescott, Lani Remick, and Paul Scott directed or caused employees of PJMLG and LOPDS to participate, including to conceal from the state court, the Children's Trust, and Plaintiff (a) information about the L and G cases required to be disclosed by the state court Judgment; and (2) money from the L and G cases required to be distributed to the Children's Trust and Plaintiff by that Judgment.

291.    On March 2, 2022, the filing in ¶ 283 showed: (1) Lani Remick perjured herself in her Affidavit; (2) Lani Remick and Dana Prescott filed her fraudulent Affidavit in court; (3) Lani Remick and Dana Prescott used that fraudulently filed Affidavit to defraud the court about her 2017 Judgment reporting compliance; (4) Lani Remick and Dana Prescott used that fraudulently filed Affidavit to conceal the L case fraud and the G case fraud, both governed by the court's Judgment; and (5) Lani Remick, Dana Prescott, Paul Scott, LOPDS, and PJMLG together created and submitted a false Certification, including by U.S. Mail between Maine and California.

292.    On facts herein, Defendants knowingly participated in, caused, and effected the March 2, 2022 fraudulent filing despite knowing at the time that it, and its statements, were false; they acted with intent to deceive and defraud Plaintiff, the Children's Trust, and the court, including, but not limited to, concealing financial information and monies required to be disclosed and distributed under the Judgment; their filing and its statements were material; and as a direct result of the fraudulent filing and its false statements, Plaintiff and the Children's Trust suffered economic harms including, but not limited to, those noticed herein.

293.    On March 21, 2022, Plaintiff's counsel emailed Dana Prescott again requesting cooperation about his orders, because he had not responded to her February 28, 2022, email.

294.    On March 22, 2022, Dana Prescott informed Plaintiff's counsel that he would not cooperate to resolve his altered retirement orders and that he would not provide a reason.

295.    On April 14, 2022, at about 5:10 p.m., Plaintiff's counsel emailed Prescott, copying the Court Officer, to document that Mr. Prescott and Ms. Remick were now additionally leveraging Child B's tuition, at the school where Ms. Remick had secretly enrolled him, to obtain from Plaintiff full waivers and releases for the L case and for the G case.

296.    On April 15, 2022, at about 11:05 a.m., Dana Prescott emailed Plaintiff's counsel that she should "[mind your] tone."

297.    On May 10, 2022, at about 1:05 p.m., Lani Remick emailed the Trustee and demanded the Trustee pay all of Ms. Remick's reimbursement claims, stating:

> { f 182 }   "[T]here is no pending litigation in which the Trust is at issue";
> ...
> { f 183 }   "These [are] covered expenses in fact incurred for the children[.]"

298.    On May 10, 2022, at about 1:10 p.m., Lani Remick emailed the Trustee that Ms. Remick would prevent the Trust from paying Child A's college tuition unless the Trustee paid all of Ms. Remick's reimbursement claims.

299.    On May 13, 2022, at about 2:25 p.m., the Trustee emailed Lani Remick: (1) the Trust would pay Child A's tuition despite Ms. Remick's attempts to prevent it, and (2) the Trust would not pay Ms. Remick's reimbursement claims at that time.

300.    On June 3, 2022, at about 7:20 p.m., Lani Remick emailed Plaintiff directly: "You can resolve this by dismissing your motions [and giving me the waivers and releases I want]."

301.    On June 3, 2022, at about 9:05 p.m., Dana Prescott emailed the Court Officer, copying Plaintiff's counsel, and stated:

> **{ f 184 } [ m 171 ]**  "Adam is escalating again[.]"
> . . .
> **{ f 185 } [ m 172 ]**  "There are . . . many psychological  . . . reasons[.]"
> ...
> **{ f 186 } [ m 173 ]**  "[Adam is a] risk . . . [when placed] under stress."
> ...
> **{ f 187 }**  "[We] need to intervene to keep [the children] safe."
> ...
> **{ f 188 }**  "[Lani and I are] the current targets[.]"
> ...
> **{ f 189 }**  "[Adam] could shift suddenly to other professionals[.]"
> ...
> **{ f 190 }**  "or [the public]"
> ...
> "[A]nd times are sensitive enough these days[.]"
> ...
> "[We] should] intervene with the kids."
>
> Dana E. Prescott, Esq., JD MSW PhD, Maine Bar No. 2711
> Prescott Jamieson Murphy Law Group

302.    On facts herein, both the Court Officer and Plaintiff's counsel received and understood Mr. Prescott's June 3, 2022, email at 9:05 p.m. to state Plaintiff was: (a) already "target[ing]" Mr. Prescott and Ms. Remick; and (b) would "target" "other professionals" and "the public"; including because (c) Mr. Prescott's statement "and times are sensitive enough these days" referenced two national events the prior week: (i) the June 1, 2022, mass shooting at an Oklahoma

hospital by a person with a mental illness; and (ii) the May 24, 2022, mass shooting at an elementary school in Texas killing 19 children.

303.    On June 9, 2022, at about 6:05 p.m., Dana Prescott and Lani Remick sent Plaintiff's counsel a "Stipulated Final Order" that, if signed, would: (a) allow Ms. Remick to continue withholding Child B's time with his father; (b) order the Trustee to pay "[all] expenses already submitted to the Trustee by Lani"; (c) order that "all payments and information regarding [the L case and the G case] have been made [accurately] and [Lani Remick] is forever released from any [L case and G case] obligations"; and (d) deny the contempt motion as meritless.

304.    On June 23, 2022, at about 2:55 p.m., Prescott emailed Plaintiff's counsel that he would leave alone Plaintiff's actual diagnosis of bipolar 1, a statutory disability, "without a trial" if Plaintiff signed the "Stipulated Final Order" that Prescott had sent on June 9, 2022.

305.    On June 24, 2022, at about 6:50 p.m., Dana Prescott emailed the Trustee:

"Lani and I do not want you [the Trustee] to be the next one [harmed by Adam].
...
So Lani agrees with me that. . . . [you should liquidate the Trust]."
...
"That should keep [you] safe."

306.    On June 24, 2022, Dana Prescott (a) used attorney-client discussions and agreements both offensively and for fraud, waiving privileges; (b) further joined attempts to defraud Child A, Child B, and the Children's Trust, and harm Plaintiff; and (c) made a statement understood by the Trustee to mean that (i) Plaintiff would harm the Trustee and (ii) the Trustee was not safe.

307.    On June 24, 2022, at about 6:50 p.m., Dana Prescott also emailed Plaintiff's counsel:

"[I will have] the court [sanction] Adam for his motion for contempt."
...
[ m 174 ]   "And [I will] get all the professionals in court for [a] trial [about Adam's mental illness.]"

Dana Prescott, Esq. JD MSW PhD

308.    On June 30, 2022, at about 7:40 a.m., Plaintiff's counsel emailed the Court Officer:

"[As Dana Prescott and Lani Remick] keep . . . tying [parental rights and children] to [my client's] dismissing the motion for contempt[,]
...
and giving up his rights [on the L case, the G case, and any hidden cases].
...
[Please know that] to this day, zero information has been provided about the 'G' case from which funds were to be divided [as well]."

309.    On June 30, 2022, at about 7:40 a.m., Plaintiff's counsel's emailed the Court Officer again to document: (1) in 2021, Ms. Remick secretly dis-enrolled Child B from public school and enrolled him in a private school; and (2) in 2022, Ms. Remick secretly held Child B back a grade without grounds; and (3) Ms. Remick and Mr. Prescott continued to leverage both of these acts by Ms. Remick for waivers and releases that Ms. Remick had wanted for years.

310.    On June 30, 2022, at 7:40 a.m., Plaintiff's counsel also documented "continuing efforts [by Lani Remick] to take funds out of the Children's Trust" including "after specific representations [from Remick and Prescott] to the Trustee that [this] would not be done."

311.    On July 1, 2022, at about 11:25 a.m., Prescott emailed Plaintiff's counsel and (1) tied Child B to Plaintiff agreeing to Mr. Prescott's and Ms. Remick's June 9, 2022 proposed order; and (2) stated there would be a trial on Plaintiff's mental illness unless Plaintiff agreed.

312.    On July 1, 2022, at about 1:05 p.m., Plaintiff's counsel documented to the Court Officer: (a) "[Mr. Prescott and Ms. Remick] still take the position that unless [Plaintiff] dismisses the contempt motion [and] waives [the L and G cases], Ms. Remick will not [release Child B]."

313.    On July 5, 2022, at about 10:55 a.m., Plaintiff's counsel emailed Prescott, copying the Court Officer, requesting an end to Ms. Remick's blocking of Child A's tuition as leverage.

314.    On July 6, 2022, at about 2:20 p.m., Dana Prescott emailed Plaintiff's counsel, omitting the Court Officer, and again conditioned Child A's college tuition payments from the Trust on Plaintiff agreeing to Prescott's and Remick's June 9, 2022 proposed order.

315.    On July 21, 2022, Plaintiff's counsel sent a letter to Dana Prescott, copying the

Court Officer, stating in relevant part:

> "We do not yet have Ms. Remick's 2017 tax return, but her [partial] 2018 tax
> return establishes that [Lani Remick] substantially over-withheld taxes on
> payments related to the "L-case," thereby minimizing the amounts she paid to
> both the Children's Trust and [Plaintiff] as their respective shares of these funds.
> …
> Ms. Remick then personally received [as personal income] approximately an
> additional $40,000 of the "L-case" funds in the form of personal tax refunds to
> herself in that one year alone from proceeds from that case that had initially
> been withheld in taxes, by [Lani Remick], but which were not for an actual tax
> liability, as described above.
> …
> Yet Ms. Remick made no disclosure to the Children's Trust, the Trustee, nor
> [Plaintiff] nor his [undersigned] counsel. Nor did Ms. Remick distribute the
> funds to the Children's Trust or [Plaintiff], despite both her [September 2017]
> agreement and the governing court order. Ms. Remick then refused to produce
> relevant tax returns despite being under court order to do so.
> …
> Ms. Remick continued to refuse to produce court-ordered tax returns until
> after [I] had filed the motion for contempt specifically listing, among other
> acts, Ms. Remick's refusal to comply with the production order as one of
> the grounds for contempt, and even then, not until the judge warned Ms.
> Remick [and Mr. Prescott] of potential court consequences for her
> continued refusal to comply with the court order."

316.    On July 21, 2022, Plaintiff's counsel served mandatory financial discovery.

317.    On July 23, 2022, at about 6:15 p.m., Prescott emailed Plaintiff's counsel:

> "Dori: [You should] write with less aggression."

318.    On July 24, 2022, at about 8:35 p.m., Prescott emailed Plaintiff's counsel:

> [ m 175 ]   "You really want discovery on Adam's [disability]?"

319.    On July 27, 2022, at about 9:10 p.m., Plaintiff's counsel emailed the Court Officer

that Mr. Prescott and Ms. Remick continued to tie Child B to their demands; and "On the contempt

[motion], [Ms. Remick refuses to produce] a key document, her 2017 tax returns, to determine if

funds that should have been divided [to Plaintiff and the children including] 'L case' funds were

instead received by Ms. Remick as [false] tax refunds."

320.    On August 4, 2022, Dana Prescott and Lani Remick: (1) hand-signed and filed in state court, by U.S. Mail and email, "[Lani Remick's] Motion for Protective Order"; (2) served it by U.S. Mail and email on the Judicial Officer and Plaintiff's counsel; (3) filed and served a hand-signed cover letter on PJMLG letterhead; and (4) directed and caused an employee of PJMLG to carry out the transmittal by email and U.S. Mail, in which they stated to the state court as grounds to prevent production of Ms. Remick's 2017 tax return:

> { f 191 }   "[Plaintiff] will use [discovery] as another means of harassment."
> ...
> { f 139 } [ m 175 ]   "The Court already has the lengthy history of [Plaintiff's] behavior and the extent of the litigation he persists in pursuing."
> ...
> { f 192 }   "[T]he children have been safe [with Lani Remick]."
> ...
> { f 193 } [ m 176 ]   "[Plaintiff] will begin to show the effect of his control."
> ...
> [ m 194 ]   "Discovery is often the last bastion of those who seek to use the judicial process to oppress and control others."
> ...
> { f 195 } [ m 177 ]   "[Plaintiff] will not stop voluntarily.
>
> Dana E. Prescott, Esq. JD MSW PhD, Maine Bar No. 2771
> Prescott Jamieson Murphy Law Group

321.    On June 30, 2022, at about 7:40 a.m., Plaintiff's counsel documented that Ms. Remick continued to attempt to withdraw unauthorized funds from the Children's Trust despite assurances from Mr. Prescott to the Trustee that she would not.

322.    On August 8, 2022, Plaintiff's counsel documented more tying of Child B's time with his father to Plaintiff accepting Ms. Remick's demands for waivers and releases back to 2014.

323.    On August 9, 2022, at a court conference, Dana Prescott stated to the court:

> { f 196 }   "[The Court cannot have Lani Remick's 2017 taxes because they are the proprietary information and property of LOPDS in California.]"

324.    On August 9, 2022, Dana Prescott was informed by the court that if Mr. Prescott and Ms. Remick did not produce Lani Remick's 2017 tax return, they both faced court sanctions.

325.    On August 12, 2022, Dana Prescott and Lani Remick: (1) filed in state court, by U.S. Mail and email, "[Lani Remick's] [Full] 2017 Tax Return"; (2) served it by U.S. Mail and email on the Judicial Officer and Plaintiff's counsel; (3) filed and served a hand-signed cover letter on PJMLG letterhead; and (4) directed and caused an employee of PJMLG to carry out the transmittal by email and U.S. Mail.

326.    On August 12, 2022, Prescott and Remick produced an incomplete 2017 tax return.

327.    On August 13, 2022, at about 5:45 p.m. Prescott emailed Plaintiff's counsel:

"[If Adam wants Child B to be free], [it] means his motions are done."

328.    On August 19, 2022, Plaintiff's counsel documented to the Court Officer the continued tying of Child B to Dana Prescott's and Lani Remick's liability waivers and releases.

329.    On August 22, 2022, at about 2:55 p.m., Dana Prescott directed and caused T.Y. of PJMLG to transmit by email to Plaintiff's counsel a "Stipulated Post-Judgment Order" as the document the state court had ordered Mr. Prescott to draft to reflect the August 9, 2022, conference.

330.    Dana Prescott's August 22, 2022 document did not reflect the August 9, 2022 court conference; rather, if signed by the state court, it would have: (a) waived Ms. Remick's statutory duty to declare her income; (b) conditioned Plaintiff's constitutional parental rights, and Child B's time with his father, on Plaintiff first withdrawing the contempt motion as meritless; (c) ended the state court's jurisdiction over the Children's Trust; (d) stated Ms. Remick's reimbursement claims as to the Children's Trust were proper; (e) allowed a insurance policy Ms. Remick had obtained using Trust funds without disclosure; (f) stated two accounts Ms. Remick had funded with Trust funds without disclosure were "[known by] both parties and approv[ed by] the Trustee[.]; (g) granted for Ms. Remick a full financial release and a full legal liability release back to 2014.

331.    On September 22, 2022, a state court magistrate held a contempt motion discovery conference; before a new judge Dana Prescott made the same statement that he made in ¶ 323.

332.    On September 30, 2022, Plaintiff's counsel emailed a federal tax specialist, J.F., facts she had learned from Dana Prescott and E.F. noticed herein:

> "[Adam Wilson] . . . [needs to] try[] to get back the very significant taxes withheld on the TSP Distribution . . . he was not [made] aware that a distribution was going to be made . . . E.F. [was hired for] the QDROs, but never submitted them. Without [notice], Lani [Remick] [altered and] submitted the order . . . to TSP, resulting in the unexpected distribution in 2021 that is the source of the tax issue. [I am] still trying to work out the issues with the other QDROs[.]"

333.    On October 3, 2022, J.F. conveyed that there was no way to undo the TSP distribution caused by Ms. Remick and E.F., including because federal tax law prevented it.

**2023**

334.    On January 3, 2023, at about 10:35 a.m., Lani Remick emailed the Trustee, demanded "$14,739.00" and "$18,833.65," attached five spreadsheets, and stated to the Trustee:

> { **f 197** }   "[All of my claims are authorized by the Trust]"

335.    On January 10, 2023, the court conducted a "remote electronic" conference at which: (1) Mr. Prescott and Ms. Remick each stated Ms. Remick's income to be numbers contradicted by her partial tax returns; and (2) the court ordered them to file the statutory income form under oath within 21 days; however, (3) Dana Prescott and Lani Remick never complied.

336.    On March 22, 2023, at about 12:50 p.m., Lani Remick emailed the Trustee:

> { **f 198** }   "[There is] no pending court action which could or should prevent you from paying covered reimbursements as Trustee."

337.    On April 7, 2023, at about 4:50 p.m., Lani Remick emailed the Trustee, attached spreadsheets, demanded "$14,739.00" and "$26,741.75" and stated:

> { **f 199** }   "I am unaware of any pending court action that [impacts] your ability to make these covered reimbursements."

338.    On May 3, 2023, Dana Prescott wrote the Trustee and suggested there was merit to the Trustee's concerns about Ms. Remick's reimbursement claims against the Children's Trust.

339.    On May 8, 2023, at about 4:35 p.m., Lani Remick emailed the Trustee:

> **{ f 200 }**   "[I demand] reimbursement of 'covered' Trust expenses already advanced by me on the children's behalf."

340.    On May 11, 2023, at about 9:25 a.m., Lani Remick emailed Plaintiff and tied Child B to Plaintiff agreeing to "Dismiss all pending matters, including the contempt motion"; agreeing to the Trustee paying the reimbursements; and signing a "comprehensive release" back to 2014.

341.    On June 14, 2023, at about 6:10 p.m., E.F. emailed Plaintiff's counsel and confirmed his prior statements herein, including that Lani Remick had "change[d] [court] orders" with him "in 2020 and 2021" that were "directed to [FBM], the Federal TSP, and [Wells Fargo]" accounts for which Ms. Remick was the fiduciary to Plaintiff under the 2017 Judgment.

342.    On July 3, 2023, Lani Remick sent a letter to the TSP for a final small amount not transferred by the 2020 TSP facts herein; this time Ms. Remick copied Plaintiff on both her letter and the court order she attached by U.S. Priority Mail with tracking and delivery confirmation.

343.    The July 3, 2023 letter from Ms. Remick to the TSP resulted in Plaintiff receiving multiple standard letters from TSP: (a) a "Retirement Benefits Court Order (RBCO) Transfer Confirmation" showing that processing had started; then (b) a "Notice of Action Needed" showing how to avoid liquidations and tax penalties; then (c) a "Payments Rights Notice" stating the same; and then (d) a "Confirmation of RBCO Asset Transfer" stating that Plaintiff would have a final standard 60-day period to transfer before an automatic liquidation and tax event would occur.

344.    On December 28, 2023 at about 12:10 p.m., Lani Remick emailed the Trustee, demanded "a reimbursement check for $53,566.17," and stated to the Trustee:

{ **f 201** }   "[These are all] 'covered' [Trust expenses]."

345.    On December 29, 2023, at about 3:05 p.m., Lani Remick emailed the Trustee:

{ **f 202** }   "[M]y expenses were] incurred for the benefit of the children[.]"

### 2024 and 2025

346.    On June 17, 2024 at about 4:25 p.m., Lani Remick emailed the Trustee:

"Pay all [my] claims to the Trust . . . pursuant to your duties as Trustee."

347.    On June 24, 2024, at about 9:10 a.m., the Trustee of the Children's Trust emailed

Lani Remick, copying Plaintiff, and again declined to pay Lani Remick's reimbursements.

348.    On December 18, 2024 at about 2:20 p.m., Lani Remick emailed the Trustee:

"[P]roceed with performance of your duties as Trustee [and pay] "my long-
outstanding expense reimbursement requests previously submitted[.]"

349.    On January 28, 2025, at about 10:35 a.m., Lani Remick emailed the Trustee and

demanded again.

### Additional Allegations

### Conspiracies

350.    On January 12, 2016 or shortly thereafter, Lani Remick began to pursue the

unlawful means herein, for the reasons herein, including with Dana Prescott and the other co-

Defendants. In so doing, Lani Remick and Dana Prescott began and perpetrated three conspiracies:

353.    (First conspiracy:) From on or about February 8, 2016 and ongoing, in the states of

Maine, California, and elsewhere, a conspiracy of Lani Remick, Dana Prescott, PJMLG, Paul Scott,

and LOPDS to (a) defraud Child A, Child B, their Children's Education Trust, and Plaintiff; and

to (b) impair, obstruct, and defeat federally funded state court functions, by the schemes, manners,

methods, enterprises, and predicate acts noticed herein, in violation of laws herein; in which

Defendants knowingly conspired, agreed, joined, directed, caused, and effectuated with co-

conspirators and others to defraud and injure the above victims; and in which Defendants knowingly made statements that they knew were false at the time they made them, including false statements { f 1-202 } noticed herein, and including mental illness false medical statements [ m 1-177 ] noticed herein, in furtherance of the first conspiracy and its schemes.

354.    (Second conspiracy:) From on or about February 8, 2016 and ongoing, in the state of Maine and elsewhere, a conspiracy of Lani Remick, Dana Prescott and PJMLG to (a) defraud Plaintiff, a state court Judicial Referee, state court discovery magistrates, and state court presiding judges; and to (b) impair, obstruct, and defeat federally funded state court functions by which United States statutory and constitutional rights are protected, by the schemes, manners, methods, enterprises, and predicate acts noticed herein, in violation of laws herein; in which Defendants knowingly conspired, agreed, joined, directed, caused, and effectuated with co-conspirators and others to defraud and injure the above victims; and in which Defendants knowingly made statements that they knew were false at the time they made them, including false statements { f 1-202 } noticed herein, and including mental illness false medical statements [ m 1-177 ] noticed herein, in furtherance of the second conspiracy and its schemes.

355.    (Third conspiracy:) From on or about February 8, 2016, through on or about December 13, 2017; and resuming again on or about July 20, 2020, through on or about January 10, 2024, a conspiracy of Lani Remick, Dana Prescott, and PJMLG against (a) Plaintiff's mental illness disability of bipolar 1, a disability that is protected by state and federal law; and (b) against Plaintiff's rights under the Constitution of Maine and the Constitution of the United States; and to (c) impair, obstruct, and defeat federally funded state court functions by which United States statutory and constitutional rights are protected, by the schemes, manners, methods, enterprises, and predicate acts noticed herein, in violation of laws herein; in which Defendants knowingly

conspired, agreed, joined, directed, caused, and effectuated with co-conspirators to interfere with and defraud Plaintiff of state and federal statutory rights, state constitutional rights, and rights secured by the Constitution of the United States, including to attempt to induce Plaintiff to commit suicide as noticed herein; and in which Defendants knowingly made statements that they knew were false at the time they made them, including false statements { f 1-202 } noticed herein, and including mental illness false medical statements [ m 1-177 ] noticed herein, in furtherance of the third conspiracy and its schemes.

### Predicate Acts

356.    Defendants' predicate acts noticed herein to effectuate their conspiracies, enterprises, and schemes include, but are not limited to, wire fraud, mail fraud, extortion, obstruction, witness tampering, honest services fraud, federal hate crimes, interference with constitutional rights, conspiracy, and perjury, each and all indictable crimes pursuant to 18 U.S.C. §§ 241, 249, 1341, 1346, 1349, 1503, 1512(b), 1512(c), 1621, 1623, 1956, and 1957.

### Schemes

357.    Defendants' first ten schemes were schemes to effectuate their predicate acts.

358.    Defendants' additional schemes included, but were not limited to:

### Financial Fraud and Concealment Schemes

359.    A scheme starting in 2016 and ongoing to falsely depict the case in ¶ 17 as worthless as to all eight of its defendants, including by false statements and false writings to Plaintiff, the state court Judicial Referee, and the state court, in furtherance of and to conceal financial theft.

360.    A scheme from starting in 2016 and ongoing to conceal earnings from the case in ¶ 17 as to all eight defendants including, but not limited to, settlement payments received in Maine through Washington, D.C., California, Texas, and the United States Treasury; and including, but

not limited to, attorneys' fees received in Maine through Washington, D.C., California, and the United States Treasury; and including, but not limited to, settlement payments and attorney's fees received from the above but kept in California for Ms. Remick by Paul Scott and LOPDS, in furtherance of and to conceal financial theft.

361.    A scheme starting in 2017 and ongoing to violate state court disclosure and distribution compliance orders within a 2017 state court Judgment governing the case in ¶ 17, which Defendants called "The L Case", including by perjury to the state court by Ms. Remick, ¶ 283, and including by false court filings by Ms. Remick, Mr. Scott, LOPDS, Mr. Prescott, and PJMLG, in furtherance of and to conceal financial theft.

362.    A scheme starting in 2017 and ongoing to violate state court disclosure and distribution compliance orders within a 2017 state court Judgment governing a second and separate case, which Defendants called "The G Case", including by false court filings by Ms. Remick, Mr. Scott, LOPDS, Mr. Prescott, and PJMLG, in furtherance of and to conceal financial theft.

363.    A scheme from 2017 to 2024 to submit fraudulent court orders from Maine to financial institutions in New York and California, in furtherance of a separate attempted theft and to effectuate predicate acts herein, by Ms. Remick, Dana Prescott, PJMLG, and co-conspirator E.F.

364.    A scheme from 2020–2024 to submit a fraudulent court order and fraudulent legal instructions from Maine to the Federal Thrift Savings Plan Legal Department in Virginia, to harm Plaintiff's property held by Ms. Remick as a fiduciary, to effectuate predicate acts herein.

365.    A scheme from 2017 and ongoing to launder money stolen by Ms. Remick belonging to Child A, Child B, their Children's Education Trust, and Plaintiff, by effecting federal IRS tax over-withholdings, and effecting federal IRS refunds, which returned the money to Ms. Remick falsely as personal income, by Ms. Remick, Mr. Scott, Mr. Prescott, PJMLG, and through

co-conspirator M.S. of tax preparation company C.R., a corporation in Virginia, in furtherance of and to conceal financial theft.

366.    A scheme form 2017 to 2024 to injure Plaintiff's LLCs in Maine, including by false statements [ m 1-177 ] by Ms. Remick, Mr. Prescott, and PJMLG, to damage the business interests of both LLCs and their business reputations in Maine, to effectuate predicate acts herein.

367.    A scheme from 2017 to 2024 to preclude Plaintiff from having enough funds to provide for the children, by Ms. Remick and Mr. Prescott, including withholding Plaintiff's funds by Ms. Remick while a fiduciary, harming Plaintiff's LLCs, abuse of state court judicial process to incur time and expense, and through and false statements [ m 1-177 ] by Ms. Remick, Mr. Prescott, and PJMLG, to effectuate predicate acts herein.

368.    A scheme from 2018 to 2024 to violate a state court order to produce federal tax returns by Ms. Remick, Mr. Prescott, and PJMLG, in furtherance of and to conceal financial theft.

**State Court Abuse and Obstruction Schemes to Conceal Frauds**

369.    A scheme from 2020 to 2024 to make false statements to state court discovery magistrates and presiding judges, by Ms. Remick, Mr. Prescott, and PJMLG, to effectuate predicate acts and to conceal financial fraud.

370.    A scheme to defraud state court judges through frauds on the court by submitting (a) altered orders and (b) fraudulent proposed orders for the court to sign, by Ms., Remick, Mr. Prescott, and PJMLG, to effectuate predicate acts and conceal financial fraud.

371.    A scheme from 2020 to 2024 to violate state law income reporting requirements, by Ms. Remick, Mr. Prescott, and PJMLG, to effectuate predicate acts and to conceal financial fraud.

372.    A scheme from 2016 to 2024 to make strategic false statements to state court judicial referees, magistrates, and presiding judges, by Ms. Remick, Mr. Prescott, and PJMLG, to effectuate predicate acts and conceal financial fraud.

**Witness Tampering, Retaliation, Bribing, and Extortion Schemes**

373.    A scheme from 2016 to 2024 to tamper with the children's Court Officer, who both interviewed witnesses and was herself a witness, including by false statements **[ m 1-177 ]** and the facts herein, by Ms. Remick, Mr. Prescott, and PJMLG, to effectuate predicate acts.

374.    A scheme from 2016 to 2024 to extort the children's Court Officer, by Mr. Prescott, PJMLG, and aided by Ms. Remick, including as noticed herein, to effectuate predicate acts.

375.    A scheme from 2020 to 2024 to tamper with Child A, both a victim and a witness, through retaliation by Ms. Remick, aided by Mr. Prescott and PJMLG, to effectuate predicate acts.

376.    A scheme from  2020 to 2023 to tamper with Child B, a witness, through bribery by Ms. Remick, aided by Mr. Prescott and PJMLG, to effectuate predicate acts.

377.    A scheme in the fall of 2020 to tamper with a mandated reporter, and to interfere with an investigation by the Portland Police Department and the Cumberland County District Attorney's Office, by Ms. Remick, aided by Mr. Prescott and PJMLG, to effectuate predicate acts.

378.    A scheme from 2016 to 2022 to tamper with the children's teachers and professionals, all witnesses who would be interviewed by the children's Court Officer.

379.    A scheme in 2022 to extort Child B's therapist, Jeff Levy, by Mr. Prescott and PJMLG, and aided by Ms. Remick, including as noticed herein, to effectuate predicate acts.

**Interference With United States Constitutional Rights**

380.    A scheme from 2016 to 2024 to interfere with and defeat Plaintiff's fundamental constitutional right to parent Child A and Child B, including as noticed herein, by Ms. Remick, Mr. Prescott, PJMLG, and Ms. Smith, to conceal frauds and to effectuate predicate acts.

381.    A scheme from 2016 to 2024 to separately extort Plaintiff's fundamental constitutional right to parent, to extract and attempt to extract money and obtain contempt of court and other waivers and releases, by Ms. Remick, Mr. Prescott, and PJMLG, to conceal frauds and to effectuate predicate acts.

**Hate Crimes and Mental Illness Terrorization Schemes**

382.    A scheme from 2016 to 2017, resumed from 2020 to 2024, to make and disseminate false psychiatric diagnoses of Plaintiff without a medical license, including to the children's Court Officer and the state court, by Ms. Remick, Mr. Prescott, and PJMLG, to terrorize Plaintiff, to conceal frauds, and to effectuate predicate acts.

383.    A scheme from 2016 to 2017, resumed from 2020 to 2024, to make and disseminate false statements **[ m 1-177 ]** about Plaintiff's actual mental illness diagnosis and treatment, by Mr. Prescott, Ms. Remick, and PJMLG, to terrorize Plaintiff, to conceal frauds, and to effectuate predicate acts.

384.    A scheme in December 2020 to falsely "blue paper" and attempt to falsely cause the involuntary commitment of Plaintiff in a psychiatric hospital, by Ms. Remick, Mr. Prescot, and PJMLG, to terrorize Plaintiff, to conceal frauds, and to effectuate predicate acts.

385.    A scheme from 2016 to 2017, resumed from 2020 to 2024, to extort Plaintiff's mental illness of bipolar 1, a disability under state and federal law, in relation to his fundamental right to parent, to extract and attempt to extract money and to obtain contempt of court and other

waivers and releases, by Ms. Remick, Mr. Prescott, and PJMLG, to conceal frauds and to effectuate predicate acts.

386.    A scheme from 2016 to 2017, resumed from 2020 to 2024, to attempt to induce Plaintiff to commit suicide by terrorizing Plaintiff's mental illness by the cumulative acts noticed herein, by Ms. Remick, Mr. Prescott, and PJMLG, to conceal frauds, to effectuate predicate acts, and in furtherance of the predicate acts and schemes.

### Manner, Means, and Methodologies

387.    The Defendants' conspiracies, schemes, and predicate acts for the enterprises herein included, but are not limited to, the following manner and means used by Defendants and the enterprises to further the goals of the alternative enterprises and to achieve their purposes:

388.    Made and used their knowingly false financial and medical statements **{ f 1-202 }.**

389.    Made and used their knowingly false mental illness statements **[ m 1-177 ].**

390.    Made and used their knowingly false court filings.

391.    Made and filed their knowingly false court orders for court signatures.

392.    Organized and submitted a false court order to the Federal Thrift Savings Plan.

393.    Organized a knowingly false sworn affidavit to defraud a state court.

394.    Organized a knowingly fraudulent certification to defraud a state court.

395.    Directed and caused employees of two companies, PJMLG and LOPDS, to join.

396.    Extorted the children's Court Officer to write false statements to the state court.

397.    Extorted the children's Court Officer to conceal true facts from the state court.

398.    Extorted Child B's therapist to file a false mandated report with Maine DHHS.

399.    Made and used false statements to a medical doctor and to a court officer to attempt to have Plaintiff involuntarily committed in a state psychiatric hospital.

400.    Attempted to extort Plaintiff by leveraging two children.

401.    Caused Plaintiff and each of his LLCs financial losses.

402.    Tampered with over 10 witnesses, including a Court Officer.

403.    Retaliated against a child victim-witness, and bribed a second child.

404.    Used a Maine social worker license to make, disseminate, and exploit knowingly false medical diagnoses made without a medical license.

405.    Extorted the children's Court Officer to join schemes and predicate acts.

406.    Extorted Child B's therapist to join schemes and predicate acts.

407.    Directed U.S. Mail, checks, money wires, original notarized documents, court filings, emails, texts, and messages on app platforms to travel in and between Maine, California, Washington D.C., and Virginia, and elsewhere interstate.

408.    Continued despite their actual knowledge they were actively harming two children;

409.    Continued despite their actual knowledge they were actively harming Plaintiff, and Plaintiff's mental illness disability;

410.    Used and exploited irrational animus and fears related to mental illness;

411.    Attempted by their cumulative schemes and predicate acts to induce Plaintiff through his mental illness to commit suicide.

### Defendants' Knowledge of Falsity
### of their Statements and Claims

412.    Defendants made approximately three hundred and seventy-nine (379) knowingly false statements and claims herein, accumulating to a method, and those lies were false, and the Defendants knew they were false, including because the Defendants had personal knowledge of and deliberately disregarded the following examples:

a.  Defendants knew the true and actual amounts in the case noticed in ¶ 17, which Defendants called "The L Case", including amounts of settlements as to the eight defendants in that case, and including separate attorney's fees, including by and through Ms. Remick, Mr. Scott, and LOPDS; and USDOJ attorneys;

b.  Defendants knew the true and actual amounts in "The G Case" including by and through Ms. Remick, Mr. Scott, and LOPDS; and IRS attorneys;

c.  Defendants knew the true and actual nature of Ms. Remick's expenses that they falsely claimed against the Children's Education trust;

d.  Defendants knew from Plaintiff's psychiatrist, including through the Court Officer, that each of their statements **[ m 1-177 ]** was false and untrue;

e.  Defendants knew the same from Mr. Prescott having a Maine MSW license;

f.  Defendants knew the same from Ms. Remick having direct access to all of Plaintiff's psychiatrists since being diagnosed in 2000, in Washington D.C., San Francisco, New York City, and Portland;

g.  Defendants knew the same from the Court Officer's written statements to them, including based on interviews with witnesses, the children, and Plaintiff's treating psychiatrist since 2009 in Portland, a medical doctor;

h.  Defendants knew the same from Plaintiff's counsel and facts adduced;

i.  Defendants personally knew there were no facts that supported their false and untrue statements and claims.

413.    Specific knowingly false statements, and further reasons why Defendants knew they were false at the time Defendants made them, are noticed herein and are not exhaustive.

414.    Defendants disseminated their false claims to persons noticed herein and members of the public, lawyers, and businesspersons in Maine, for years, despite the fact that they knew, and had been informed directly, repeatedly, that their statements and claims were false and untrue.

415.    The Defendants' knowingly false statements were integral to each of Defendants' schemes, predicate acts, conspiracies, and enterprises herein.

**Additional LLC Allegations**

416.    Defendants engaged in a pattern of racketeering activity that targeted Plaintiff personally, as alleged in this Complaint, and, in furtherance of their scheme, also deliberately targeted Plaintiff's two business entities: (1) a Maine-incorporated LLC operating a nationwide conceptual art business and (2) a Maine-incorporated LLC providing nationwide legal appellate and complex motion brief writing services to law firms. Plaintiff's art LLC and Plaintiff's law LLC each suffered economic harm and financial injury due to Defendants' conduct. This conduct constitutes interference with interstate commerce through extortionate, fraudulent, and obstructive acts, resulting in damages recoverable under RICO, as well as under Maine state law.

417.    Plaintiff's art LLC began in 2017 and has secured sales in multiple U.S. states and internationally, including after being offered gallery representation by a nationally-known Chicago conceptual art gallery, including sales of his conceptual artworks, exceeding five figures per piece each year since 2017, including multiple sales and/or exhibitions in New York City, London, Los Angeles, Palm Beach, Houston, and Chicago, and including favorable press from Artforum Magazine in New York and Mousse Magazine in Italy; however, Plaintiff's art LLC has been unable to secure any sales in Maine, and has been able to participate in only one group show in Maine, such that the absence of business within Maine are additional facts of Defendants' targeting Plaintiff, as noticed in this Complaint and in this section.

418.     Plaintiff's law LLC began in 2017 and has established a federal and state appellate and complex motion brief writing service for boutique and specialized law firms, with repeat clients in multiple states including California (Los Angeles, Silicon Valley, Orange County, and San Francisco), New York (New York City, Westchester County), New Jersey, Arizona, Michigan, Nevada, and Philadelphia, Pennsylvania, and has earned both repeat business and testimonials from those from law firms in those locations; however, Plaintiff's law LLC has only received an inquiry from two law firms in Maine since 2017, and, after Defendants resumed their targeting in 2020, as noticed herein, Plaintiff's law LLC has received no inquiries and no business from any law firm or lawyer in Maine.

419.     On facts herein, Defendants separately targeted Plaintiff personally from 2017 to 2024, including by withholding funds and resources, leaving Plaintiff without financial means to pay for basic needs, including those necessary for parenting Child A and Child B. Because Plaintiff's sole source of income was through his two LLCs, and because Defendants each knew this, that targeting not only harmed Plaintiff personally but also directly impaired the viability of both the art LLC and the law LLC, including directly causing lost business opportunities in Maine and the ability to expand the businesses within Maine.

420.     On facts herein, Defendants engaged in a pattern of racketeering activity against not only Plaintiff personally but also his art LLC and his law LLC, including by the false statements, fraud, and obstruction noticed herein, with the intent and effect of harming Plaintiff's art LLC, and Plaintiff's law LLC by suppressing their ability to operate, contract, and compete within Maine; forcing Plaintiff into an economically vulnerable position that further harmed his business operations; and preventing Plaintiff from maintaining financial stability through the businesses that were his sole source of income. The economic harms noticed herein suffered by Plaintiff, his

art LLC, and his law LLC are each and separately directly attributable to Defendants' conduct, and each constitutes a separate cognizable direct injury under the causes of action noticed herein.

421.    Defendants deliberately harmed Plaintiff, his art LLC, and his law LLC in ways that constitute predicate acts under RICO or otherwise caused financial injury, including, without limitation: (a) spreading false or defamatory statements in Portland Maine, and elsewhere in Maine, about Plaintiff and his mental illness to damage the reputation and marketability of Plaintiff and his LLCs; (b) fraudulently interfering with business relationships by influencing third parties in Portland Maine, and elsewhere in Maine, to avoid working with Plaintiff's LLCs; (c) coercing third parties in Portland Maine and elsewhere in Maine to avoid business dealings with Plaintiff's LLCs; (d) filing frivolous motions and making false statements to courts and court officers in Portland Maine to burden Plaintiff and his LLCs with abusive legal costs and operational disruptions; and (e) intentionally overburdening Plaintiff with litigation costs and legal obstacles to drain business resources, consume Plaintiff's time as sole owner and sole employee, and impede the growth of both of the LLCs.

422.    As a direct result of Defendants' conduct, Plaintiff, Plaintiff's art LLC, and Plaintiff's law LLC each suffered separate and distinct directs financial harms, including: (a) loss of business projects and business relationships in Maine that would have otherwise generated revenue and long-term growth; (b) decline in revenue due to market interference in Maine; (c) preventing Plaintiff's LLCs from securing clients and projects they would have obtained in an unmanipulated market; (c) increased costs of doing business due to reputational damage in Portland Maine, Saco Maine, and elsewhere in Maine, requiring additional expenditures for advertising and client retention efforts; (d) increased litigation expenses incurred as a result of actions taken by Defendants to deplete business resources, including Plaintiff's time to run and

grow his businesses in Maine and in other states including, without limitation, New York, California, Florida, and Illinois; (e) loss of goodwill in Maine for Plaintiff as an attorney and as a conceptual artist; (f) loss of goodwill in Maine for the art LLC; (g) loss of goodwill in Maine for the law LLC; (h) reputational harm in Maine to Plaintiff personally, negatively impacting his ability to attract clients in Maine; (i) forced downsizing of both the art LLC and the law LLC, including during the periods noticed herein correlating to Defendants' other acts, including reduced ability to take on projects for both the art LLC and the law LLC, including due to financial constraints directly linked to Defendants' noticed interferences; and (j) loss of short term and long-term business growth opportunities resulting from noticed interferences in Maine.

423.    The damages sustained by the art LLC and the law LLC that are recoverable under RICO include: (a) lost business revenue caused by Defendants' racketeering activities, which obstructed contracts, clients, and revenue-generating opportunities; (b) interference with business expectancy, resulting in measurable financial harm; (c) financial losses caused by extortion, fraud, or coercion used to disrupt business operations; (d) costs incurred due to obstruction of business operations, including additional expenditures for alternative business strategies and corrective measures; (e) expenses related to defending against frivolous litigation brought as part of Defendants' racketeering activities; (f) loss of client relationships and goodwill due to fraudulent, defamatory, or extortionate acts committed by Defendants; (g) costs associated with attempting to regain business in the suppressed market of the state of Maine, including marketing expenses and reputation rehabilitation efforts necessary to overcome Defendants' conduct.

424.    The art LLC and the law LLC also suffered additional damages that, even if not recoverable under RICO, are actionable under Maine state law, including: (a) defamation-based reputational harm, directly impacting Plaintiff's ability to secure clients and business

opportunities; (b) tortious interference with business relations, whereby Defendants knowingly and intentionally obstructed contracts and business dealings; (c) emotional distress damages tied to the economic losses and harm suffered as a result of Defendants' targeting; (d) lost opportunity damages, quantifiable through comparison with business projections; (e) punitive damages, should it be determined that Defendants' conduct was intentional, malicious, or grossly reckless; (f) business valuation decline of both the art LLC and the law LLC due to suppression of market access and operational interference; (g) consequential damages stemming from the financial instability experienced by Plaintiff, his art LLC, and his law LLC, where both LLCs were Plaintiff's sole source of income, and where both LLCs experienced the loss of Plaintiff, each LLC's sole employee.

### Additional Unauthorized Practice of Medicine Allegations

425.    In Maine, the unauthorized practice of medicine is a criminal offense. Under Title 32, Section 3270 of the Maine Revised Statutes, any individual who practices medicine without a valid license is committing a Class C crime.

426.    Additionally, under Title 32, Section 3282-A, the Board of Licensure in Medicine may seek civil penalties against individuals engaging in unlicensed medical practice.

427.    In Maine, the practice of diagnosing mental illness or emotional disorders is regulated by state law. Under Title 32, Section 7053-A of the Maine Revised Statutes, a licensed social worker is prohibited from diagnosing mental illness and emotional disorders: "A licensed social worker may not diagnose mental illness and emotional disorders or provide psychotherapy."

428.    Additionally, the Maine Board of Social Worker Licensure provides, as stated in 02-416 C.M.R. Chapter 15, Section 1(2): "No licensed social worker . . . or licensed master social worker may diagnose . . . mental illness or emotional disorders."

429.   At no time did Dana E. Prescott have a license to practice medicine.

430.   At no time did Lani Anne Remick have a license to practice medicine.

431.   On facts herein, Dana E. Prescott engaged in the unauthorized practice of medicine.

432.   On facts herein, Lani A. Remick engaged in the unauthorized practice of medicine.

**Additional Fact Allegations**

433.   Defendants are licensed attorneys; Dana Prescott is licensed in Maine and Massachusetts; Lani Remick is licensed in Maine, California, and Pennsylvania; Paul Scott is licensed in California; Kristina Smith and all other Defendants are licensed in Maine.

434.   Dana Prescott holds Maine LMSW license LM10173, active since 2005.

435.   Mr. Prescott took an LMSW oath to uphold integrity, honesty, and ethics.

436.   All Defendants swore they would tell the truth, not make false statements, not conceal facts, act with integrity, and abide by the Rules of Professional Conduct.

437.   All 379 false statements herein were material, including on the facts in ¶¶ 17-349.

438.   All false statements furthered, concealed, or effectuated the conspiracies, schemes, enterprises, and predicate acts herein, including, but not limited to, on the basis of the other facts herein, and including, but not limited to, because each Defendant knew of, adopted, and ratified each other Defendant's false statements.

439.   All 379 false statements were known by each Defendant who made them to be false at the time made, including, but not limited to, by the other facts herein.

440.   Dana Prescott and Lani Remick took steps to ensure that Plaintiff saw all their writings and emails contemporaneous to the time Defendants wrote them, including by directing them at Plaintiff through Plaintiff's counsel, and the Court Officer; and Plaintiff did see them.

441.    Dana Prescott used only his PJMLG work email address herein; he used no other email; Lani Remick used multiple email addresses, including her LOPDS work email address.

442.    Dana Prescott and Lani Remick cc'd or bcc'd each other on each email and writing herein; read each other's emails and writings, adopted and ratified each of them, and did not amend or correct any of them.

443.    Some of the evidence referenced herein, including text messages and financial records related to the L Case and the G Case, has been spoliated by Lani Remick and/or Dana Prescott, meaning one or both of them has intentionally destroyed it, despite multiple duties to retain it; this is alleged on the basis of (i) other facts herein and (ii) other facts known but not set forth herein; where Defendants engaged in the spoliation in order to destroy evidence, to conceal, and to effectuate the conspiracies, schemes, and predicate acts herein.

444.    Shortly after the facts noticed in ¶¶ 131-133, Dana Prescott, using "black market" or "hacking" software, accessed interstate, or directed or caused to be accessed interstate, without authorization, the email account, server, and digital client files of Plaintiff's counsel through means of remote electronic intrusion; once inside, Dana Prescott intentionally deleted or erased, or directed or caused to be intentionally deleted or erased, Dana Prescott's previously sent email noticed in ¶¶ 131-133, to prevent its use as evidence in courts and legal process, despite knowing the email was material; this deletion and erasing of electronic records constitutes additional violations of federal statutes by Dana Prescott that are separate from, and in addition to, those noticed herein, including 18 U.S.C. § 1030 (the Computer Fraud and Abuse Act), 18 U.S.C. § 1512 (Obstruction), and 18 U.S.C. § 2701 (Stored Communications Act).

445.    Plaintiff reasonably and justifiably relied on each of Defendants' false statements { f 1-202 }, individually and collectively, and was harmed by that reliance as noticed in ¶¶ 17-349.

446.    Defendants knew and intended their false statements, individually and collectively, would be relied upon and cause injury, including by, but not limited to, facts herein.

447.    On facts herein, Defendants each and together were the proximate, but-for, foreseeable, and substantial cause of all injuries herein; no superseding or intervening cause, nor any event from a third party or an event, relieves them of liability.

448.    On both facts herein and facts not set forth herein, emails and text messages sent and received within the same state necessarily travel in interstate commerce due to how the infrastructures of email and text messaging both function. Emails and texts do not travel directly from sender to recipient; instead, they are routed through multiple servers located in different states, including because internet service providers and cellular networks distribute emails and texts across networks of servers across state lines. Even when both the sender and recipient are in the same state, emails and texts are processed, stored, and transmitted via out-of-state data centers before reaching the recipient. The use of out-of-state servers establishes an interstate nexus under 18 U.S.C. § 1343 and 18 U.S.C. § 2510 et seq., including because email and text data packets are broken up, routed dynamically, and cross state lines even when the sender and recipient are geographically close. For these and other reasons, federal courts have determined that electronic communications, including emails and texts, satisfy the interstate commerce requirement even if the sender and recipient are in the same state. This is because intrastate emails and texts are interstate transmissions.

449.    Dana Prescott, Lani Remick, and Paul Scott used emails and texts as noticed herein; and (a) Lani Remick used LOPDS-owned devices, as she had no other phone or computer; (b) LOPDS, a California corporation, owned and operated her phone and computer in Maine, causing all or substantially all of her emails and texts with Dana Prescott to be passed through LOPDS's

infrastructure; this (c) rendered her emails and texts interstate as they necessarily traveled back and forth across state lines via LOPDS's servers in California.

450.    LOPDS and Paul Scott were not within the Prescott-Remick attorney-client relationship; as such, Lani Remick's intentional and repeated use of LOPDS devices and infrastructure to send, receive, and store Prescott-Remick communications from 2016 ongoing constitutes an additional, independent waiver of privileges beyond the others noticed herein: On facts herein, Ms. Remick intentionally conducted communications with Mr. Prescott using LOPDS's phone and computer so that she could claim she had no responsive emails or information in her own personal files, deliberately storing all such communications with LOPDS to obstruct discovery and court process. On facts herein, Ms. Remick did the same with financial information concerning the L Case, the G Case, and other cases concealed in relation to LOPDS, using LOPDS's devices to store financial information so that, if confronted by discovery or in deposition, she could falsely assert she had no records. These facts constitute grounds for another independent waiver of privileges in addition to those noticed herein.

**Additional Court Officer and Dana Prescott Allegations**

451.    Defendant Kristina Smith was at all relevant times a state public servant within the definition of 17-A M.R.S. § 2(17), as she was an officer of the court acting in an appointed capacity on behalf of the state judiciary, and was further a public servant within the meaning of 17-A M.R.S. § 602(2) as she had been selected and appointed to perform official functions on behalf of the Maine state courts.

452.    The conduct in the following paragraphs falls within the definitions of 18 U.S.C. § 1346 (Honest Services Fraud), 18 U.S.C. § 1951 (Hobbs Act Extortion Under Color of Official Right), 18 U.S.C. § 666 (Theft or Bribery Concerning Programs Receiving Federal Funds), 18

U.S.C. § 1512 (Witness Tampering), 18 U.S.C. § 1513 (Retaliation Against a Witness or Public Official), 18 U.S.C. § 1961 (RICO Predicate Acts Including Bribery, Extortion, and Honest Services Fraud), and 18 U.S.C. § 873 (Blackmail).

453.    The Maine state judicial division responsible for the appointment and oversight of Kristina Smith, as a court-appointed officer for children, received more than $10,000 in federal funding annually, including funding for the types of cases that Kristina Smith was appointed to, and for the types of magistrates and judges overseeing those cases and appointments.

454.    Between 2016 and 2017, and again from 2020 to 2024, Defendant Dana Prescott repeatedly approached Kristina Smith with his knowledge that she had been officially reprimanded by the Maine State Bar for neglecting cases, fabricating false documents to conceal such neglect, and making false statements to the Bar regarding such conduct, including as documented in a 1990 reprimand document available to the public.

455.    Dana Prescott had personal knowledge of Ms. Smith's past disciplinary history including because he had served on the oversight board responsible for monitoring compliance and ethical conduct of state-appointed officers in the same category of public service as Ms. Smith.

456.    Dana Prescott was also aware that Kristina Smith was engaging in similar conduct in her role as a court-appointed officer responsible for children, including neglecting cases, fabricating false documents, and making misrepresentations regarding her conduct in those cases.

457.    In furtherance of the conspiracies and schemes noticed herein, Dana Prescott engaged in additional conduct that falls within the definitions of 18 U.S.C. § 1951 (Hobbs Act Extortion), 18 U.S.C. § 1346 (Honest Services Fraud), 18 U.S.C. § 1512 (Witness Tampering), 18 U.S.C. § 1513 (Retaliation Against a Witness or Public Official), and 18 U.S.C. § 666 (Bribery Concerning Programs Receiving Federal Funds) by leveraging Kristina Smith's prior disciplinary

history and ongoing similar neglect of cases and false papering of files to compel her to act in a manner adverse to Plaintiff, and directly adverse to two children, Child A and Child B, and in furtherance of the conspiracies and schemes herein.

458.    Dana Prescott explicitly or implicitly threatened to report Kristina Smith to the Maine State Bar again for her continuing misconduct regarding Child A and Child B, and other children under her charge as a court-appointed officer, a disclosure that would have subjected Kristina Smith to potential additional and more serious public reprimands than those in 1990.

459.    Dana Prescott offered Kristina Smith the benefit of withholding such information from the Maine State Bar, allowing her to continue obtaining court appointments and receiving approximately $5,000 per assignment, which constituted a thing of value within the meaning of 18 U.S.C. § 666 and 18 U.S.C. § 1951.

460.    Dana Prescott's actions, in conditioning his reporting or withholding of information on Kristina Smith's cooperation with Mr. Prescott's and Mrs. Remick's broader schemes and conspiracies herein, constituted bribery and extortion under 18 U.S.C. § 1951, 18 U.S.C. § 666, and 18 U.S.C. § 873.

461.    Kristina Smith engaged in acts adverse to Plaintiff's interests, and directly adverse to the interests of Child A and  Child B, as a direct result of Dana Prescott's coercion, including, but not limited to, delaying reports and recommendations to Mr. Prescott's advantage, and to the disadvantage of Plaintiff, Child A, and Child B; not investigating the fact allegations in ¶¶ 245-248; altering her findings by commission and omission, and both withholding information from, and providing false information to, the court, to the injury of Plaintiff, Child A, and Child B, in violation of 18 U.S.C. § 1346 (Honest Services Fraud) and 17-A M.R.S. § 454 (Witness Tampering Under Maine Law).

462.    On occasions, Ms. Smith did not comply with Dana Prescott, causing Dana Prescott to make additional threats or to repeat offers to withhold reporting of her ongoing misconduct, parallel to that in 1990, in exchange for Ms. Smith's cooperation, thus constituting multiple predicate acts under 18 U.S.C. § 1961.

463.    Mr. Prescott and Ms. Smith engaged in these acts across multiple occurrences spanning 2016 to 2017 and again from 2020 to 2024, demonstrating a pattern of racketeering activity as defined under 18 U.S.C. § 1961.

464.    Ms. Smith's conduct and Mr. Prescott's leverage over her involved interstate facts, including emails sent by Ms. Smith within Maine that traveled through out-of-state servers, as well as emails sent by her to Mr. Prescott and to Ms. Remick while each was in locations outside of Maine, including New York, Massachusetts, Washington, D.C., and San Francisco.

465.    Kristina Smith became corrupted and joined the conspiracies, schemes, and enterprises described herein by engaging in acts in furtherance of Dana Prescott's and Lani Remick's objectives in exchange for the withholding of, or protection from, negative or adverse professional consequences, and in exchange for the receipt of continued financial and professional benefits, in violation of 18 U.S.C. § 1961, 18 U.S.C. § 1951, 18 U.S.C. § 666, and 17-A M.R.S. § 602 (Bribery in Official and Political Matters Under Maine Law).

### First Cause of Action

### Violation of 18 U.S.C. § 1962(c)

### (Association In Fact Enterprise)

(All Defendants)

466.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

467.    Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), prohibits conducting or participating in the affairs of an enterprise through a pattern of racketeering activity:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"

353.    Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act provides a private right of action:

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

354.    The following were and are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) at all times herein: (1) Plaintiff Adam Daley Wilson; (2) Adam Daley Wilson Art LLC; and (3) Adam Daley Wilson Law LLC ("Plaintiffs").

355.    Each Defendant, including Dana E. Prescott and Lani Anne Remick, is a person within the within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) at all times herein.

356.    The legal elements required to establish violations under 18 U.S.C. § 1962(c) are: (1) The plaintiff must allege and show a "violation of section 1962(c); (2) The plaintiff must allege and show an injury "by reason of that violation"; (3) The plaintiff must allege, show, and demonstrate that the "underlying section 1962 violation in turn . . . demonstrat[es]: and "(a) conduct (b) of an enterprise (c) through a pattern (d) of racketeering activity."

357.    The alleged facts demonstrating the above elements are in ¶¶ 17-349. Those facts establish the elements are satisfied. The following further demonstrates and shows that the allegations satisfy each element of the cause of action.

### Additional Enterprise Allegations

358.    The existence of an enterprise as required by 18 U.S.C. § 1962(c) is pleaded together and in the alternative, including as noticed in ¶¶ 17-349, such that Defendants formed and orchestrated one or more association-in-fact enterprises within the meaning of 18 U.S.C. § 1961(4), including as noticed herein

359.    The association-in-fact enterprise(s) herein had the common purpose of carrying out the separate but related conspiracies and schemes noticed herein including, but not limited to, in ¶¶ 17-349 to injure Plaintiffs, including Plaintiffs' businesses and property, as noticed herein.

360.    Defendants as the participants in the association-in-fact enterprise(s) remained constant throughout the execution of the conspiracies and schemes and had an ongoing framework for carrying out the schemes as noticed in ¶¶ 17-349, showing that Defendants' conduct has been continuous from February 2016 to the present, ongoing.

361.    Defendants, their conspiracies, and their schemes are related including because they were and remain based on the same manner, means, and methodologies noticed in ¶¶ 17-349.

362.    Defendants each and together conducted or participated directly and indirectly in the conduct of the association-in-fact enterprise(s)' affairs, conspiracies, and schemes through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) as noticed in ¶¶ 17-349.

363.    Defendants and the association-in-fact enterprise(s) were engaged in, and their activities affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c) as noticed in ¶¶ 17-349.

364.    As a result of the conspiracies, schemes, and enterprises, the enterprise(s) and Defendants caused Plaintiffs to act as noticed herein, and also caused Plaintiffs to suffer harms, losses, and damages herein, including damages to businesses and property, including in, but not limited to, as noticed in ¶¶ 17-349.

### Additional Pattern of Racketeering Activity, Predicate Acts, and Injury to Business and Property Allegations

365.    Pursuant to 18 U.S.C. § 1961(1), "Racketeering Activities" include, but are not limited to, any act or threat for which Defendant(s) may be indicted under provisions of federal criminal law including, but not limited to, 18 U.S.C. §§ 1341, 1343, 1346, 1503, 1512(b), 1512(c), 1951, 1956, and 1957 (mail fraud, wire fraud, honest services fraud, obstruction of justice, witness tampering, extortion, money laundering).  Additional allegations regarding these provisions are noticed in ¶¶ 17-349.

366.    The predicate acts herein committed by each Defendant as part of the conspiracies and schemes of the association-in-fact enterprise(s) to defraud, injure, and harm Plaintiffs include all facts alleged in, but not limited to, ¶¶ 17-349.

367.    The predicate acts committed by each Defendant as part of the association-in-fact enterprise(s) and their conspiracies and schemes to defraud, injure, and harm Plaintiffs include all facts alleged from January 2016 to the present, ongoing.

368.    Defendants engaged in the predicate acts noticed herein over and for a substantial period of time, from at least January 2016 through January 2025, and thereafter.

369.    Defendants are continuing to engage in additional predicate acts in furtherance of the conspiracies and schemes of the Defendants and the enterprise(s).

370.    All predicate acts alleged and noticed herein were each and together related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962, including because, but not limited to, the following. Each of the predicates acts: (1) was related to each other because of common participants, including, but not limited to, Dana Prescott, Lani Remick, and Prescott Jamieson Murphy Law Group LLC, Paul Scott, The Law Offices of Paul D Scott., P.C., and Kristina J. Smith; (2) was related to each other because of a common target and victim: Plaintiff and Plaintiff's two LLCs; (3) had a common method of execution and commission, including but limited to the { f 1-202 } false statements and the [ m 1-177 ] false statements in emails and court filings; (4) had the common purpose of effecting the goals of the three conspiracies; (5) had the common purpose of effecting the goals of the noticed schemes; and (6) had the common result of causing Plaintiffs injuries in same or similar ways, including, but not limited to, Plaintiffs' businesses and property.

371.    All predicate acts alleged herein allowed Defendants and the association-in-fact enterprise(s) to perpetrate, cause, direct, and effect their noticed conspiracies and schemes knowingly, deliberately, willfully, and in combination and agreement with the other Defendants, as noticed in ¶¶ 17-349.

372.    Specific predicate acts were used by specific defendants, including, but not limited to, that Dana Prescott and Lani Remick each and together used predicate acts including, but not limited to, the following examples:

(1)   Mail fraud: Use of the mails to carry out or attempt one or more essential parts of the conspiracies, schemes, and/or enterprises within the meaning of 18 U.S.C. § 1341, as noticed in ¶¶ 17-349;

(2)    Wire fraud: Use of interstate wire communications to carry out or attempt one or more parts of the conspiracies, schemes, and/or enterprises within the meaning of 18 U.S.C. § 1343, including as noticed in ¶¶ 17-349;

(3)    Extortion: Use of statements within the meaning of 18 U.S.C. § 1951 to extort, and to attempt to extort, including as noticed in ¶¶ 17-349;

(4) Obstruction: Use of acts and statements to obstruct, influenced, or impeded proceedings, and to attempt same, within the meaning of 18 U.S.C. §§ 1503, 1512(c), including, but not limited to, as noticed in ¶¶ 17-349;

(5)    Money Laundering: Use of financial transactions, including withholding and refund transactions through the IRS, involving the proceeds of unlawful activity, with intent to promote the unlawful activity, conceal the source of the proceeds, or avoid transaction reporting requirements, and to attempt same, within the meaning of 18 U.S.C. §§ 1956 and 1957, including, but not limited to, as noticed in ¶¶ 17-349;

(6) Witness Tampering: Use of intimidation, threats, or corrupt persuasion to influence or prevent testimony in an official proceeding, or obstruct or conceal evidence to impair its use in an official proceeding, and to attempt same, within the meaning of 18 U.SC. §§ 1512(b) and 1512(c), including as noticed in ¶¶ 17-349; and

(7) Honest Services Fraud: Use of fraud and deception, and attempted fraud and deception, to deprive others of the intangible right to honest services, within the meaning of 18 U.S.C. § 1346, including as noticed in ¶¶ 17-349.

373.    In furtherance of the enterprise(s), Defendants agreed to allocate the proceeds and benefits of their conspiracies and schemes amongst themselves, including without disclosing same as required, including, but not limited to, as noticed in ¶¶ 17-349.

374.    As a direct and proximate result of, and by reason of, the conduct of Defendants noticed and alleged herein, Plaintiffs may by law recover from Defendants individually, and jointly and severally, any damages that Plaintiffs have sustained.

375.    As a direct and proximate result of, and by reason of, the conduct of Defendants noticed and alleged herein, Plaintiff and the two LLCs have been directly injured in their business and property in an amount between $750,000 and $10,000,000, including on the basis of fact allegations noticed in ¶¶ 17-349.

376.    Pursuant to 18 U.S.C. § 1964(c), any damages recoverable under the Act shall be trebled, and Plaintiffs may recover the costs of suit and reasonable attorneys' fees.

### Second Cause of Action

### Violation of 18 U.S.C. § 1962(d)

### (RICO Conspiracy)

(All Defendants)

377.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

378.    18 U.S.C. § 1962(d) provides that it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

379.    As alleged herein, each Defendant was a "person" within the meaning of 18 U.S.C. § 1961(3) at all relevant times herein.

380.    As alleged herein, Defendants together formed one or more association-in-fact enterprise(s) for the purpose of defrauding and injuring Plaintiffs' businesses and property, including as noticed in ¶¶ 17-349, and the association-in-fact enterprise(s) were each and together an "enterprise" within the meaning of 18 U.S.C. § 1961(4)(c).

381.    As alleged herein, at all relevant times the association-in-fact enterprise(s) were each and together engaged in, and its activities affected interstate and foreign commerce, within the meaning of 18 U.S.C. § 1962(c).

382.    As alleged herein, Defendants and their co-conspirators conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise(s) through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

383.    As alleged herein, Defendants and their co-conspirators unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together, among themselves, and with others to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

384.    Defendants and each of the other conspirators committed and caused to be committed a series of overt acts in furtherance of the RICO Conspiracy and to affect the objects therefrom, including, but not limited to, the acts alleged in ¶¶ 17-349.

385.    As part of the conspiracy, each Defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the association-in-fact enterprise alleged herein, including, but not limited to, the alleged acts in ¶¶ 17-349.

386.    As alleged herein, the predicate acts engaged in by Defendants and the other conspirators satisfied the elements of the criminal offenses of mail fraud, wire fraud, honest services fraud, extortion, obstruction of justice, witness tampering, and money laundering that taken together constitute a violation of 18 U.S.C. § 1962(c).

387.    As a direct and proximate result of the actions of Defendants and the other conspirators, including but not limited to the overt actions taken in furtherance of the conspiracy in violation of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their businesses and property as alleged herein and have sustained financial losses in their businesses and property from between

$750,000 to $10,000,000 directly due to Defendants' enterprise(s), schemes, and conspiracies noticed in ¶¶ 17-349.

388.    As a direct result of the RICO Conspiracy, Defendants are liable to Plaintiffs for the losses of Plaintiffs in an amount to be determined at trial.

389.    Pursuant to 18 U.SC. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and reasonable attorneys' fees and expert fees from Defendants.

**Third Cause of Action**

**Violations of 42 U.S.C. § 1983**

**Deprivation of Constitutional Rights Under Color of Law**

(Kristina J. Smith)

390.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

391.    42 U.S.C. § 1983 provides a remedy for individuals whose constitutional rights or federally protected rights have been violated by a person acting under color of state law:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

392.    The elements of a cause of action under 42 U.S.C. § 1983 are (1) the defendant acted under color of state law; (2) the defendant's conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (3) the defendant's actions were the proximate cause of the plaintiff's damages.

393.    Defendant Kristina J. Smith, acting under color of state law in her role as a court-appointed judicial officer, engaged in the conduct set forth in ¶¶ 13-349 and as alleged in the RICO

association-in-fact enterprise cause of action herein, and in the RICO conspiracy cause of action herein, including misuse of governmental authority to further a coordinated scheme of unlawful acts. Smith, while acting in her official capacity as an agent of the state court, knowingly submitted false mental illness information about Plaintiff to the court, deliberately omitted exculpatory information regarding Plaintiff's actual mental health diagnosis, and falsely incorporated fabricated mental health claims from attorneys Dana E. Prescott and Lani Anne Remick into her formal court reports. Smith's actions, taken under the pretense of state authority, deprived Plaintiff of rights secured by the Constitution and laws of the United States, for and by the facts alleged and noticed in ¶¶ 17-349.

394.    Smith's conduct, including as noticed in ¶¶ 17-349 and in both of the RICO causes of action herein, was carried out under color of state law, including because she leveraged her court-appointed position to validate and further the attorneys' scheme to exploit prejudice against individuals with mental illness disabilities. By knowingly transmitting false mental health information to the court and concealing the truth, she deprived Plaintiff of fair legal process, equal protection, due process, and his fundamental right to parent his children as secured by the Constitution of the United States.

395.    Through the acts described herein and in the RICO causes of action, Smith deprived Plaintiff of specific constitutional rights, including but not limited to rights secured by the Fourteenth Amendment, including because Smith's actions reinforced and legitimized the discriminatory and retaliatory conduct of Prescott and Remick, facilitating their efforts to abuse judicial process to harm Plaintiff's statutory mental illness disability. Smith's suppression of truthful information and intentional submission of falsehoods directly contributed to the deprivation of Plaintiff's constitutional protections as noticed in ¶¶ 17-349.

396.     As a direct and proximate result of Smith's conduct, and as also alleged in the RICO causes of action herein, Plaintiff suffered significant injury, including financial loss, reputational harm, emotional distress, and other constitutional injuries, all of which were the foreseeable and intended consequences of Defendant Smith's acts and omissions under color of law. Plaintiff is entitled to relief under 42 U.S.C. § 1983.

### Fourth Cause of Action

### Violations of 42 U.S.C. § 1985(3)

### (Conspiracy To Interfere with And Deprive Civil Rights and Constitutional Rights)

(All Defendants Except Paul Scott and The Law Offices of Paul Scott)

397.     Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

398.     42 U.S.C. § 1985(3) prohibits conspiracies to deprive individuals of equal protection of the laws or equal privileges and immunities under the law:

> "If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured . . . may have an action for the recovery of damages."

399.     The elements of a cause of action under 42 U.S.C. § 1985(3) are (1) a conspiracy existed; (2) the conspiracy was motivated by racial or other class-based, invidiously discriminatory animus; (3) the conspiracy aimed to deprive the plaintiff of equal protection of the laws or of equal privileges and immunities under the laws; (4) an overt act was committed in furtherance of the conspiracy; and (5) the plaintiff suffered injury as a result.

400.    Defendants engaged in a conspiracy noticed in ¶¶ 17-349 and as further set forth and alleged in the RICO conspiracy cause of action herein, with the intent and purpose of depriving Plaintiff of equal protection of the laws and equal privileges and immunities under the law. The conspiracy was carried out by attorneys Dana E. Prescott and Lani Anne Remick, the law firm Prescott Jamieson Murphy Law Group, and court-appointed judicial officer Kristina J. Smith.

401.    Prescott and Remick, acting in concert, fabricated over false statements about Plaintiff's mental health, including the false statements [ m 1-177 ] noticed with heightened particularity in ¶¶ 17-349, disseminated false medical diagnoses in violation of state law, and attempted to use Maine's involuntary commitment statute to have Plaintiff wrongfully institutionalized. Their conduct was motivated by invidiously discriminatory animus against individuals with mental illness disabilities and was designed to exploit prejudice and hostility toward persons with such disabilities.

402.    Smith, acting under color of state law in her capacity as a Guardian ad Litem, knowingly furthered the conspiracy by incorporating these false statements into her official reports to the court, falsely legitimizing the attorneys' fabricated medical claims, and withholding exculpatory information from the court regarding Plaintiff's actual mental health status. Smith's deliberate actions gave judicial credibility to the conspiracy, amplifying its harm and ensuring that Plaintiff's rights were violated through official judicial process. Additionally, Smith engaged in similar misrepresentations and concealment of facts regarding Child A and Child B, further demonstrating her participation in the conspiracy's goal of distorting court processes to achieve unlawful results.

403.    Defendants each took overt acts in furtherance of this conspiracy, as alleged in ¶¶ 17-349 and as further alleged in the RICO causes of action, including the RICO conspiracy cause

of action, including abuse of legal proceedings, misrepresentation of medical information, obstruction of Plaintiff's ability to receive fair and unbiased treatment before the court, attempts to induce a catastrophic mental health collapse to exploit Plaintiff's vulnerability, and interference with Plaintiff's fundamental constitutional right to parent his children.

404.    As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered substantial harm, including deprivation of equal protection under the law, loss of legal rights, reputational damage, emotional distress, and financial injury. Plaintiff is entitled to relief under 42 U.S.C. § 1985(3).

## Fifth Cause of Action

## Violations of 42 U.S.C. § 1986

## (Neglect To Prevent Civil Rights Violations)

### (All Defendants)

405.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

406.    42 U.S.C. § 1986 imposes liability on any person who knows of a § 1985 conspiracy, has the power to prevent it, but fails to act:

> "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured."

407.    The elements of a cause of action under 42 U.S.C. § 1986 are (1) the defendant had actual knowledge that a violation of § 1985 was about to occur or is occurring; (2) the defendant had the power to prevent or aid in preventing the wrongful acts; (3) the defendant neglected or

refused to exercise such power to prevent the violation; and (4) the plaintiff suffered injury as a result of the defendant's failure to act.

408.    Defendants each and together had actual knowledge of the conspiracies noticed in ¶¶ 17-349 and further alleged and described in the RICO conspiracy cause of action and the RICO enterprise cause of action, which included, but were not limited to, violations of § 1985(3) aimed at depriving Plaintiff of constitutional rights. Defendants were each and together fully aware and with knowledge that Prescott and Remick were fabricating mental illness statements, disseminating false medical diagnoses, and engaging in the conduct noticed in ¶¶ 17-349, including attempting to have Plaintiff falsely committed to a psychiatric hospital under Maine's involuntary commitment statute. As noticed herein, each Defendant was at all times a lawyer and had direct legal and court access to the means to stop the conspiracies and the injuries to Plaintiffs, but chose instead to further the conspiracies.

409.    Defendants each and together had the power to prevent the unlawful conduct detailed in the RICO causes of action and in ¶¶ 17-349, but willfully neglected or refused to do so. As a court-appointed officer, and as lawyers and officers of the court, Defendants could have corrected or challenged the falsehoods and provided the court with accurate mental health information about Plaintiff. Instead, Defendants knowingly reinforced and perpetuated the falsehoods, including as noticed herein. Additionally, Defendant Smith was in a position of power as to the rights of Child A and Child B and had the ability to prevent similar abuses against them, but instead engaged in the same pattern of misrepresentation, concealment, and neglect as to the best interests of the children, in the same ways Defendant Smith was reprimanded before.

410.    As a direct and proximate result of Defendants' failure to prevent the harms alleged herein, Plaintiff suffered substantial damages, including constitutional injuries, financial harm, reputational damage, and emotional distress. Plaintiff is entitled to relief under 42 U.S.C. § 1986.

## Sixth Cause of Action

## Abuse of Process

### (All Defendants)

411.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

412.    Defendants are liable for abuse of process under Maine law because (1) they knowingly and willfully used legal process improperly in the regular course of proceedings, including by making false filings and evading lawful court orders, to defraud, conceal, and harm; (2) they acted with ulterior motives to conceal predicate acts, schemes, conspiracies, and material facts, to obstruct justice, and to prevent discovery of their fraudulent and criminal conduct; and (3) as a direct, proximate, and foreseeable result of their actions, Plaintiffs have suffered significant pecuniary, reputational, and other damages.

413.    Defendants knowingly misrepresented, omitted, and concealed material facts during court proceedings and litigation from Plaintiff, Plaintiff's counsel, the court-appointed children's Court Officer, the Judicial Referee, magistrates, discovery magistrates, presiding judges, and the Maine state court system itself, including through improper legal process, including by submitting false pleadings, affidavits, and certifications; submitting false proposed orders to defraud the court, including as to the court's own orders, and disseminating falsehoods to state court officers and the judiciary to deprive Plaintiff of access to, and deprive Plaintiff of due process in, judicial functions as to both property and constitutional rights.

414.    Defendants knowingly, deliberately, and willfully engaged in this conduct from 2016 to 2017, then paused when it was not needed to further their conspiracies, schemes, and enterprises, then resumed again from 2020 to 2024, for the reasons noticed in ¶¶ 17-349, using judicial processes, including motions and violations of court orders, to commit and conceal predicate acts, schemes, and conspiracies, and to obstruct and subvert lawful proceedings about property and fundamental constitutional rights in furtherance of, and to conceal, their overarching schemes to defraud and harm Child A, Child B, the Children's Education Trust, Plaintiff, and Plaintiff's LLCs. Defendants knowingly and deliberately abused court process for years to both effect and conceal their unlawful goals, and to both effect and conceal their supporting schemes and acts, including through extortion, obstruction, perjury, witness tampering, and other wrongful conduct directed at the court and its officers, in order to leverage the court process against Plaintiff and his counsel.

415.    Plaintiff, Plaintiff's counsel, the court-appointed children's Court Officer, the Judicial Referee, magistrates, discovery magistrates, presiding judges, and the Maine State Judiciary itself reasonably and justifiably relied on Defendants' false filings, statements, and omissions, because Defendants, being lawyers, were expected to uphold the law, and not abuse court process to effect and conceal illegal activities, including criminal activities.

416.    As a direct, proximate, and foreseeable result of Defendants' abuse of process herein, Plaintiffs have each and together suffered harms, including as noticed in ¶¶ 17-349.

417.    Defendants are lawyers who engaged in the malicious, willful, and fraudulent commission of wrongful acts while abusing the courts and the judicial function. Evidenced by their numerosity, severity, and continuous duration of years, Defendants' acts were each and together committed with malice and intent to harm, including knowingly causing severe and aggravated

emotional distress in Plaintiff, including by abusing Maine's "blue papering" statutory process to attempt to have Plaintiff involuntarily committed in a psychiatric hospital, including through abuse of court process impairing his rights, and including Defendants' attempt to induce Plaintiff to commit suicide, through Defendants' methodical and unceasing exploitation of the medical weaknesses arising from Plaintiff's mental illness disability, which both Dana Prescott, by training and license, and Lani Remick, by personal knowledge, knew how to injure during their years-long attempt to induce suicide. On these facts and the additional facts noticed herein, Plaintiff is entitled to compensatory as well as punitive damages against each Defendant.

**Seventh Cause of Action**

**Fraud**

(All Defendants Except Smith, Jamieson, and Murphy)

418.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

419.    Defendants have knowingly misrepresented, omitted, and/or concealed material financial facts from Plaintiffs, including but not limited in communications and representations to Plaintiffs, and each Defendant has personally engaged in this conduct, or knew or should have known that other Defendants were engaged in it on their behalf. These false representations and omissions are noticed herein by **{ f 1-202 } and [ m 1-177 ]** and in ¶¶ 17-349.

420.    Defendants each and together made these false representations while knowing their misrepresentations were materially false and/or that that their omissions were materially false.

421.    Defendants made these representations and/or omissions with the intent of falsely obtaining the money of Plaintiffs and others; falsely concealing the theft of money from Plaintiffs and others; and falsely injuring monies and financial accounts of Plaintiffs, with the intent of

preventing Plaintiffs from discovering Defendants' frauds, including, but not limited to, making and disseminating the totality of the 379 false statements herein to Plaintiff, Plaintiff's counsel, an appointed state court officer, a judicial referee, discovery magistrates, and presiding judges.

422.    Defendants' material misrepresentations and/or omissions have been reasonably and justifiably relied upon by Plaintiffs for the reasons and facts noticed in ¶¶ 17-349.

423.    As a direct, proximate, and foreseeable result of Defendants' frauds, each and together, Plaintiffs have been harmed, including significant pecuniary, reputational, and other damages. These injuries include significant damage to the reputations and goodwill of Plaintiff, his art LLC, and his law LLC, and these injuries include, but are not limited to, those noticed in ¶¶ 17-349, including to warrant punitive damages if allowed.

**Eighth Of Action**

**Violations of California Business and Professions Code §§ 17200, et seq.**

(All Defendants)

424.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

425.    Defendants each and together are liable for engaging in unlawful, unfair, and fraudulent business practices violating California Business and Professions Code §§17200, et seq.

426.    Defendants' conduct constitutes "unlawful" business practices including because Defendants violated 18 U.S.C. § 1962(c), as demonstrated herein, and including because each of the predicate acts supporting the RICO enterprises, including, but not limited to, Defendants' mail fraud and wire fraud. Each separately serve as independent violations of law that establish liability under the "unlawful" prong of Business and Professions Code § 17200. In the alternative, if the RICO enterprise claim under 18 U.S.C. § 1962(c) is not sustained, Defendants' conduct

nonetheless constitutes a separate and independent violation of § 17200 under the unlawful prong based on Defendants' violation of 18 U.S.C. § 1962(d), including because Defendants conspired to engage in illegal activity including, but not limited to, Defendants' fraud upon the courts in submitting a fraudulent California certification to conceal financial fraud.

427.    Independently, Defendants' conduct also constitutes "fraudulent" business practices under the UCL because Defendants knowingly engaged in a scheme to mislead and defraud Plaintiffs, and the Children's Trust, including by submitting and filing the false certification regarding financial information, which Paul Scott and LOPDS signed in California and transmitted to PJMLG, Dana Prescott, and Lani Remick in Maine, who then filed it in the Maine state court. This false certification was knowingly used by all Defendants to deceive the court, conceal material facts and fraud, and obstruct judicial proceedings, causing direct harm to Plaintiffs and the Children's Trust.

428.    As a direct, proximate, and foreseeable result of Defendants' unfair competition, Plaintiffs have each and together suffered economic harm, including, but not limited to, legal fees and costs incurred in addressing the impacts of Defendants' fraudulent court filings, and including, but not limited to, injuries noticed in ¶¶ 17-349.

429.    Including because Defendants' conduct was intentional, fraudulent, and in bad faith, Plaintiff is entitled to relief under Business and Professions Code § 17203, including but not limited to restitution and all other relief available therein.

**Ninth Cause of Action**

**Violation of the Maine Unfair Trade Practices Act (5 M.R.S.A. § 207)**

(Defendants Prescott, Jamieson, Murphy,

and Prescott Jamieson Murphy Law Group LLC)

430.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

431.    Plaintiff is a resident of Maine who between 2016 and 2024 for the matters herein personally purchased legal services from a Maine attorney to protect his personal, constitutional, and property rights, and those of his two children; these legal services were not for business or commercial purposes; Plaintiff paid for them through his personal bank account.

432.    Defendants Dana Prescott, Neil Jamieson, Timothy Murphy, and their law firm, Prescott Jamieson Murphy Law Group LLC, a Maine corporation, engaged in trade or commerce in Maine by providing legal services to the public, including to Lani Remick.

433.    Defendants hold themselves out to the public in Maine as "legal experts" and "specialized" and advertise through a website and multiple online platforms, including Google Search, Bing Search, Facebook, Yelp, Google Business Pages, and MapQuest; their website states, "The Prescott Jamieson Murphy Law Group has been serving Maine for over 30 years," and they advertise as "Seasoned trial attorneys" and "Published experts"; they promote having "Super Lawyers" and "Rising Stars" attorneys; when a consumer visits their website it states, "Your Southern Maine Legal Team."

434.    Defendant Dana Prescott further holds himself out as a legal expert and licensed social worker; on his public profile page, he advertises himself as "Dana E. Prescott, JD, LMSW, PhD" and as a "Fellow of the International Academy of Family Attorneys and the American Academy of Matrimonial Lawyers"; he states that he has held an instructor appointment at the Harvard T.H. Chan School of Public Health and is adjunct faculty at Boston College and Simmons University Schools of Social Work; he represents himself to the public as a "frequent consultant, writer, and speaker on professional ethics"; he represents that he is Past President of the New

England and Maine State Bar Associations, former Chair of the Family Law Section, and a rostered guardian ad litem; he promotes his legal and clinical expertise in a multi-page CV on his website, including his PhD in psychology.

435.    Defendants engaged in unfair and deceptive acts in trade or commerce by conspiring to abuse court processes to obstruct Plaintiff's legal rights and inflate his legal costs, as noticed in ¶¶ 17-349.

436.    Defendants have forced Plaintiff to incur approximately $75,000 in unnecessary legal fees through abuse of judicial process, including filing fraudulent pleadings and false financial certifications, prolonging litigation to extort, and obstructing enforcement of court orders and judgments in Plaintiff's favor; their acts, already illegal and unethical, were also with premeditation calculated to injure and drain Plaintiff financially to reduce him financially into a position where he could not continue litigating against them and their client.

437.    Defendants' conduct was unfair and deceptive within the meaning of the UTPA including because it caused substantial financial injury to Plaintiff as a consumer of Maine legal services for fundamental personal and family legal needs; Defendants' conduct had no countervailing benefit and could not have been reasonably avoided; for years, Plaintiff and his counsel were required to respond continuously to Defendants' misconduct, to protect his property, civil, and constitutional rights, and those of his children.

438.    As a direct and proximate result of Defendants' unfair and deceptive conduct, Plaintiff suffered financial harm, including but not limited to that noticed in ¶¶ 17-349.

439.    Defendants' UTPA violations extend beyond Plaintiff and threaten the public interest in Maine; Defendants and Prescott hold themselves out to consumers as "frequent consultant[s], writer[s], and speaker[s] on professional ethics" while engaging in the misconduct

noticed herein, deceiving Maine consumers, imposing needless legal costs, and undermining public confidence in the Maine courts. Mr. Prescott and PJMLG advertise as reputable while in truth systematically abusing their roles and their access to the courts to harm unsuspecting consumers who happen to be on the other side of a case, and their misconduct is not isolated, but part of a broader pattern affecting the public in this state: As veteran Maine attorney J.K. stated to Plaintiff in 2017, during the matters herein: "This is what Dana has always done."

440.    Because Defendants' actions violate the Maine UTPA, Plaintiff is entitled to actual damages, including restitution of financial losses directly caused by Defendants' unfair and deceptive practices, and all other relief available under 5 M.R.S.A. § 213, including attorneys' fees and costs incurred in bringing this cause of action.

## Tenth Cause of Action

## Aiding and Abetting Tortious Conduct

(Torts of Abuse of Process, Defamation, Fraud, Intentional Infliction of Emotional Distress)

(All Defendants Except Smith, Scott, and LOPDS)

441.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

442.    The elements of a cause of action for aiding and abetting tortious conduct under Maine law are (1) the existence of a primary tort; (2) the defendant had actual knowledge of the primary tortfeasor's wrongful conduct; and (3) the defendant provided substantial assistance or encouragement to the primary tortfeasor in committing the tort.

443.    Dana E. Prescott, Lani Anne Remick, and PJMLG LLC engaged in the primary tortious conduct noticed in ¶¶ 17-149 and further alleged in the causes of action for Abuse of Process, Defamation, Fraud, and Intentional Infliction of Emotional Distress, including, but not

limited to, knowingly fabricating and disseminating false mental illness statements about Plaintiff, falsely diagnosing Plaintiff with severe psychiatric conditions in violation of Maine law, and attempting to have Plaintiff involuntarily committed under Maine's "blue papering" statute through fraud and deception; their actions constituted actionable torts under Maine law that are causes of action herein. Independently, Lani Anne Remick, Dana Prescott, and PJMLG LLC engaged in separate and independent primary tortious conduct, including engaging in conspiracies, schemes, and predicate acts to financially defraud Child A, Child B, the Children's Education Trust, and Plaintiff, including by the acts in ¶¶ 17-339 and alleged in the cause of action for fraud.

444.    The law firm of Prescott Jamieson Murphy Law Group (PJMLG) by and through its other name partners, Jamieson and Murphy, had actual knowledge that Prescott and Remick were engaged in these wrongful acts, including, but not limited to that PJMLG, as Prescott's law firm, directly participated in the abuse of process and frauds on the court, and had knowledge or constructive knowledge that Dana Prescott and Lani Remick were engaged in all the tortious noticed in ¶¶ 17-349; and yet took no steps to prevent it, cure it, or report it.

445.    PJMLG provided substantial assistance and encouragement to Prescott and Remick in furthering their tortious conduct, including, but not limited to, as noticed in ¶¶ 17-349; and in addition by and through its failure to oversee or restrain its attorney's conduct, allowing Prescott to continue, and thereby actively participating and substantially assisting, including, but not limited to, the participation of its employees in each PJMLG filing to the court noticed herein.

446.    As a direct and proximate result of Defendants each and together aiding and abetting tortious conduct satisfying the elements of the tort causes of action herein, Plaintiffs suffered significant harm, including additional and aggravated severe emotional distress,

reputational damage, financial injury, the deprivation of civil rights and constitutional rights, and the additional injuries and harms set forth in ¶¶ 17-349.

## Eleventh Cause of Action

## Defamation

(Dana E. Prescott, Lani Anne Remick, and Prescott Jamieson Murphy Law Group LLC)

447.    Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

448.    The elements for defamation under Maine law are (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the statement was published to a third party without privilege; (3) the defendant acted with at least negligence in making the statement; and (4) the statement caused special harm or is actionable without proof of harm as defamation per se.

449.    In Maine, the attorney litigation privilege is not absolute. Immunity does not extend to defamation that is unrelated to the litigation, or conducted with malice, or made with irrational animus, or that violates civil rights and constitutional rights, or that is made with the intent to harm, or that constitutes criminal acts, such as publishing false medical diagnoses to courts, court officers, court clerks, attorneys, teachers, and others without a medical license.

450.    Dana E. Prescott and Lani Anne Remick each and together knowingly and maliciously made false and defamatory statements, including, but not limited to fabricating the false mental illness defamatory statements [ m 1-177 ] herein, each falsely attributing severe mental illness diagnoses, and false diagnostic facts, to Plaintiff; these statements included purported medical conditions that Plaintiff did not have; that were knowingly contrived for the purpose of falsely discrediting Plaintiff in legal proceedings, and in the public; with the intent to harm his disability; including published statements that Plaintiff was delusional; psychiatrically

unstable; about to snap; targeting specific people and the public; a risk of serious harm to the public sufficient to warrant emergency involuntary committal to a psychiatric hospital; that Plaintiff was substituting his own child for adult women; and that Plaintiff raped his own child because of Plaintiff's mental illness, all noticed and more in ¶¶ 17-349. Each and together these are defamatory under Maine law. Defendants published these false and defamatory statements to third parties without privilege, including without a valid litigation privilege, including, but not limited to, publishing them to the public in public court filings, in public letters to the court and the court's clerk's office, to Plaintiff's psychiatrist, to the therapists of the children, to the teachers and principals of the children, to a Judicial Referee, to a court-appointed GAL, and others, having a significant and irreparable impact on Plaintiff's legal standing and personal reputation in Maine and elsewhere, as noticed in ¶¶ 17-349.

451.    Defendants acted with actual malice and evil purpose, and in the alternative with negligence, on the basis of the facts each and together, and in their totality, set forth in ¶¶ 17-349, and evidence Defendants' reckless if not willful and deliberate disregard for the truth, if not willful and deliberate premeditation to systematically defame in order to induce physical harm, including the inducement of suicide. Defendants' conduct and intent satisfy the standard of fault required for defamation liability under Maine law, and satisfy the standard for causing the litigation privilege to not apply, including because Defendants' false statements are each and together defamation per se, as they directly impugned Plaintiff's mental illness disability; directly impugned Plaintiff's character, including by stating Plaintiff was a physical and violent risk to children, court officers, and the general public, and the Trustee; in a manner that inherently damages reputation without requiring proof of special harm; including, but not limited to, publishing in writing that Plaintiff had engaged in the criminal act of raping a child because of his mental illness, ¶¶ 131-133.

452.     As a direct and proximate result of Defendants' defamatory statements, including, but not limited to, their fabricated medical claims, public dissemination of false information, false criminal allegation, and false statements about Plaintiff's mental illness disability, Plaintiff suffered severe and ongoing harm, including reputational injury, emotional distress, and financial damages, such that Plaintiff is entitled to relief under Maine law for defamation outside the litigation privilege.

**Twelfth Cause of Action**

**Intentional Infliction of Emotional Distress**

(All Defendants except Paul Scott and LOPDS)

453.     Plaintiffs re-allege and incorporate by reference all allegations in this Complaint, including all allegations supporting this and all other causes of action, as if fully set forth herein.

454.     The elements of a cause of action for intentional infliction of emotional distress under Maine law are (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant acted intentionally or recklessly to cause emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct was the cause of that distress.

455.     Defendants engaged in extreme and outrageous conduct, including as noticed in ¶¶ 17-349; including fabricating and disseminating the false statements **[ m 1-177]** about Plaintiff's mental illness; falsely diagnosing Plaintiff with severe psychiatric disorders; and falsely attempting to use Maine's involuntary commitment "blue papering" process to have Plaintiff wrongfully and falsely committed to a psychiatric hospital; on the basis of these examples, and on all facts noticed herein, individually and cumulatively, and their numerosity, severity, continuous duration of time, and underlying unlawful purposes, including in furtherance of and to conceal the conspiracies,

schemes, predicate acts, frauds, and criminal acts herein, Defendants' conduct was extreme, malicious, and exceeded all possible bounds of decency in a civilized society.

456.    As a direct and proximate result of Defendants' intentional inflictions of emotional distress, including, but not limited to, Defendants' coordinated and unceasing attempts to induce Plaintiff to suffer a mental health collapse, and to induce Plaintiff to commit suicide, as a result of Defendants' unceasing purposeful inflictions of increasingly severe emotional distress, Plaintiff suffered the objective manifestations of his injuries sufficient for the cause of action, noticed in ¶¶ 17-349, such that Plaintiff is entitled to relief under Maine law for intentional infliction of emotional distress.

## **DEMAND FOR JURY TRIAL**

457.    Plaintiffs demand a jury trial on all issues triable by right of Jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enters judgment in its favor against: Dana E. Prescott, Lani Anne Remick, Prescott Jamieson Murphy Law Group LLC, Paul Scott, the Law Offices of Paul D. Scott, P.C., Neil Jamieson, Timothy Murphy, Kristina J. Smith, and Does 1-10, and award the following relief:

458.    An award of money damages in an amount to be determined by the trier of fact and estimated to be substantially in excess of the minimum jurisdictional amount of this court; which damages are to be trebled threefold pursuant to 18 U.S.C. § 1964(c);

459.    An award of compensatory damages in an amount equal to Plaintiffs' expenditures and losses herein, including attorneys' fees and costs;

460.    An award of exemplary and punitive damages under applicable laws and statutes for Defendants' conduct qualifying for such damages, including, but not limited, to Defendants'

conduct undertaken with an intent to injure Plaintiffs, or with a willful and conscious disregard of Plaintiffs' rights;

461.    An award of costs and reasonable attorneys' fees and expenses incurred by Plaintiffs in this action;

462.    An accounting of Defendants' profits, revenues, accounts, and proceeds received or obtained, directly or indirectly, or arising out of Defendants' RICO violations, and all other allegations presented herein, including, but not limited to, an accounting of all gross revenues derived from Defendants' frauds and schemes herein;

463.    General damages for loss of goodwill or harm to Plaintiffs' reputations resulting from the publication and dissemination of fraudulent allegations against Plaintiffs during and relating to Defendants' false statements herein;

464.    Restitution;

465.    Pre-judgment and post-judgment interest on the above damages awards;

466.    An order adjudging all Defendants jointly and severally liable, as the law allows, under each cause of action asserted by Plaintiffs and for all damages awarded against any Defendants; and

467.    Such other relief as this Court may deem just.


Dated:  February 18, 2025          By:    /s/ Adam Daley Wilson
                                          Adam Daley Wilson (SBN 004585)
                                          adam.daley.wilson@gmail.com
                                          180 High Street Unit 14
                                          Portland, Maine 04101
                                          Telephone: (207) 699-9957
                                          Attorney for Plaintiffs
                                          Adam Daley Wilson
                                          Adam Daley Wilson Art LLC
                                          Adam Daley Wilson Law LLC