UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ADAM DALEY WILSON, et al.,            )
                                      )
            Plaintiffs                )
                                      )
      v.                              )        2:25-cv-00060-JCN
                                      )
DANA E. PRESCOTT, et al.,             )
                                      )
            Defendants                )

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

In a series of disputes related to divorce proceedings in state court, Plaintiff [1] alleges that Defendants engaged in activities in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 et seq., conspired and deprived him of his constitutional rights, and engaged in tortious conduct. (Complaint, ECF No. 1.)

Four defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim, (Motion to Dismiss, ECF No. 44), one defendant moved to dismiss the complaint pursuant to Rule 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim, (Motion to Dismiss, ECF No. 43), two defendants moved to dismiss the complaint pursuant to Rule 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim, (Motion to Dismiss, ECF No. 45), and one defendant moved to dismiss the complaint pursuant to Rule 8(a)(2) and (d)(1) for failure to plead "short and plain" grounds

---

[1] This action was commenced by three plaintiffs: Adam Daley Wilson, Adam Daley Wilson Art, LLC, and Adam Daley Wilson Law, LLC. Because Plaintiffs' substantive allegations principally involve Plaintiff Adam Daley Wilson and because the claims of the LLC plaintiffs appear to be derivative of the claims of Plaintiff Adam Daley Wilson, the Court will refer to Plaintiff Adam Daley Wilson as "Plaintiff" and, unless otherwise noted, the Court's analysis applies to all the plaintiffs.

for relief and "simple, concise, and direct" allegations, (Motion to Dismiss, ECF No. 46). Plaintiff voluntarily dismissed the claims against two defendants, (Response, ECF No. 50; Order, ECF No. 51), and opposes the other motions, (Responses, ECF Nos. 47–49).

Following a review of the record and after consideration of the parties' arguments, the Court grants the motions to dismiss.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

Plaintiff is an attorney domiciled and residing in Portland, Maine. Defendant Remick is an attorney domiciled and residing on Peaks Island, Maine. Plaintiff and Defendant Remick were previously married and had two children. In 2014 or 2015, Defendant Remick filed for divorce.[3] In early February 2016, Defendant Prescott, of the Prescott Jamieson Murphy Law Group (Defendant PJMLG), began to represent Defendant Remick in the divorce proceeding. Defendant Prescott co-owns the firm with two other attorneys domiciled in Maine, Defendants Jamieson and Murphy. In 2016, the state court appointed a judicial referee to preside over the divorce case and appointed Defendant Smith to serve as the children's court officer, or guardian ad litem (GAL), during the divorce proceeding.

---

[2] The factual allegations are derived primarily from the complaint. The Court may consider, and has considered, some records from the state court proceedings which are appropriate for judicial notice and are incorporated by reference into the complaint. *See Saccoccia v. United States*, 955 F.3d 171, 172 (1st Cir. 2020).

[3] In their motions, some Defendants assert that the divorce proceedings began in 2014, but the docket records cited reflect an April 2015 filing date. The difference is evidently not significant in this matter.

Plaintiff alleges that between May 2016 and December 2017, Defendant Prescott and Defendant Remick sent numerous inappropriate, false, or misleading communications to the judicial referee and the GAL, as well as to professional specialists and teachers who were to be interviewed by the GAL.  Many of the alleged communications addressed Plaintiff's mental health.  The communications purported to advise that Plaintiff suffered from a mental illness, his condition was worsening, he lacked important capacities, he needed a professional psychological evaluation, and he needed assistance for the benefit of himself and the minor children.  Plaintiff alleges that Defendant Prescott—who is a licensed social worker with a PhD in psychology as well as an attorney—attempted to use his claimed expertise on psychological issues to influence the process.

Some of the alleged communications in 2016 and 2017 with the GAL also concerned two civil lawsuits in a different jurisdiction on which cases Defendant Remick was working and from which she might eventually receive income.  In the divorce action, the parties referred to the cases as the "L Case" and the "G Case."  Plaintiff alleges that several of the written communications and legal filings that Defendant Remick and Defendant Prescott sent to the GAL were false or misleading because they understated or minimized the monetary value of the lawsuits.  According to Plaintiff, when he raised within the divorce proceeding the false statements regarding the L Case and the G Case, Defendants Remick and Prescott again made mental-illness-related comments and sought to have Plaintiff withdraw his allegations and sign a general release to resolve the remaining disputes.

In September 2017, Plaintiff and Defendant Remick signed a settlement agreement. In December 2017, the state court entered a divorce judgment. As part of the allocation of assets, Defendant Remick agreed to certain procedures to document and transfer a designated percentage of the net proceeds of the L Case to a trust for the two children and to Plaintiff. A percentage of gross proceeds that Defendant Remick might receive from the G Case was also allocated to Plaintiff. Defendant Remick made certain payments related to the L Case in December 2017, but according to Plaintiff, Defendant Remick failed to follow the income certification procedures related to the L Case and the G Case as required by the settlement agreement and court order.

In April 2018, a settlement involving one of the defendants in the L Case was announced. In July 2018, Defendant Remick notified Plaintiff of proceeds from the L Case and made some payments. A settlement involving another defendant in the L Case was announced in August 2018. Plaintiff alleges that Defendant Remick should have made additional payments but failed to comply with the annual income certification procedures in 2018. In 2018 and 2019, Remick sought reimbursement for certain expenses from the children's trust, which Plaintiff evidently contends were improper. According to Plaintiff, Defendant Remick also failed to comply with the annual income certification procedures at the end of 2019.

At one point, Plaintiff asked Defendant Remick to allow the children to reside more often in Portland because their schools, friends, and activities were located closer to Plaintiff's home in Portland rather than on Peaks Island, where Defendant Remick lived. When Defendant Remick did not agree, Plaintiff requested mediation. Defendant Remick

agreed to attend, but ultimately did not participate in the mediation. Plaintiff filed a motion in late July 2020 to modify the divorce judgment.

Plaintiff alleges that thereafter, Defendants Remick and Prescott engaged in conduct that was designed to gain leverage in the state court proceeding. The conduct allegedly included unfounded reports that Plaintiff was a danger to the children and other misleading and false statements to Plaintiff, his attorney, police officers, the GAL, and school employees. Plaintiff maintains that the objective of the communications was to limit Plaintiff's contact with the children, generate state court findings unfavorable to Plaintiff, and extract concessions on financial matters. Plaintiff also asserts that Defendant Remick initiated the "blue paper" process for Plaintiff's involuntary psychiatric hospitalization. Defendant Remick's effort was unsuccessful.

In August 2021 and September 2021, the parties became involved in a dispute as to whether Defendant Remick had complied with a state court order to disclose her tax returns as required. Plaintiff asked the state court to hold Defendant Remick in contempt. After a hearing, Defendant Remick produced certain tax returns, but Plaintiff maintains that there were irregularities in the tax returns and believes the tax returns were incomplete.

In March 2022, Defendant Remick and her employer filed in state court affidavits asserting that they had disclosed all payments she had received from the L Case and the G Case. Plaintiff contends that the affidavits were false and contained irregularities. In April and May 2022, Plaintiff and Defendants Prescott and Remick continued to dispute the propriety of certain payments regarding retirement accounts and tuition payments from the children's trust. In June 2022, Defendants Prescott and Remick sent to the GAL more

communications that were allegedly false or misleading or implied that Plaintiff posed a threat of harm to others, including to them, the GAL, and the children.

In August 2022, Defendants Prescott and Remick produced her 2017 tax return after the state court informed Defendants Prescott and Remick that sanctions could be imposed if the return was not provided. Plaintiff alleges that the 2017 tax return that was produced was incomplete. As they had for several months, the parties in the state court proceeding continued to exchange or file proposed orders or agreements resolving certain issues. Plaintiff contends that many of the documents were misleading or did not accurately reflect the status of certain issues and disputes. Plaintiff asserts that Defendants Remick and Prescott also continued their attempts to condition Plaintiff's access to the children on Plaintiff making certain financial concessions.

In January 2023, the state court issued a stipulated order on the motion to modify the 2017 divorce judgment. The stipulated order resolved the child custody disputes with respect to the younger child, waived certain child support payments, and directed Defendant Remick to pay an amount to resolve the disputed retirement account issue. The older child had reached the age of eighteen and was therefore emancipated. Throughout 2023, 2024, and early 2025, Defendant Remick continued to seek payment for certain expenses from the children's trust, which requests Plaintiff alleges were improper and largely declined by the trustee.

DISCUSSION

**A.      Rule 12(b) Motions (Defendants Smith, Prescott, PJMLG, Jamieson, Murphy)**

**1.      Legal Standards**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In doing so, a court "'assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom.'" *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)).  The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013).  Rule 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hospital, Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (quotation marks omitted).  On such a motion, the court must "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).  The court "may also 'consider whatever evidence has been submitted.'" *Id.* (quoting *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)).  The burden of proving subject matter jurisdiction falls to the party invoking the court's jurisdiction.  *Skwira v. United States*, 344 F.3d 64, 71 (1st Cir. 2003).

### 2.    Immunity

Defendant Smith, who served as the GAL in the state court matter, argues that she is entitled to absolute immunity on all the claims against her.  The Supreme Court has long recognized that judicial processes require absolute immunity so that officials "can perform their respective functions without harassment or intimidation."  *Butz v. Economou*, 438 U.S. 478, 512 (1978).

> Such officials include, among others, judges performing judicial acts within their jurisdiction, prosecutors performing acts intimately associated with the judicial phase of the criminal process, and certain quasi-judicial agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court.

*Bettencourt v. Board of Registration In Medicine*, 904 F.2d 772, 782 (1st Cir. 1990) (emphasis omitted) (citations and quotation marks omitted).  Judicial immunity is "absolute" because it applies no matter how "erroneous the act may have been," no matter

how "injurious in its consequences it may have proved to the plaintiff," and no matter the alleged "motives with which their judicial acts are performed." *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985). Maine law similarly grants absolute judicial immunity against state law claims for "[u]ndertaking or failing to undertake any judicial or quasi-judicial act . . . ." 14 M.R.S.A. § 8111(1)(B).

All the allegations against Defendant Smith are based on her conduct as the GAL assigned to assess and report on the best interests of the minor children during the state court divorce proceedings involving Plaintiff and Defendant Remick. Plaintiff's claims focus on Defendant Smith's recommendations to the state court and the communications related to the state court dispute. Under relevant authority from the First Circuit and Maine Supreme Judicial Court, and pursuant to Maine statute, the role of a guardian ad litem is involved closely in the adjudicative process. *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989); 4 M.R.S.A. § 1554(3); *Richards v. Bruce*, , 691 A.2d 1223, 1225 n.3 (Me. 1997). A guardian ad litem, therefore, shares in the family court judge's absolute immunity. *Cok*, 876 F.3d at 3; 4 M.R.S.A. § 1554(3) Accordingly, Plaintiff cannot proceed on any of his claims against Defendant Smith.

Defendants Prescott, Jamieson, Murphy, and PJMLG raise as a defense the *Noerr-Pennington* doctrine, which generally immunizes good-faith petitioning to government entities. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). Even "false statements presented to support such petitions are protected," but immunity does not extend to "sham petitioning," which is petitioning that is "objectively baseless

and intended only to burden a rival with the governmental decision-making process itself."
*Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000) (emphasis omitted).

Although the *Noerr-Pennington* doctrine arose in the context of efforts to petition the legislative and executive branches regarding the passage or enforcement of laws in antitrust matters, the Supreme Court later applied the doctrine in other types of cases, such as patent infringement and NLRB cases, and beyond the legislative and executive enforcement contexts to "administrative agencies and to courts." *Amphastar Pharmaceuticals Inc. v. Momenta Pharmaceuticals, Inc.*, 850 F.3d 52, 56 (1st Cir. 2017) (quoting *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (modification omitted)).  Because the doctrine is grounded in the First Amendment right to petition the government, other courts have applied the doctrine to prelitigation communications and many other types of lawsuits, including RICO claims and state law tort claims.  *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006); *Geomatrix, LLC v. NSF International*, 629 F. Supp. 3d 691, 711 (E.D. Mich. 2022).

Most of the statements attributed to Defendants Prescott and Remick in the complaint are arguably within the scope of the *Noerr-Pennington* doctrine because they were made by a party or her attorney to other parties or to judicial or quasi-judicial officers in the state court case.  Because both phases of the state court litigation concluded with stipulated judgment, it would be difficult to characterize the petitioning as a sham.  *See Davric Maine*, 216 F.3d at 148 (noting that litigation cannot be considered objectively

10

baseless when "defendants sought to benefit from the *outcomes* of the [legal] processes" or when there was "a successful effort" to influence the government).

Some of the statements alleged in the complaint, however, were arguably made outside the scope of the state court proceeding or had a tenuous connection to Defendant Remick's petitioning.  (*See, e.g.*, Complaint at 21 (describing allegedly false assertion to high school principal that the school could not contact Plaintiff because a state court had terminated Plaintiff's parental rights).)  Furthermore, the *Noerr-Pennington* doctrine "has a well-established exception for knowing misrepresentations, at least in the administrative and adjudicatory contexts."  *Amphastar Pharmaceuticals*, 850 F.3d at 56 (modification and quotation marks omitted).  While the focus of Plaintiff's complaint is Defendant Prescott's interaction with the state court and the GAL, at this stage of the proceeding, the Court cannot conclude that the doctrine applies to all the statements attributed to Defendants Prescott and Remick.

The same defendants also contend that "Maine courts recognize an absolute common law privilege to attorneys and witnesses for relevant communications and testimony made preliminary to and during the course of litigation."  *Beaulieu v. Bank of America, N.A.*, No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *9 (D. Me. Sept. 29, 2014). As noted above, however, some of the alleged statements are at least arguably outside the scope of the litigation.  While a more developed record might establish that the privilege applies and precludes recovery, at this stage, the privilege does not prevent Plaintiff from proceeding.

11

### 3.    RICO Act Claims

"The [RICO Act], 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions." *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 641 (2008) (citing 18 U.S.C. § 1964(c)).    The criminal prohibitions include "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," 18 U.S.C § 1962(c), maintaining "any interest in or control of" such an enterprise, *id.* § 1962(b), investing in an enterprise engaged in interstate commerce income derived from racketeering or collection of unlawful debt, 18 U.S.C. § 1962(a), and conspiring to do any of those things, *id.* § 1962(d).    Racketeering activity is defined to include a list of other criminal offenses, including various forms of fraud and crimes of violence like murder.    18 U.S.C. § 1961(1).

Defendants Smith, Prescott, Jamieson, Murphy, and PJMLG argue that the complaint fails to state a RICO Act claim against them because the allegations do not establish that they participated in an enterprise or that there was the requisite pattern of activities.    An enterprise is a group of individuals or entities with "'[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *United States v. Rodriguez-Torres*, 939 F.3d 16, 24 (1st Cir. 2019) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).    A "pattern of racketeering activity" includes at least two predicate acts that were

"related, occur within ten years of one another, and pose a threat of continued criminal activity." *United States v. Millan-Machuca*, 991 F.3d 7, 18 (1st Cir. 2021).

Continuity can be established by an "open-ended" or a "closed-ended" threat. *Giuliano v. Fulton*, 399 F.3d 381, 387 (1st Cir. 2005) (discussing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989)). The open-ended approach finds the requisite continuity even when the predicates occurred over a shorter period provided the criminal acts form an entity's way of doing business or "there is a specific threat of repetition extending indefinitely into the future[.]" *Id.* The closed-ended approach finds the requisite continuity when the predicates extended over a more substantial period. *Id.* Courts also consider other "indicia" of a pattern, such as the number of victims and whether the schemes are far reaching. *Id.* at 387–88. As one court explained:

> [A]t one extreme is a perpetrator committing two predicate acts, in one day, in one scheme, causing a single injury, to a single victim. This is not a pattern. At the other extreme, a perpetrator engineering dozens of schemes, and using myriad predicate acts to further each scheme, against numerous victims causing numerous types of injuries, beyond peradventure engages in a pattern of racketeering activity.

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995) (citation omitted).

The conduct described in the complaint occurred over many years, which could conceivably reflect a pattern. Plaintiff also contends there were dozens of schemes, many types of predicate acts, and multiple victims. Courts, however, have long been cognizant of the potential for "creative pleading" and the need for scrutiny of such labels in RICO cases. *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116 (2d Cir. 2003), *amended*

(Apr. 16, 2003) *abrogation on other grounds recognized by Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 n.5 (2d Cir. 2019).  In this case, while Plaintiff has alleged multiple actions related to the state court proceeding, the allegations amount to a single scheme with a single goal with a few types of acts against a single victim—Plaintiff. Plaintiff alleges that his art and law practice LLCs were victims, but there are no facts to suggest that Defendants Prescott and Remick had a motive to harm the businesses separately from Plaintiff, there are no alleged false statements about the businesses, and the only nonconclusory harm the entities allegedly suffered occurred through harm to Plaintiff's reputation.  Plaintiff also conflates predicate acts, schemes, and goals, which artificially inflates the number of each.  (*See, e.g.*, Complaint at 67–68 (labeling as four separate "schemes" the alleged understatement of the value of the L Case in 2016, and thereafter, the concealment of earnings from the L Case in 2016, and thereafter, the failure to comply with the judgment's income disclosure obligation in 2017, and thereafter, regarding the L Case, and the failure to comply with the judgment's income disclosure obligation in 2017, and thereafter, regarding the G Case).)

Setting aside conclusory allegations, labels, and non-recoverable harms,[4] there was a single scheme with a single goal, or at most a very small number of schemes with one or

---

[4] Plaintiff alleged one other form of injury: that Defendants Prescott and Remick sought to cause him such distress that he would engage in self-harm.  (Complaint ¶¶ 355, 386, 411.)  While such allegations are not necessarily irrelevant to a RICO claim, they do not establish the type of harm that can support a RICO claim.  *See Zareas v. Bared-San Martin*, 209 F. App'x 1, 2 (1st Cir. 2006) ("claims for personal injuries, such as emotional distress, are not 'business or property' and are not cognizable under RICO").

two goals. For instance, Plaintiff asserts that Defendants Prescott and Remick withheld certain information and made false statements to him, the GAL, and potential witnesses regarding Defendant Remick's income, Plaintiff's mental health, and the minor children. Defendants Prescott and Remick allegedly desired a more favorable custody arrangement and wanted to retain the assets to which Plaintiff was entitled in the divorce. In other words, all the conduct allegedly constituting predicate acts was "directed solely at Plaintiff, with no potential to expand to harm any other potential victims" and was allegedly taken in an effort "to obtain favorable orders in the [state court] domestic relations matters and to obtain Plaintiff's financial assets." *Tso v. Murray*, No. 16-CV-2480-WJM-CBS, 2018 WL 1082239, at *10 (D. Colo. Feb. 28, 2018).

In the divorce and child custody context in particular, courts consistently reject attempts to use the RICO Act to convert state court disputes between the same or similar parties into federal cases. *See id.*; *see also DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("Divorces are frequently accompanied by disputes about property, including both interim and final allocations. Such state court authority would be threatened if civil RICO actions become the shadow proceeding for policing such disputes."); *Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 916–17 (6th Cir. 2020) (finding "an almost unanimous belief among the courts" that marital disputes can involve reprehensible conduct and even crimes but do not generate RICO claims); *Kufner v. Suttell*, No. CV 13-12864-DJC, 2016 WL 3636977, at *1, 5 (D. Mass. June 30, 2016) (screening RICO claims against former partners, their attorneys, and state court officers based on events surrounding divorce and child custody proceedings in state courts); *Rosner v. Rosner*, 766 F. Supp. 2d 422, 426

(E.D.N.Y. 2011) ("The plaintiff is not the first person involved in a matrimonial case to attempt to bring a RICO claim against a spouse for allegedly hiding marital assets. The courts that have previously addressed this type of allegation have almost universally found such claims to be a misuse of the RICO statute."); *Davit v. Davit*, 366 F. Supp. 2d 641, 657 (N.D. Ill. 2004) (rejecting claims against a plaintiff's ex-wife, her attorneys, and state court officials on the basis that RICO does not permit a "disgruntled divorce court litigant . . . to relitigate such disputes in the federal courts"). The reasoning and approach of the courts are sound.

Furthermore, Plaintiff's complaint contains few relevant factual allegations regarding the other alleged participants and coconspirators, such as Defendants Jamieson, Murphy, and PJMLG. The only argument that Plaintiff provides regarding their alleged involvement with any RICO enterprise is that they must have known about the conduct of Defendant Prescott. Even if the underlying allegations against Defendants Remick and Prescott could conceivably support a RICO claim against them, Plaintiff's conclusory allegation that the others had some degree of knowledge about Defendant Prescott's conduct is insufficient to establish the requisite conspiracy, participation, or interest in the enterprise by the other attorneys or the law firm. *See Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 32-33 (1st Cir. 1986) ("Both the language" of the RICO Act "and the articulated primary motivation" show that "the concept of vicarious liability" or even "a modified version . . . requiring some level of *scienter*" would be "directly at odds" with the statute). Plaintiff also has not alleged any facts regarding the funds that the other

defendants might have received, their use of such funds, or any injury proximately caused by their use.

Plaintiff has also failed to allege facts that would support Defendant Smith's involvement in a RICO enterprise.  The essential allegation against Defendant Smith is that she submitted false or misleading information to the state court regarding Plaintiff's mental health after she was pressured to do so by Defendant Prescott.  The complaint lacks sufficient nonconclusory allegations that would suggest that Defendant Smith had prior familiarity with or animus toward Plaintiff before the divorce proceedings to plausibly support a finding that she was involved in an unlawful enterprise to defraud Plaintiff.  Even if Defendant Smith was not entitled to absolute immunity, and even if Plaintiff had alleged facts that could support a finding of a RICO enterprise, based on the alleged facts, a factfinder could not plausibly infer that Defendant Smith had a shared purpose with the other participants and willingly joined or participated in the enterprise.

In sum, Plaintiff has failed to allege an actionable RICO Act claim against Defendants Smith, Prescott, PJMLG, Jamieson, and Murphy.

### 4.    Federal Civil Rights Claims

Plaintiff, citing the right to parent one's children and the right to be free from the restraint of an involuntary hospitalization, alleges that Defendants engaged in a conspiracy, prohibited by  42 U.S.C. § 1985(3),  to deprive him of his constitutional rights.  To prevail on such a claim, "[f]irst, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either

injury to person or property, or a deprivation of a constitutionally protected right." *Pérez-Sánchez v. Public Building Authority*, 531 F.3d 104, 107 (1st Cir. 2008). Regarding the second element, "the agreement must involve 'some . . . inviduously discriminatory animus behind the conspirators' action.'" *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

The complaint includes a conclusory allegation that Defendants' "conduct was motivated by inviduously discriminatory animus against individuals with mental illness disabilities . . . ." (Complaint at 97.) Plaintiff's complaint, however, contains no facts that would make such an inference plausible. Plaintiff's principal contention is that Defendants Remick and Prescott made statements about Plaintiff's mental health to undermine him personally and financially and thus to advance their personal and financial interests in the state court proceeding. Similarly, Plaintiff alleges that Defendant Smith was motivated to omit facts and submit false statements because of pressure from Defendants Prescott and Remick and due to future employment concerns, not because she felt animus toward the class of people with a mental illness. Plaintiff has not alleged an actionable § 1985(3) conspiracy.

Plaintiff also attempts to allege a 42 U.S.C. § 1986 claim against all Defendants. Section 1986 "extends liability to those who knowingly failed to prevent conspiracies under § 1985." *Maymi v. Puerto Rico Ports Authority*, 515 F.3d 20, 31 (1st Cir. 2008). Because Plaintiff failed to state a plausible § 1985 claim, and "[b]ecause a § 1986 claim must be predicated upon a valid § 1985 claim," Plaintiff cannot proceed on a § 1986 claim.

*Grendell v. Maine*, No. 1:19-cv-00419-JDL, 2020 WL 3895765, at *5 (D. Me. July 10, 2020) (quotation marks omitted).

Plaintiff further asserts a 42 U.S.C. § 1983 claim against Defendant Smith, who was allegedly a "public servant" at all relevant times. To proceed on a § 1983 claim, Defendant Smith must be considered a state actor. "[A]lthough state employment is generally sufficient," not every act of an on-duty state employee is state action for purposes of § 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982) (discussing *Polk County v. Dodson*, 454 U.S. 312 (1981) where the Court found no state action and thus no § 1983 claim against public defenders); *see also*, *K.K. ex rel. Knowles v. Weeks*, No. 1:CV-04-2290, 2007 WL 2782273, at *5 (M.D. Pa. Sept. 21, 2007) (citing *Bonenberger v. Plymouth Township.*, 132 F.3d 20, 24 (3d Cir. 1997)). Regardless of whether a guardian ad litem is considered an employee of the state or is simply appointed by the state court, the weight of authority teaches that because a guardian's obligation is to the child rather than the state, the guardian's role to make recommendations about the interests of the child generally does not contain the requisite authority to satisfy the state action requirement. *See Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015); *Bangerter v. Roach*, 467 F. App'x 787, 788 (10th Cir. 2012); *Kirtley v. Rainey*, 326 F.3d 1088, 1091 (9th Cir. 2003); *Snyder v. Talbot*, 836 F. Supp. 19, 24 (D. Me. 1993). Accordingly, even if Defendant Smith was not entitled to quasi-judicial immunity, Plaintiff has not alleged an actionable § 1983 claim against her.

### 5. State Law Claims

In his complaint, Plaintiff invokes the Court's federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff also alleges seven claims under state law. "Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Title 28 U.S.C. § 1367(a) governs the Court's exercise of its supplemental jurisdiction:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*Id.* "State and federal claims are part of the same case or controversy for the purposes of section 1367(a) if they derive from a common nucleus of operative fact or are such that they would ordinarily be expected to be tried in one judicial proceeding." *Allstate Interiors & Exteriors, Inc. v. Stonestreet Construction, LLC*, 730 F.3d 67, 72 (1st Cir. 2013) (quotation marks and modifications omitted).

"The district courts may decline to exercise supplemental jurisdiction" over a state law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims

over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "No categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness." *Redondo Construction Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011).

For the reasons explained herein, dismissal of all the federal claims against Defendants Smith, Prescott, PJMLG, Jamieson, and Murphy is warranted.  Plaintiff does not invoke, and the record does not suggest any other basis for subject matter jurisdiction, such as diversity of citizenship jurisdiction—all the remaining parties are evidently Maine residents.  Because Plaintiff has not alleged an actionable federal claim, because the case has not proceeded beyond the initial phase of litigation, and because there are no other apparent circumstances favoring resolution of the state law claims within this forum, the balance of the interests in comity, judicial economy, convenience, and fairness weighs against the exercise of supplemental jurisdiction over Plaintiff's state law claims against Defendants Smith, Prescott, PJMLG, Jamieson, and Murphy.

## B.    Rule 8 Motion (Defendant Remick)

Defendant Remick captioned her motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 8(a)(2) and (d)(1) rather than Rule 12(b).  Rule 8(a)(2) specifies that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required."  The First Circuit teaches that district courts have the authority to dismiss a complaint for

noncompliance with Rule 8. The justification for enforcing some degree of brevity and clarity is that when "[t]he complaint is prolix, disjointed, [or] replete with legal conclusions," it "'places an unjustified burden on the court and the party who must respond to it . . . .'" *Miranda v. United States*, 105 F. App'x 280, 281 (1st Cir. 2004) (quoting Wright & Miller, Federal Practice & Procedure § 1281, at 522 (2d ed. 1990)).

Because Rule 8 does not expressly authorize a motion by an opposing party, a Rule 12 motion is the typical vehicle to test compliance with the requirements of Rule 8. *See Twombly*, 550 U.S. at 555 ("[Rule] 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (modification, citations, and quotation marks omitted).

Defendant Remick relies on Rule 12(f) to support her motion to dismiss. Rule 12(f) authorizes motions to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed. R. Civ. P. 12(f), or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). This district has acknowledged that Rule 12(f) is a means to enforce the Rule 8 requirement that a pleading consist of short, plain, and concise

statements. *See Barth v. United States*, No. 2:18-cv-00201-JAW, 2018 WL 5793845 (D. Me. Nov. 5, 2018). The Court, therefore, considers Defendant Remick's motion as a motion to strike/dismiss Plaintiff's complaint based on Plaintiff's alleged failure to comply with Rule 8.

Even accounting for the fact that the pattern element of a RICO claim would require a somewhat longer pleading than most cases, the length of Plaintiff's complaint (113 pages and 605 paragraphs[5]) can fairly be viewed as "prolix" given the subject matter, and the relatively few participants[6] and victims compared with typical RICO cases. Notably, when describing Defendants' alleged communications, Plaintiff's complaint includes an extraordinary number of bracketed modifications rather than the original words the Defendants used. While such modifications are not controversial when limited to insignificant grammatical clarifications and when they address unimportant aspects of the original text, Plaintiff's use of modifications and ellipses is excessive. In many paragraphs, the modifications are considerable, and in several paragraphs, Plaintiff apparently replaced entire quoted sentences with bracketed modifications, revealing nothing of the original text and making it impossible to discern the extent of the change. The complaint also contains many statements that can be characterized as "unnecessary surplusage," which raises Rule 8 concerns. *Sherwood Forest Neighbors Association, Inc. v. Town of Becket*, 466 F. Supp.

---

[5] There are 467 numbered paragraphs in the complaint, but nearly 140 paragraphs have duplicative numbering.

[6] Plaintiff included nine named codefendants, and ten unnamed "Doe defendants." The alleged conduct, however, involves only three defendants, the overwhelming majority of which was perpetrated by two named defendants.

2d 399, 401 (D. Mass. 2006).  The time to decipher and assess such a complaint places an unreasonable and unnecessary burden on Defendants.

As the court in *Barth* noted, Rule 12(f) motions are generally disfavored.  2018 WL 5793845, at *2-3.  There are, however, cases where dismissal is appropriate.  For instance, as the *Barth* court noted, *id.*, the First Circuit suggested that a motion to strike should have been granted where the complaint was "argumentative, prolix, redundant and verbose." *McCoy v. Providence Journal Co.*, 190 F.2d 760, 766 (1st Cir. 1951).  The First Circuit wrote, "[i]t is hard to imagine a pleading more completely at variance with both the letter and spirit of [Rule 8] which requires that each averment of a pleading be simple, concise and direct."  *Id*.

As explained above, the complaint here is unreasonably long, is redundant, and contains immaterial factual allegations.  In the Court's view, Plaintiff's complaint, which includes a wide range of allegations related to the relationship between Plaintiff and Defendant Remick and their protracted state court family matter litigation, is one of the limited instances where the exercise of the authority granted under Rule 12(f) is appropriate.[7]  Dismissal is warranted.[8]

---

[7] While Rule 12(f) is a recognized means to dismiss a complaint for failure to comply with Rule 8, the First Circuit has also cited Rule 41(b) as authority to dismiss for the failure to comply with Rule 8(a).  *See Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1993).

[8] When a complaint fails to comply with the requirements of Rule 8, courts typically allow the plaintiff to amend the complaint.  Here, however, because the Court has assessed Plaintiff's substantive allegations in the context of Plaintiff's claims against the other defendants, any attempt to amend the complaint to allege an actionable federal claim would be futile.  *See Baron v. Complete Management, Inc.*, 260 F. App'x 399, 400–01 (2d Cir. 2008) (affirming denial of leave to amend following dismissal of a prolix complaint because "to the extent [the plaintiff's] claims can be deciphered, leave to amend would be futile").

Even if the Court determined that Plaintiff's complaint complied with Rule 8 or that dismissal was not warranted based on Plaintiff's failure to comply with the Rule, dismissal would still be appropriate. In his written argument, Plaintiff characterizes Defendant Remick's arguments as Rule 8, Rule 12(b)(6), and Rule 12(f) arguments. Plaintiff describes Defendant Remick's motion to dismiss as a "nominal Rule 8 motion" that "actually asserts three Rule 12(b)(6) arguments." (Response at 7, ECF No. 47.) Plaintiff asks the Court to "construe Defendant [Remick'] motion as under Rule 12(b)(6) [and] deny it." (*Id*. at 7.) Construing the motion as a Rule 12(b)(6) motion as Plaintiff requests and applying the Rule 12(b)(6) standard, as explained above, Plaintiff has not alleged an actionable federal claim. Given that Plaintiff's material allegations against, and theories of recovery from, Defendant Remick are largely the same as against her counsel, Defendant Prescott, Plaintiff's claims against Defendant Remick fail for the same reasons that prevent Plaintiff from proceeding against Defendant Prescott.

## CONCLUSION

As explained above, the Court concludes that Plaintiffs have not alleged an actionable federal claim against Defendants Smith, Prescott, PJMLG, Jamieson, and Murphy. The Court further finds that Plaintiffs' complaint against Defendant Remick does not satisfy the requirements of Federal Rule of Civil Procedure 8, and that Plaintiff has not otherwise alleged an actional federal claim against Defendant Remick. The Court also declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

For all the foregoing reasons, the Court grants Defendants' motions to dismiss (ECF Nos. 43, 44, 46).


/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of November, 2025.